**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  **Case No. RWT-09-CV-2573** |
| FREEMAN, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

**PLAINTIFF EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Pursuant to the Federal Rule of Civil Procedure 12(b)(6) and Local Rule 105, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") files the instant Memorandum in Opposition to Defendant Freeman's Partial Motion to Dismiss For Failure To State a Claim in the above-styled and numbered action.  For the reasons set forth below, EEOC respectfully requests that the Court deny Defendant's Motion.

1.  <u>EEOC is authorized by statute to obtain full remedies in the public interest regarding all victims of Defendant's pattern or practice of discrimination</u>

In its Motion, Defendant seeks dismissal of EEOC's claims to the extent EEOC seeks remedies for aggrieved persons denied employment prior to March 23, 2007.  Defendant argues that EEOC's authority to secure the public's interest in fully remedying patterns or practices of discrimination pursuant to the federal government's exclusive authority to institute litigation under Section 707 of Title VII, 42 U.S.C. § 2000e-6, is limited by the 300-day charge-filing period contained in Section 706(e)(1), 42 U.S.C. § 2000e-5(e)(1). <u>See</u> Document No. 7-1 at pg. 1.  Defendant's argument misreads the statute, ignores the nature of pattern or practice

discrimination, and is contrary to the case law, legislative history of Title VII and critical Congressional purposes served by Section 707 litigation.  As discussed more fully below, the scope of remedies to be secured by the federal government in pattern or practice actions brought pursuant to its Section 707 authority are not limited by the Section 706 charge-filing period.

      **a.**       ***EEOC possesses broad statutory authority to remedy patterns and practices of discrimination, authority that is independent of the statutory rights and limitations that apply to individual aggrieved persons***

Defendant's limitations argument must be evaluated in the context of EEOC's overall statutory role and the scope of its authority under Title VII. See EEOC v. Shell Oil Co., 466 U.S. 54, 62-72 (1984)(examining structure and purposes of Title VII to determine required content of a Commissioner's charge).  EEOC is the chief law enforcement agency of the United States Government charged with preventing and correcting unlawful employment discrimination in the nation's workplaces.  The agency performs several statutory duties under Title VII pursuant to an integrated, multi-step enforcement procedure.  It generally begins with the filing of a charge. Title VII charges are required to be filed with EEOC within 180 days of when the unlawful employment practice occurred, or within 300 days if it occurred in a state or local jurisdiction, such as Maryland, with an agency that has authority to grant or seek relief.  See 42 U.S.C. § 706(e); 29 C.F.R. § 1601.13.  What constitutes an unlawful employment practice and when the unlawful employment practice can be said to have "occurred" – thus triggering the running of the applicable charge-filing period – varies depending on the nature of the unlawful employment practice at issue. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).

Once a charge is filed, EEOC investigates and makes a reasonable cause determination. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 358-59 (1977).  Neither the scope of EEOC's investigation nor the scope of its reasonable cause determination are restricted to the

allegations within the four corners of the charge. <u>See</u> <u>EEOC v. General Electric Co.</u>, 532 F.2d 359, 364 (4th Cir. 1979). The charge is simply a starting point, a springboard for an inquiry into any unlawful employment practice uncovered during the course of EEOC's investigation of the charge whether alleged in that charge or not. <u>Id.</u> If EEOC finds reasonable cause as to one or more unlawful employment practices, it attempts to resolve the charge informally through conciliation. If conciliation fails, the process culminates in the EEOC's authority to bring a civil action in federal court. <u>See generally</u> 42 U.S.C. § 2000e-5(f)(1); and 42 U.S.C. §2000e-6 .

When EEOC sues, it sues pursuant to its independent authority to do so – in its own name for the public interest  – and not as a proxy for, or representative of, either the person who filed the original charge or any other persons regarding whom it seeks relief. <u>See</u> <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 197-98 (2002); <u>General Telephone Co. of the Northwest, Inc. v. EEOC</u>, 446 U.S. 318, 326-29, 331 (1980). As the Supreme Court stated in <u>Waffle House</u>, Congress enacted the 1972 amendments to Title VII with the intention of greatly strengthening the EEOC's enforcement authority by giving it the power to bring suit for appropriate relief such as injunctions and back pay and further intended that EEOC, not private plaintiffs, "bear the primary burden of litigation." <u>Id.</u> at 286 (citation and quotations omitted). Congress has placed EEOC "in command of the process" and made it "the master of its own case . . . ." <u>Id.</u> at 291.

In <u>Waffle House</u>, the Supreme Court also unequivocally repudiated the notion that victim-specific remedies such as back pay serve only, or even predominantly, a private interest. As the Court concluded, "[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief." <u>Id.</u> at 296. <u>See also</u> <u>General Telephone Co. of</u>

Northwest, Inc. v. EEOC, 446 U.S. 318, 326 (1980) ("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.").   Victim-specific remedies serve compelling public policy objectives.

As the Supreme Court has observed, the potential for back pay liability provides a powerful deterrent to discrimination and strong incentive for employers to evaluate their own conduct and adopt non-discriminatory practices, thereby serving the public interest. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975)("If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality.  It is the reasonably certain prospect of a back pay award that 'provides the spur or catalyst which causes employers . . . to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history.'")  See also EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 466 (6th Cir. 1999)("[L]imiting the EEOC to the pursuit of injunctive remedies and not monetary relief on behalf of aggrieved individuals would severely impede its ability to protect the public interest against unlawful employment discrimination . . . .").

Moreover, Congress intended EEOC to have a unique, primary role in identifying and redressing systemic discrimination through its enforcement activities and its exclusive Section 707 authority, a purpose that the Supreme Court has stated should not be impaired by restrictive statutory construction. See, e.g., Shell Oil Co., 466 U.S. at 69 (discussing amendments to Section 707).  The Court has also counseled that in proven cases it is the task of the federal courts to "fashion[] . . . the most complete relief possible." Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 364 (1977)( citation and internal quotations omitted).

Thus, EEOC's authority under Title VII is neither derivative of, nor limited by, the rights and interests applicable to the charging party or others regarding whom it seeks relief. "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." General Telephone, 446 U.S. at 331. Victim-specific remedies recovered by EEOC, such as back pay, serve critical public interest goals of general and specific deterrence, as well as full remedies for harmed persons, and the importance of securing complete remedies is amplified where the EEOC is exercising its primary role in redressing patterns or practices of discrimination.

**b.**   ***A majority of federal courts to consider the issue - including this Court - have found that the scope of remedies in the federal government's pattern or practice litigation under §707 is not limited by Title VII's charge-filing period***

EEOC instituted this lawsuit under both Sections 706 *and 707* of Title VII alleging a pattern or practice of discrimination. See Document No. 1 (EEOC Complaint). The fact that this case arises from Section 707 authority is critical, as it distinguishes this case from pattern or practice allegations made by private parties in class-action or individual litigation under Section 706(f)(1). Section 707 confers its broad authority exclusively upon EEOC (regarding private employers) and the U.S. Department of Justice (regarding governmental employers) to bring such actions; private parties do not have authority to invoke Section 707. See 42 U.S.C. § 2000e-6(a) & (e). The reason for the government - private plaintiff distinction is apparent. As previously discussed, the federal government litigates in the public interest, and Congress has conferred upon it unique primacy in enforcing Title VII, particularly regarding systemic discrimination. It is not surprising, then, that there is another critical, textual distinction between Section 707 and Section 706, viz., Section 707 does not contain any time period limiting the

scope of remedies that the Government may obtain to redress a pattern or practice of discrimination. See generally 42 U.S.C. § 2000e-6.

This Court and others have previously recognized these distinctions, the Congressional objectives underlying the statute, and the broad authority conferred upon EEOC in Section 707 and have specifically held that the scope of remedies in actions brought by EEOC under Section 707 are *not* subject to the Section 706 charge-filing period for individuals.

In EEOC v. LA Weight Loss, 509 F. Supp.2d 527 (D. Md. 2007), Judge Quarles held that the Section 706(e)(1) charge-filing period should not be applied to truncate EEOC's remedies in a Section 707 action. See id. at 534-36. Analyzing the text of the statute, its legislative history, the case law, and scholarship on the subject, Judge Quarles specifically addressed and rejected the "plain language" line of argument that Defendant is now making in this case and that several decisions it cites have relied upon. Id. He noted that although there is a reference in Section 707 to the "procedures" of Section 706, the language of the statute is "not so plain as to warrant application of the [Section 706] limitations period for individual charges to pattern or practice claims brought by the EEOC under [Section 707]" in litigation. Id. at 535. Citing the case law, Judge Quarles concluded that applying the Section 706 limitations period to EEOC's remedies in a Section 707 action is inconsistent with the very nature of a pattern or practice violation, which is an aggregation of multiple acts over time that cannot be said to have occurred on any particular day, see id. at 535, and it also undermines the Congressional objective - reflected in Supreme Court case law and the history of the Act - that EEOC have broad authority to root out and eliminate systemic discrimination, see id. at 535-36.

Consistent with this Court's resolution of the question in LA Weight Loss, numerous other federal courts have held that the scope of remedies in Section 707 actions are not limited

by the charge-filing period contained in Section 706(e)(1).  See United States v. Fresno Unified Sch. Dist., 592 F.2d 1088, 1096 & n.5 (9th Cir. 1979)(holding DOJ could initiate pattern or practice suit without an EEOC referral and noting some §706 procedures seem applicable to individual unlawful practices and not to pattern or practice suits, such as charge filing requirement given lack of charge requirement in §707 and that pattern or practice is aggregation of multiple events from which there is no certain date to run the limitations period); EEOC v. Scolari Warehouse Markets, Inc., 488 F. Supp.2d 1117, 1136 (D. Nev. 2007)(citing cases and holding no statute of limitations applies when the EEOC brings a pattern-or-practice suit, and that EEOC may recover for persons harmed beyond 180/300 day charge-filing period); EEOC v. Dial Corp., 156 F. Supp.2d 926, 966-69 (N.D. Ill. 2001)(same), reconsideration denied, No. Civ. A. 99C 3356, 2002 WL 1974072, at *6 (N.D. Ill.., Jul. 23, 2002); EEOC v. Mitsubishi Motor Mfg. of Am., 990 F. Supp. 1059, 1084-87 (C.D. Ill. 1998)(same).  See also EEOC v. Harvey L. Walner & Assoc., 91 F.3d 963, 969 (7th Cir. 1996)(stating EEOC decision not to file class case under §707 meant EEOC's lawsuit needed to be predicated on a valid charge); EEOC v. Ceisel Masonry, Inc., 594 F. Supp.2d 1018, 1022 (N.D. Ill. 2009)(citing EEOC v. Waffle House, Inc., 534 U.S. 279 (2002) and 7th Circuit decision and holding failure of victims to file timely charge does not bar EEOC monetary recovery regarding their employment).

Similarly, various federal courts have held that the scope of back pay recovery in an EEOC pattern or practice action is limited only by the express provision in Section 706(g) restricting back pay accrual to a period of two years preceding the charge filing.  See United States [and EEOC] v. Lee Way Motor Freight, Inc., 625 F.2d 918, 933-35 (10th Cir. 1979)(holding in Section 707 action that EEOC may recover back pay for two years preceding the charge under Section 706(g)); EEOC v. AutoZone, Inc., 258 F. Supp.2d 822, 832 (W.D.

Tenn. 2003)(rejecting application of 300-day period as limitation on back pay recovery and holding EEOC may recover back pay for two-year period preceding charge filing for continuing pattern or practice violation).

      **c.**     *The text and structure of Section 706 and the legislative history of Section 707(e) demonstrate that Section 707(e)'s reference to administrative procedures does not operate as a restriction on the scope of remedies available to EEOC in pattern or practice litigation*

Congress gave EEOC suit authority, including pattern-or-practice suit authority under Section 707, in 1972.   Prior to 1972, DOJ could bring a civil action upon reasonable cause to suspect a "pattern or practice" of discrimination without regard to whether a timely charge of discrimination was, or could have been, filed with EEOC. See General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 327 (1980).   Congress's intent in giving EEOC suit authority in 1972 was to secure more effective enforcement of Title VII by giving EEOC authority to sue and seek relief for victims on the same broad basis as DOJ prior to 1972. Id. at 329 ("It is clear that with the 1972 amendments Congress intended the EEOC to proceed in the same manner [as DOJ]").[1]

---

[1] In its discussion of this conclusion in General Telephone, the Supreme Court quoted from the following language in the legislative history of Section 707:

> "There will be no difference between the cases that the Attorney General can bring under section 707 as a 'pattern or practice' charge and those which the [EEOC] will be able to bring." . . . "The EEOC . . . has the authority to institute exactly the same actions that the Department of Justice does under pattern or practice." . . . "[I]f [the EEOC] proceeds by suit, then it can proceed by class suit. If it proceeds by class suit, it is in the position of doing exactly what the Department of Justice does in pattern and practice suits. . . . [T]he power to sue . . . fully qualifies the [EEOC] to take precisely the action now taken by the Department of Justice."

446 U.S. at 328-29 (quoting 118 Cong. Rec. 4080-82 (1972)).

Defendant's argument that Section 707 does not permit EEOC to recover for victims harmed outside the charge-filing period is based on a flawed, myopic reading of that text. Section 707(e) provides:

> Subsequent to March 24, 1972, the Commission shall have authority to investigate and *act on* a charge of a pattern or practice of discrimination whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All *such actions* shall be conducted with the procedures set forth in section [706] of this title.

42 U.S.C. §2000e-6(e) (emphasis added). The gravamen of Defendant's statutory argument is that because Section 706 requires charges to be filed within specified time periods, and Section 707 states that "all such actions shall be conducted in accordance with the procedures set forth in section [706]," this means that EEOC cannot recover for victims of an unlawful pattern or practice whose harm occurred beyond the charge-filing period. Defendant is mistaken.

It is apparent from a review of Section 707(e) and its legislative history that its reference to the procedures of Section 706 pertains to investigative and conciliatory procedures in EEOC's administrative capacity, not to EEOC's authority and the scope of its remedies as a litigant. Section 707(e) states only that EEOC may investigate and "act on" charges alleging a pattern or practice and that all "such actions" shall be in accordance with Section 706. In the context of other subsections of Section 707 the terms "act on" and "such actions" are best read simply as making explicit that EEOC has authority to investigate a pattern or practice charge if one is filed, and that subsequent administrative functions must be conducted in accordance with Section 706 procedures. Section 707(e) says nothing about lawsuits or the limits on the scope of Section 707 lawsuits brought by EEOC. On the other hand, Section 707(a) speaks directly to the government's suit authority, and that subsection imposes no limitations period and no administrative prerequisite to the institution of a pattern-or-practice lawsuit other than having

reasonable cause to believe the employer is engaged in a pattern or practice of such a nature as to deny the full exercise of Title VII rights. See 42 U.S.C. §2000e-6(a).  Defendant's reading of Section 707(e) as applying the charge-filing rights of charging parties contained in Section 706 is thus strained, and would conflict with the broad scope of EEOC litigation authority Congress intended, which was consistent with pre-existing DOJ authority. See General Telephone, 446 U.S. at 327 & n.9, 328 (DOJ §707 suit authority prior to 1972 did not depend on the filing of a charge and was independent of the interest of any particular aggrieved person, strongly implying same for EEOC post-1972); United States v. Fresno Unified Sch. Dist., 592 F.2d 1088, 1096 & n.5 (9th Cir. 1979) (holding DOJ could initiate pattern or practice suit without EEOC referral and noting some §706 procedures seem inapplicable to pattern or practice, such as charge filing requirement given lack of charge requirement in §707 and that pattern or practice is aggregation of events from which there is no certain date to run the limitation period).

Recourse to other provisions in Section 706, as well as the legislative history of Section 707(e), confirms this reading.  Section 706(f)(1) provides a procedure for aggrieved persons to intervene in litigation under that subsection.  As the Fifth Circuit acknowledged, Section 707(e), with its blanket reference to all of Section 706, could arguably be read to incorporate intervention procedures in Section 706(f)(1) and thereby allow for private parties to intervene as a matter of right in Section 707 litigation. See U.S. v. Allegheny-Ludlum Indus., Inc., 517 F.2d 826, 843-44 (5th Cr. 1975).  Nevertheless, the Fifth Circuit rejected the proposition, holding that notwithstanding the language of Section 707(e), it *does not* incorporate all of the procedures of Section 706, specifically intervention under Section 706(f)(1).  The Fifth Circuit emphasized that Section 707 does not contain a provision for private intervention and that absent such an express

provision it would not incorporate one from Section 706. Id. at 844.  In reaching this conclusion,

the Fifth Circuit examined the legislative history of Section 707(e) and reasoned:

> [Section 707(e)] merely "assimilate(d) procedures for new proceedings brought under Section 707 to those now provided for under Section 706 so that the Commission may provide an *administrative* procedure to be the counterpart of the present Section 707 action."  Thus, while Congress apparently intended that the EEOC have *investigative and conciliatory authority* in "pattern or practice" situations comparable to its existing powers in Section 706 cases, *there is no indication that Congress intended the duplication of procedures to extend beyond the administrative level.*

Id. (quoting H. Rep. No. 92-238, reporting H.R. 1746, 92d Cong., 2d Sess., 1972 U.S.S.C.A.N.

2137, at 2164) (emphasis added).  Thus, as the Fifth Circuit has recognized, the legislative

history of Section 707(e) verifies that it was simply intended to set up an administrative

investigation and conciliation process for pattern or practice charges, but it was never intended to

restrict the scope of EEOC's remedies under Section 707.  See also Fresno Unified Sch. Dist.,

592 F.2d at 1096 & n.5 (noting charge-filing period in § 706 poorly suited to § 707 and

apparently inapplicable).

Similarly, other provisions in Section 706 that deal specifically with remedies confirm

that the charge-filing period in Section 706, read in context, has no application to the question of

the scope of EEOC's remedies in Section 707 litigation.  Section 706(g)(1) states, in part, that

"[b]ack pay liability shall not accrue from a date *more than two years prior to the filing of a

charge* with the Commission." 42 U.S.C. §2000e-5(g)(emphasis added).   Given that the

applicable charge-filing period in Title VII is 300 days, see 42 U.S.C. §2000e-5(e)(1), the clear

implication of the language above is that the charge-filing period does not define the period

within which harm must have occurred for purposes of liability. See Morgan, 536 U.S. at 119

("If Congress intended to limit liability to conduct occurring in the period within which the party

must file a charge, it seems unlikely that Congress would have allowed recovery for two years of backpay."). As another federal court has observed, "'[I]f in fashioning a remedy, a court could not reach back beyond the 300 day filing period, the two-year back pay limitation would be meaningless.'" EEOC v. AutoZone, Inc., 258 F. Supp.2d 822, 832 (W.D. Tenn. 2003)(quoting Sabree v. United Bhd. Of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990)).[2]  It is a basic canon of statutory construction that a court should read a statute to give effect to all of its provisions and not render any provision a nullity or surplusage.

    **d.**    *The absence of a limitations period in Section 707 comports with the nature of the pattern or practice violations that are the subject of that provision, and engrafting a limitations period onto Section 707 conflicts with the nature of such violations*

Moreover, as this Court and numerous federal courts have concluded, imposing the Section 706 charge-filing period as a limitation on the scope of Section 707 remedies is wholly at odds with the very nature of a pattern or practice violation. Unlike an individual discriminatory act, a pattern or practice violation is not traceable to any one, discrete event but is an accumulation of a consistent, continuing pattern of unlawful actions over time that constitute a single "practice." Thus, with a pattern or practice violation it makes little sense to speak of "discrete acts" that trigger a charge-filing period or to impose that charge-filing period as a restriction on the Government's remedies, which serve the interests of the sovereign and the American public as a whole rather than any individual victim who may or may not have filed a charge. In short, Section 707 must be read consistent with the nature of its subject matter. This Court and others have applied this rationale when rejecting arguments such as those made by Defendant in this case. See EEOC v. LA Weight Loss, 509 F. Supp.2d 527, 535 (D. Md. 2007); United States v. Fresno Unified Sch. Dist., 592 F.2d 1088, 1096 & n.5 (9th Cir. 1979); EEOC v.

---

[2]  Indeed, although Defendant does not address Section 706(g)(1) in its brief, it invokes that provision as an affirmative defense in its Answer. See Document No. 8 at pg. 3 (Fifth Defense).

Scolari Warehouse Markets, Inc., 488 F. Supp.2d 1117, 1136 (D. Nev. 2007); EEOC v. Dial Corp., 156 F. Supp.2d 926, 967-68 (N.D. Ill. 2001); EEOC v. Mitsubishi Motor Mfg. of Am., 990 F. Supp. 1059, 1084-87 (C.D. Ill. 1998).

Defendant argues that the Supreme Court's decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), supports its view in this matter.  However, Morgan involved private plaintiff litigation under Section 706, not government enforcement actions under Section 707, which as discussed is a statutory provision distinct from Section 706 because it serves different legislative purposes and does not contain any limitations period.  Thus, Morgan simply does not address EEOC authority under Section 707.

Nevertheless, Morgan actually supports EEOC's reading of Section 707.  Furthermore, although EEOC's authority under Section 707 is sufficient standing alone to warrant denial of Defendant's Motion, Morgan also supports application of the continuing violation doctrine to this case.  Defendant invokes the distinction set forth in Morgan between "discrete act" claims and "hostile environment" claims.   This case involves neither.    Rather than Defendant's discrimination being seen as a series of discrete acts, Morgan suggests just the opposite.

The Supreme Court held in Morgan that Title VII precludes recovery for discrete acts of discrimination that occur outside the applicable statutory charge-filing period, but held that Title VII permits recovery for the entire scope of a hostile work environment – including behavior outside the statutory time period – so long as an act contributing to that hostile environment takes place within the applicable statutory charge-filing period.   Morgan, 536 U.S. at 105.   The distinction is rooted in the questions of what constitutes an "unlawful employment practice," and when it can be said to have "occurred."  Discrete acts occur on a specific day, and their hallmark

is that they are "easy to identify," whereas "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  <u>Morgan</u>, 531 U.S. at 114-15.

A pattern or practice of hiring discrimination that results from the implementation of a policy with unlawful disparate impact is far more analogous to a hostile environment than a series of discrete acts.  Unlike a discrete act, a policy producing disparate impact discrimination inherently involves regular conduct over time, and the actual discriminatory impact of the policy would not become apparent to the observer until an employer has implemented it with sufficient frequency to permit assessment of the different impacts that the policy is having on various demographic groups of job applicants.

As Defendant points out (but then ignores in making its discrete act argument), the Supreme Court in <u>Morgan</u> explicitly stated that it had "no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here."  <u>Morgan</u>, 536 U.S. at 115 n.9.   This statement would make little sense unless the Court contemplates the possibility of a pattern or practice being considered one unlawful employment practice, particularly in a case such as this brought by the government under Section 707.  <u>Cf.</u> <u>Morgan</u>, 536 U.S. at 111 (stating "practice" in §703(a) does not connote that discrete acts are one unlawful employment practice for purposes of timely filing just because they are related, and suggesting contrast with phrase-of-art "pattern or practice" in §707).

It is more than likely that if presented directly with the question, the Court would hold that even in a private class action under Section 706 a pattern or practice is generally one unlawful employment practice, and that a plaintiff may recover for any claimant harmed because of the pattern or practice of discrimination irrespective of the date of that harm. <u>See</u> <u>Moore v. Chertoff</u>, 437 F. Supp.2d 156, 163 (D.D.C. 2006)(holding in class action that continuing

violation doctrine has continuing vitality in pattern or practice cases post-<u>Morgan</u>); <u>Torres v. Mineta</u>, No.Civ.A. 04-0015, 2005 WL 1139303, at *4 (D.D.C., May 13, 2005)(same); <u>Anderson v. Boeing Co.</u>, 222 F.R.D. 521, 547 (N.D. Okla. 2004)(same).  This would be not only consistent with the Court's reasoning in <u>Morgan</u>, but also consistent with the Supreme Court's pronouncements in prior cases.  <u>Cf.</u> <u>Zipes v. Trans World Airlines</u>, 455 U.S. 385, 396-97 (1982) (noting authority for recovery by non-charge-filers); <u>Int'l Bhd. of Teamsters v. United Stages</u>, 431 U.S. 324, 347 (1977) ("Here the Government has proved that the company engaged in a post-Act pattern of discriminatory hiring, assignment, transfer and promotion policies. Any Negro or Spanish-surnamed American injured by those policies may receive all appropriate relief as a direct remedy for this discrimination.").  A pattern or practice is legally distinct from any individual's particular claim. <u>See</u> <u>Cooper v. Federal Reserve Bank of Richmond</u>, 467 U.S. 867, 876 (1984) (the crucial difference between an individual's claim and a pattern or practice claim is "manifest," in that "[t]he inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision-making").

In its argument concerning <u>Morgan</u> Defendant places heavy reliance on <u>Williams v. Giant Food, Inc.</u>, 370 F.3d 423 (4th Cir. 2004).  Defendant's reliance is misplaced, as <u>Williams</u> is plainly distinguishable.  In that case the Fourth Circuit held that a single private plaintiff denied a series of promotions could not escape <u>Morgan</u>'s general rule that unlawful discrete acts falling outside the charge-filing period are untimely.  Importantly, <u>Williams</u> was *not* a pattern or practice case, as the Fourth Circuit had previously held that private individuals who do not represent a class cannot maintain pattern or practice claims under any provision of Title VII. <u>See Lowery v. Circuit City Stores, Inc.</u>, 158 F.3d 742, 759-61 (4th Cir. 1998); <u>Williams</u>, 370 F.3d at

429-30 (citing <u>Lowery</u>).  Because the plaintiff was an individual not representing a class, she was not permitted to circumvent the discrete act rule simply by *alleging* that she had been subjected to a pattern or practice of discrimination. <u>See</u> <u>id.</u> at 429-30 & n.3.  <u>Williams</u> thus has no bearing on the instant case, which is explicitly a government pattern or practice suit under EEOC's exclusive, broader Section 707 authority.  Moreover, even if this were a Section 706 class action by private plaintiffs that placed sole reliance on the continuing violation doctrine, <u>Williams</u> is distinguishable and does not abrogate pre-<u>Morgan</u> Fourth Circuit case law applying the continuing violation doctrine to pattern or practice class action claims. <u>See</u> <u>Patterson v. American Tobacco Co.</u>, 634 F.2d 744, 751 (4th Cir. 1980)(applying continuing violation doctrine to pattern or practice class action claims), <u>vacated on other grounds</u>, 456 U.S. 63 (1982).

The Tenth Circuit's decision in <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179 (10th Cir. 2003), is similarly inapposite.  As the Tenth Circuit noted, the case was brought by a single private plaintiff who was not even asserting a pattern or practice claim but bringing separate claims challenging separate acts. <u>See</u> <u>id.</u> at 1185-86.  Indeed, the Tenth Circuit noted that the issue of whether the charge-filing period should be applied to a pattern or practice claim was not decided in <u>Morgan</u>, and the Tenth Circuit expressly declined to decide the issue in <u>Davidson</u>. <u>See</u> <u>id.</u> at 1186 n.3.  In other words, <u>Davidson</u> doesn't answer the question. <u>See</u> <u>Torres</u>, 2005 WL 1139303 at *5 (finding <u>Davidson</u> inapposite for the foregoing reasons).

     **e.**    ***The absence of a limitations period governing the scope of relief in an EEOC Section 707 action serves critical Congressional objectives***

As discussed above, and as recognized by the Supreme Court, in the 1972 amendments to Title VII - which include EEOC's newly conferred powers under Section 707 - Congress intended EEOC to have broad authority and primary responsibility to root out systemic discrimination in the American workplace. <u>See</u> <u>supra</u> at pgs. 3-5, 100-11.  The ability to secure

full remedies under Section 707 - both to compensate and to deter - is central to that endeavor, which is why the Supreme Court has cautioned against interpretations of Title VII that would impair EEOC's ability to redress patterns and practices of discrimination or to secure full victim-specific relief. See Shell Oil Co., 466 U.S. at 69; Waffle House, Inc., 534 U.S. at 296.   In declining to adopt the restriction on EEOC's authority that Defendant proposes in this case, the federal courts have placed substantial reliance on these legislative purposes. See, e.g., EEOC v. LA Weight Loss, 509 F. Supp.2d 527, 535-36 (D. Md. 2007).

      **f.**      ***The district court decisions and policy arguments Defendant relies upon are contrary to controlling authority and otherwise unpersuasive***

In support of its argument, Defendant cites three district court decisions that have misinterpreted Section 707(e) and held that the Section 706(e)(1) charge-filing period operates as a substantive restriction on the scope of EEOC remedies in public interest litigation under Section 707.  See Document 7-1 at pgs. 6-8; EEOC v. Burlington Medical Supplies, Inc., 536 F. Supp.2d 647 (E.D. Va. 2008); EEOC v. Custom Companies, Inc., Nos. 02 C 3768 & 03 C 2293, 2004 WL 765891 (N.D. Ill., Apr. 7, 2004); EEOC v. Optical Cable Corp., 169 F. Supp.2d 539 (W.D. Va. 2001).  Respectfully, these decisions and Defendant's related arguments rest on faulty legal reasoning and are contrary to Supreme Court precedent.

One common aspect of the three district court cases Defendant relies upon is a purported "plain language" reading of Section 707(e) that incorporates the entirety of Section 706. See Burlington Medical Supplies, Inc., 536 F. Supp.2d at 659; Custom Companies, 2004 WL 765891 at *8; Optical Cable, 169 F. Supp.2d at 547.  As has been discussed, this reading of Section 707 is less than obvious even on the face of the text, and it is demonstrably erroneous when analyzed in context.  The argument ignores the structure and other provisions of both Sections 706 and 707, which must be read in harmony, and Congressional intent reflected in both the legislative

history of Section 707 and the purposes underlying EEOC's Title VII and Section 707 authority. See supra at pgs. 9-17 (analyzing statute and citing authorities).  In LA Weight Loss, Judge Quarles specifically rejected this "plain language" reading of Section 707 because it ignores the nature of pattern or practice discrimination and Congressional intent. See LA Weight Loss, 509 F. Supp.2d at 535 (citing Optical Cable and finding rationale unpersuasive).  Indeed, the Optical Cable court recognized that the Section 706 charge-filing period is "not particularly well adapted" to apply to pattern or practice cases. Id. at 547.

    Another theme reflected in these cases and in Defendant's brief is the notion that the absence of a charge-filing period restriction on EEOC's remedies in Section 707 litigation somehow improperly revives private claims of private individuals who did not timely exercise their rights under Title VII by filing an administrative charge. See Burlington Medical Supplies, Inc., 536 F. Supp.2d at 659 (stating EEOC may not "expand substantive rights" to "individual damage claims"); Custom Companies, 2004 WL 765891 at *10 (same).  In other words, this is a conceptualization of EEOC as proxy for the victims of a pattern or practice of discrimination, standing in their shoes and asserting private claims that they have otherwise forfeited.  This view is plainly contrary to Supreme Court precedent concerning EEOC's role and authority.  The Section 707 claims asserted in this case serve the public interest.  Indeed, they are exclusive to the EEOC (and DOJ), for unlike Section 706, Section 707 does not authorize a private right of action. See generally 42 U.S.C. § 2000e-6.  When EEOC files suit it does so in its own name asserting its own independent cause of action as a law enforcement agency, and does not assert the causes of action of, or act as a proxy for, private individuals.  Back pay awards in such actions have the effect of compensating victims, to be sure, but they achieve the paramount public policy goal of general and specific deterrence, which is achieved regardless of who

receives those awards. See supra at pgs. 3-5 (citing authorities).  See also In re Bemis Company, Inc., 279 F.3d 419, 421 (7th Cir. 2002)("The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately.")(citing Waffle House).[3]

Similarly, these cases and Defendant's argument invoke the idea that EEOC serves the public interest primarily through securing injunctive remedies rather than monetary relief. See Burlington Medical Supplies, Inc., 536 F. Supp.2d at 659; Custom Companies, 2004 WL 765891 at *11.  This rationale is incorrect as a matter of law.  The Supreme Court has rejected the dichotomy, stating that monetary remedies recovered by EEOC serve the public interest, sometimes more than an injunction. See Waffle House at 290-96; supra at pgs. 4-5.

Defendant also emphasizes that one of its relied upon cases criticized the decision in Mitsubishi Motor as relying heavily on the unique circumstances of a Commissioner's charge as opposed to litigation resulting from a private individual's charge (the latter precipitating this litigation), and it also criticized the Dial Corp. decision, which involved a charge filing by a private individual, for allegedly accepting the Mitsubishi Motor rationale without analyzing the distinction between the two types of charges. See Custom Companies, 2004 WL 765891 at *8. This argument is meritless for two reasons.

First, Defendant's cited criticism inaccurately described the Dial Corp. opinion.  In Dial Corp. Judge Urbom did in-fact recognize the distinction and discussed it thoroughly; he simply found it was a distinction without a difference. See Dial Corp., 156 F. Supp.2d at 967-68 (noting

---

[3]  Another District Judge in the Northern District of Illinois has recognized that the Custom Companies rationale does not withstand scrutiny under Waffle House and subsequent Seventh Circuit decisions. See EEOC v. Ceisel Masonry, Inc., 594 F. Supp.2d 1018, 1022 (N.D. Ill. 2009) (holding failure of aggrieved persons to timely file charges did not bar EEOC from seeking monetary remedies regarding their employment).

EEOC authority to litigate any violations uncovered during the course of reasonable investigation, nature of pattern or practice violation and poor fit of § 706(e)(1) filing period as restriction on § 707 remedies, and rule that stale claims arguments cannot prevail when employer engages in continuing policy of discrimination into the charge-filing period).

More importantly, Defendant's argument is incorrect as a matter of law.  Section 707(e) references both private individual and Commissioner charges, and it draws no distinction between the two. See 42 U.S.C. § 2000e-6(e).  As the Dial Corp. court correctly observed, the nature of a pattern or practice of discrimination and its incompatibility with Defendant's argument does not turn on who filed the charge, see id. at 968, neither does EEOC's pattern or practice litigation authority turn on the identity of the person filing the charge, see 42 U.S.C. § 2000e-6(e); EEOC v. General Electric Co., 532 F.2d 359, 364 (4th Cir. 1979)(EEOC has authority to expand investigations beyond allegations of the charge).

Finally, both Defendant and the cases it cites reference the purposes of limitations periods generally, i.e., encouraging prompt charge filing to permit notice of a violation and employer correction and avoiding litigation of stale claims.  Neither purpose is defeated by the absence of an artificial time restriction on EEOC remedies in a Section 707 action.

First, Congress's decision to not impose a limitation period restricting the federal government's remedies in a Section 707 action does not in any way undermine the goal of prompt filing by an employee or notice to the employer.  It is axiomatic that individuals who file charges with EEOC are generally seeking to protect their own personal interests.  Those who do not file within the charge filing period will forfeit their private causes of action as being time-barred by operation of Section 706(f)(1) absent circumstances establishing equitable tolling, equitable estoppel or another similar doctrine excusing strict compliance with the charge-filing

period.   Thus, aggrieved persons have a corresponding powerful self-interest in timely charge-

filing.   To say that failing to improperly engraft the Section 706(e)(1) restriction on EEOC

remedies in Section 707 litigation (in the few cases brought each year out of 90,000+ charges

filed) will somehow discourage those persons from prompt charge filing is simply unrealistic.[4]

Nor does the "stale claims" rationale ring true here.   Notwithstanding Defendant's

rhetoric about liability for employment actions occurring "decades earlier", there is no need to

artificially engraft the Section 706 charge-filing period unto EEOC's Section 707 remedies.   As

discussed, Section 706(g)(1) expressly limits back pay accrual to a period not more than two

years prior to the charge filing.[5]   And employers may certainly assert a laches defense to stale

claims.   Moreover, as the federal courts have frequently observed:

> [W]here as here, a plaintiff attacks a rule *or policy that continued
> to exist right up into the limitations period*, concerns about
> prejudice to the defendant are absent or diminished . . . the
> continued nature of the policy represents its affirmative
> perpetuation . . . and is susceptible to characterization as a
> conscious waiver of limitations period protection . . . "Simply put,
> an employer that maintains a continuing violation neither deserves
> nor obtains repose."

EEOC v. Dial Corp., 156 F. Supp.2d 926, 968 (N.D. Ill. 2001)(emphasis in original)(quoting

United States EEOC  v. City of Chicago, No. 85 C 7281, 1989 WL 134788, at *9 (N.D. Ill., Oct.

13, 1989)(quoting EEOC v. Home Ins. Co., 553 F. Supp. 704, 712 (S.D.N.Y. 1982)).

---

[4]   Indeed, as the Supreme Court has observed, it is the prospect of pattern or practice liability under Section 707 that encourages careful self-evaluation by employers, thereby preventing pattern or practice violations in the first instance. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975).

[5]   To be clear, Section 706(g) does not bar all remedies regarding any aggrieved person subjected to discrimination more than two years prior to the charge.  Rather, it is a limitation on back pay *accrued* during periods more than two years before the charge filing date regardless of when the discrimination occurred. See 42 U.S.C. § 2000e-5(g)(1). Thus, for the subset of aggrieved persons who were not hired by Defendant due to its discriminatory back ground check policy more than two years before the charge EEOC may still recover back pay, but only to the extent that the Court finds they are owed back pay for periods commencing on or after December 19, 2005.  Moreover, Section 706(g) does not operate to limit injunctive and victim-specific non-monetary remedies such as instatement.

2.      <u>Defendant has failed to identify the correct charge-filing date</u>

Defendant further asserts that the 300-day period that it seeks to engraft onto Section 707 runs from the date of Charging Party Vaughn's formal administrative charge of discrimination form (hereinafter referred to as "Form 5"), which according to Defendant was January 17, 2008. On this point Defendant is factually mistaken, as it has focused on the wrong document.  Vaughn actually filed her charge of discrimination with EEOC, in the form of a questionnaire,  attached letter and other enclosed documentary evidence setting forth all minimum information required and indicating an intent to trigger the EEOC investigative process, on December 19, 2007. <u>See</u> Exb. 1 (Vaughn Questionnaire dated 12/19/2007); Exb. 2 (Declaration of Ronald L. Phillips). The case law demonstrates that Vaughn's letter constitutes a charge of discrimination within the meaning of Title VII.

An unverified questionnaire or letter filed by an aggrieved person with the EEOC may constitute a charge of discrimination.  In <u>Edelman v. Lynchburg College</u>, 535 U.S. 106 (2002), the Supreme Court held that for purposes of calculating whether a timely charge has been filed under Section 706, the verification of allegations in a Form 5 charge form may relate back to and incorporate the date of an earlier-filed, unverified document if the earlier document is sufficient to constitute a charge of discrimination. <u>See</u> <u>id.</u> at 115-19.   On remand, the Fourth Circuit held that an employee's letter indeed constituted a charge of discrimination within the meaning of Section 706 that satisfied the Section 706 charge filing period notwithstanding the fact that EEOC did not assign it a charge number or serve it on the employer or state deferral agency (and instead waiting to serve the formal Form 5). <u>See</u> <u>Edelman v. Lynchburg College</u>, 300 F.3d 400, 404-05 (4th Cir. 2002).

The Supreme Court has also announced the standards for determining which documents submitted to EEOC constitute charges under the ADEA (which incorporates the Title VII charge-filing requirement).  In <u>Holowecki v. Federal Express Corp.</u>, 128 S.Ct. 1147 (2008), the Court held that consistent with the EEOC's position, a document - in that case an EEOC intake questionnaire - constitutes a charge "if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf." <u>Id.</u> at 1159.  The Court also noted the fact that EEOC's processes were designed to be accessible to laypersons filing without the benefit of counsel, and thus that such documents should be construed liberally to protect those layperson's rights and not undermine Congress's remedial intent. <u>See id.</u> at 1158, 1160.

Applying <u>Holowecki,</u> Vaughn's EEOC questionnaire constitutes a charge within the meaning of Title VII.  In her questionnaire, she identifies all information necessary to satisfy EEOC's Title VII procedural regulation concerning charge content, including her name and contact information, Defendant's name and contact information, a concise statement of the circumstances of the alleged discrimination, her estimate of the number of employees working for Defendant, and whether she had filed charge regarding these issues with EEOC or any other agency. <u>Compare</u> Exb. 1 <u>with</u> 29 C.F.R. § 1601.12(a) & (b).  She also enclosed multiple pages of relevant evidence with the questionnaire. <u>See</u> Exb. 2 at ¶ 3.

Moreover, on the fourth page of the Questionnaire form there is a section that advised Ms. Vaughn of the following:

> **3. PRINCIPAL PURPOSE.** The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).

Exb. 1 at pg. 4.  On the first page, the form also advised Vaughn that she should "immediately complete the entire form and return it" and immediately thereafter prominently advises her that "a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days [or] . . . 300 days of the alleged discrimination." Exb. 1 at pg. 1.

Post-Holowecki, the federal courts have focused on the language cited above in the revised EEOC Intake Questionnaire (10/2006) used by Charging Party Vaughn and have concluded that it constitutes a valid charge that satisfies Holowecki standards. See, e.g., Hodge v. United Airlines, --- F. Supp.2d ---, WL 2009 3416202, at *5 (D.D.C., Oct. 26, 2009) (citing Beckham v. National R.R. Passenger Corp., 590 F. Supp.2d 82, 85-87 (D.D.C.)); Palmer v. Southwest Airlines Co., No. 08 C 6158, 2009 WL 3462043, at *6-8 (N.D. Ill., Oct. 28, 2009); Cargo v. Kansas City Southern, Civ. Action No. 05-2010, 2009 WL 3010830, at *3 (W.D. La., Sept. 16, 2009)(citing Beckham).[6] See also Jones v. U.P.S., Inc., 502 F.3d 1176, 1184 (10th Cir. 2007) (pre-Holowecki decision treating questionnaire with similar language as a charge manifesting an intent to trigger EEOC's processes).  Moreover, the content of her questionnaire (such as her allegations) and that fact that she enclosed relevant evidence objectively evinces an intent to invoke EEOC's investigative and remedial process.

3.     Conclusion

Defendant's reliance on the charge-filing period governing litigation by private individuals in an attempt to limit EEOC's remedies in this pattern or practice action is misplaced. The remedies available to the federal government in a Section 707 action are not restricted by the Section 706 charge-filing time limitation.  Defendant's argument to the contrary ignores the structure of Title VII, its legislative history, critical congressional objectives embodied in Title

---

[6]  This form was not at issue in Holowecki, as the Court recognized. Id. at 1164 n.4 (Thomas, J., dissenting) (noting distinction between form in this action and old form in Holowecki).

VII, the nature of systemic patterns and practices of discrimination, and the unique role and authority of EEOC to redress such discrimination.   For the reasons set forth above, EEOC respectfully requests that this Court deny Defendant's Motion.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

_____/s/_____
DEBRA M. LAWRENCE (Bar No. 04312)
Acting Regional Attorney
EEOC-Philadelphia District Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 209-2734
Facsimile number: (410) 962-4270

_____/s/_____
RONALD L. PHILLIPS
Acting Supervisory Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 209-2737
Facsimile number: (410) 962-4270