**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>FREEMAN,<br><br>        Defendant. | Case No. 8:09-CV-02573-RWT |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Freeman moves for summary judgment as to all claims in this lawsuit relating to decisions not to hire applicants based on their criminal history that were made more than 300 days before the date on which Plaintiff EEOC notified Freeman it had expanded its investigation of this matter to include Freeman's use of criminal history information. Specifically, Freeman moves for judgment as to all such claims relating to decisions made prior to November 30, 2007. Challenges to hiring decisions based on criminal history information made before that date are time-barred.

**I.**       **STATEMENT OF UNDISPUTED FACTS**

EEOC brings this action alleging that Freeman unlawfully discriminates (1) against African American applicants by using poor credit history as a hiring criterion and (2) against African-American, Hispanic, and white male applicants by using criminal history as a hiring criterion. (Complaint ¶¶ 8-11). Originally, EEOC challenged these practices dating back to February 2001. (*Id.*). However, this Court granted Freeman's motion to dismiss all claims that relate to hiring decisions made prior to March 23, 2007. (Memorandum Opinion, April 26, 2010,

at 12). It ruled that claims relating to earlier hiring decisions are time-barred because they occurred more than 300 days before the filing of the administrative charge on which EEOC bases this lawsuit. (*Id.*).

That administrative charge, filed by Katrina Vaughn on January 17, 2008, alleged only that Freeman discriminated against her by virtue of its use of credit history as a hiring criteria. (Declaration of Suzanne Bragg ("Bragg Decl.") ¶2 (Attachment A hereto) and Ex. 1 to Bragg Decl.). The charge made no reference to Freeman's use of criminal history, nor was Ms. Vaughn eliminated from consideration for employment at Freeman due to any record of such history. (Bragg Decl. ¶ 3).

Accordingly, it was only after EEOC began investigating Vaughn's charge that it expanded the investigation to encompass Freeman's use of criminal history in the hiring process. In discovery requests, Freeman asked EEOC to "identify the date on which [it] decided to expand [its] investigation of the charge filed by Katrina Vaughn. . .to include use by Defendant of criminal history as a criteria in the selection of employees. . . ." (Defendant Freeman's First Interrogatories to Plaintiff EEOC, No. 18, p. 13, Attachment B hereto). EEOC responded that it "has not been able to ascertain the precise date of this decision." (Plaintiff EEOC's Answers to Defendant Freeman's First Interrogatories to Plaintiff EEOC, p. 24, Attachment C hereto). Remarkably, the best EEOC could do was to state that the decision "appears to have occurred sometime between March 25, 2008 and September 25, 2008." (*Id.*).

In any case, it is undisputed that EEOC did not notify Freeman that it was investigating the company's use of criminal history information until September 25, 2008. On that date, EEOC so notified Freeman through a letter from Regional Director Gerald S. Kiel to Becky Rynas, a Freeman representative. (Bragg Decl. ¶4 and Ex. 2 thereto). Before receiving that

letter, Freeman had no knowledge that EEOC was investigating anything other than a claim that its use of credit history information is discriminatory. (Bragg Decl. ¶5).

## II.  ARGUMENT

As this Court has ruled, all claims arising from a period more than 300 days before Vaughn filed her charge are barred in this case under the plain language of Section 706(e)(1) of Title VII. The issue here is whether claims that were not implicated by Vaughn's charge, but emerged only during the EEOC's investigation, are barred to the extent they arose more than 300 days before Freeman learned that EEOC had expanded its investigation.

The statutory language, coupled with Fourth Circuit precedent, establishes that such claims are barred. Under Section 706(e)(1) of Title VII, a charge "shall be filed" within 300 days after the unlawful employment occurred where, as here, state law proscribes the alleged discriminatory practice and the charge has initially been filed with a state deferral agency. 42 U.S.C. §2000e-5(e)(1). In this case, no charge was ever filed alleging that Freeman's use of criminal history as a selection criterion is discriminatory. In these circumstances, Fourth Circuit law ordinarily deems the "filing" date to be the day on which the employer received notification from EEOC that it is expanding its investigation to consider such a claim. This is the correct approach because, like a charge, such notification puts the employer on notice of the prospect that it must defend and/or abandon the policy in question.

The issue of the limitations on an action in which EEOC challenges types of alleged discrimination not contained in a charge first arose in *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 371 (4th Cir. 1976), in the context of computing back pay. The main issue there was whether EEOC could file a lawsuit based on types of discrimination not alleged in the administrative charge, but discovered during the course of an investigation, or whether a new charge of discrimination was

required. The Court held that EEOC can sue, based on a single charge, to remedy any discrimination uncovered in the course of a reasonable investigation of that charge.[1]

One of General Electric's main arguments against this result was that it would suffer prejudice in the form of expanded back pay liability if EEOC were not required to file a new charge for claims of discrimination not specified in the original charge. The Fourth Circuit acknowledged that "substantial prejudice" might well result if back pay were calculated from any date earlier than the one on which the employer received notice of the additional alleged discrimination. The Court addressed that concern by stating that back pay ordinarily should not be calculated from such a date:

> To limit the right to backpay in this case (assuming, of course, the EEOC should prevail) to the period of two years before notice of the claim was given the defendant by the filing of the EEOC's determinations of "reasonable cause" would be clearly within the discretion of the trial court and in keeping with the legislative intent; *in fact to hold otherwise would be an abuse of discretion in this case, provided there were no countervailing equities.*

532 F.2d at 372 (emphasis added). *See also Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 276 (4th Cir. 1976).

Under Title VII, "back pay liability shall not accrue from a date more than two years prior to *the filing of a charge* with the Commission." 42 U.S.C.§ 2000e(5)(g) (emphasis added). Thus, in the context of a lawsuit alleging types of discrimination not contained in the charge, the Fourth Circuit, per *Gilbert* and *Patterson*, treats the date of notification to the employer of the expansion of the charge as the date of "the filing" of that aspect of the "charge."

The same reasoning applies in determining the date of "filing" for purposes of Section 706(e)'s 300-day limitations period on claims. *See EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 547 (W.D. Va. 2001). In *Optical Cable*, EEOC brought a suit raising claims of classwide

---

[1] This, of course, is what EEOC has done in this case by challenging not just over the policy raised in Vaughn's charge but also the use of criminal history as a hiring criteria.

hiring discrimination against blacks and females based on a charge that alleged only the discriminatory discharge of one black employee. Defendant argued that relief was not available to any black or female who was denied employment at any time prior to 180 days before the date on which EEOC advised it of the expansion of the charge to include a pattern or practice of hiring discrimination against blacks and females.[2]

>The Court agreed. It stated:

>>The Fourth Circuit has not hesitated to use the date the EEOC notifies the defendant that it is commencing a pattern or practice case against them as the date of "filing of a charge" for purposes of calculating the two-year backpay period of Section 2000e-5(g). *EEOC v. General Elec. Co.*, 532 F.2d 359, 371 (4th Cir. 1976). I do not see why a determination of the date by which "a charge. . .shall be filed under Section 2000e-5(e)" should be any different . . . .

>>In the absence of a better alternative, I find that the "filing" dates for the race and gender pattern or practices charges were the dates on which the EEOC notified Defendant that it was expanding its investigation to encompass these charges.

169 F. Supp. 2d at 547.

Here, under the same analysis, the date from which to measure the 300-day limitations period is September 25, 2008, when EEOC informed Freeman that it was expanding its investigation to encompass the company's criminal background check policy. Thus, the limitations date for claims based on that policy is November 30, 2007.

This result comports with the public policy underlying the limitations period established under Title VII. The statute's charge-filing period, coupled with its notification provision, promotes prompt notification to employers of alleged violations. This, in turn, helps effectuate "the Act's primary goal, the securing of voluntary compliance with the law." *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969). Any delay in notifying an employer that a new

---

[2] In *EEOC v. Optical Cable*, the defendant urged a 180-day period, instead of 300 days, because EEOC did not defer the administrative charge to the Virginia Council on Human Rights.

form of discrimination is being investigated frustrates the goal of securing prompt voluntary compliance with respect to the practice in question.

Such delay is also unfair to the employer. Indeed, when Congress amended Title VII in 1972, it added the requirement that EEOC notify employers of charges within ten days for the "specific purpose" of "giv[ing] employers fair notice of the existence and nature of the charges against them." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). As the Supreme Court has explained, "prior to 1972, the EEOC had become prone to postponing until it was ready to begin an investigation the mandatory notification to the employer that charges were pending against it." *Id.* at 74-75. It was "[i]n response to complaints regarding the unfairness of this practice" that "Congress adopted the present requirement that notice be given to an accused employer within 10 days of the filing of the charge." *Id.* at 75.

In this case, EEOC admits that it may have decided as early as March 25, 2008 to investigate Freeman's criminal history screening policy, but did not notify Freeman of this expanded investigation until six months later. EEOC should not, as a consequence of such delay, be able to enlarge the class of individuals for whom it can seek relief.

The Title VII limitations period and notification requirement also promote fairness by protecting employers from the burden of litigating stale claims. *Delaware State College v. Ricks*, 449 U.S. 250, 256-57 (1980). "Staleness" is measured by reference to the time the employer learns of the particular claim of discrimination.[3] The employer, after all, cannot take steps to collect and preserve the evidence needed for its defense until it has notice of the potential claim. *See EEOC v. Shell Oil*, 466 U.S. at 75 (noting the importance of giving employers sufficient notice to ensure that documents pertaining to allegations of discrimination are not destroyed).

---

[3] For claims contained in the administration charge, the 300-day period actually runs from the date the charge is filed, rather than the date the employer is notified of the charge. As noted, EEOC must provide the employer with notice of the charge within 10 days of the charge being filed. 42 U.S.C. 2000-e(5)(1).

In sum, a cut-off date of November 30, 2007 in this action for claims of discrimination based on EEOC's use of criminal history information in hiring is supported by the language of Title VII, by Fourth Circuit law, and by the policy considerations associated with statutes of limitation. Accordingly, the Court should strike all claims relating to decisions not to hire applicants based on their criminal history that were made before November 30, 2007.

### III. CONCLUSION

This Court should grant Freeman's Motion for Partial Summary Judgment.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ Donald R. Livingston
Donald R. Livingston (Bar No. 15787)
Paul E. Mirengoff (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
dlivingston@akingump.com
pmirengoff@akingump.com

*Attorneys for Defendant Freeman*