**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. RWT-09-CV-2573** |
| ) | |
| **FREEMAN,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

<u>**PLAINTIFF EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Pursuant to the Federal Rule of Civil Procedure 56 and Local Rule 105, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") files the instant Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment in the above-styled and numbered action.   For the reasons set forth below, EEOC respectfully requests that the Court deny Defendant's Motion.

**I.  INTRODUCTION AND STATEMENT OF FACTS**

This is an action brought under Sections 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") to remedy Defendant Freeman's on-going, nationwide pattern or practice of race, national origin, and sex discrimination against Black, Hispanic, and male job applicants through its use of hiring selection criteria, viz., applicant credit history information and criminal justice history information, that have an unlawful discriminatory impact on such applicants in violation of Title VII.   Defendant's pending motion for partial summary judgment relates solely to the criminal justice history aspects of EEOC's claims.

1

Defendant previously filed a motion to dismiss in this action seeking dismissal of the portion of EEOC's pattern or practice hiring discrimination claims that relate to persons denied hire more than 300 days before Charging Party Katrina Vaughn filed her charge of discrimination.  In so doing, Defendant relied primarily on a plain language argument, asserting that the text of Section 707(e) incorporates all procedural requirements of Section 706 and that therefore EEOC's remedies, like a private party's remedies, are restricted by the 300-day charge-filing period set forth in Section 706(e)(1).  EEOC opposed that motion, stating there is no applicable limitations period in EEOC pattern or practice actions.  EEOC based its opposition on a reading of Section 707(e) in light of the text, history and purposes of the 1972 Amendments to Title VII, as well as the applicability of the continuing violation doctrine to pattern or practice cases.

The Court granted Defendant's prior motion, agreeing with Defendant that the plain language of Section 707(e) incorporates the limitations on remedies embodied in the charge-filing period set forth in the plain language of Section 706(e)(1), which requires a charge to be filed within 300 days of the date of violation.  Notably, under the plain language of Section 706(e)(1), the limitations period runs back from the date of charge *filing*.  This Court determined that the date of that filing in this case was January 17, 2008.

Having previously urged the Court to accept a plain language reading of Sections 707 and 706 regarding the limitations issue, Defendant now argues that the Court should reject the plain language of the Act and further restrict EEOC's remedies (regarding the criminal history aspect of EEOC's hiring claims) by running the charge-filing period back not from the date of charge-filing, which is what the statute provides, but instead from some later date when Defendant deems itself to have received notice

2

that the scope of the investigation included use of criminal history as a selection criterion.  In this regard, Defendant asserts that its first notice that EEOC would investigate the criminal history selection criterion occurred when it received a September 25, 2008 letter from EEOC informing it that EEOC was investigating that issue.

As discussed more fully below, Defendant was on notice of the potential that its selection practices violated Title VII well-before September 2008.  Moreover, Defendant misreads the case law that it cites – which is inapposite – and even applying the holding in those cases, Defendant has failed to demonstrate the equitable conditions necessary to permit deviation from the charge-filing date as the date from which the charge-filing period should run. In this regard, Defendant's motion is both premature and unsupported by any showing of substantial prejudice required by the case law.  Finally, Defendant omits the fact that in the limited, distinguishable circumstances where the Fourth Circuit has afforded discretion to run the charge-filing period from a date subsequent to the charge-filing date, it has applied the *two-year* limitations period in Section 706(g) to those claims, not the 180/300-day period set forth in Section 706(f)(1).

For the reasons set forth below, Defendant's Motion should be denied.

## II.  ARGUMENT

1.  <u>Defendant has misinterpreted the case law it cites, and it has not demonstrated the conditions that would permit deviation from the charge-filing date</u>

In a Title VII case, "[t]he power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions. A court must exercise this power 'in light of the large objectives of the Act.'" *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416 (1975) (citations omitted).  The purpose of a

back pay award is to further the "central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Moody*, 422 U.S. at 421.  Without the real possibility of liability for back pay, employers would not have the incentive to self-examine their policies and practices and take steps towards voluntary compliance with Title VII that Congress envisioned in enacting Title VII. *Moody*, 422 U.S. at 418.   Given the compelling remedial purposes of back pay, a federal court should not restrict a back pay award unless it would "improperly and substantially" prejudice the other party. *Id.* at 416.  Accordingly, a court should not take lightly its obligation to consider the awarding of back pay in light of a finding of unlawful discrimination.

Pursuant to Section 706(g) of Title VII, "back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." 42 U.S.C. § 2000e-5(g).  The date of accrual is from *the filing of the charge*, not from the notice of the charge. *Id.*  In this regard, Section 706 of Title VII requires notice of the charge be served on the employer within 10 days of its filing; however, the federal courts have held that later service of the notice is not fatal to the EEOC's ability to bring a claim against the offending employer where the employer can show no prejudice resulting from the delay. *See EEOC v. Burlington Northern, Inc.*, 644 F.2d 717, 720-21 (8th Cir. 1981); *EEOC v. T. Marzetti Co.*, 411 F.Supp. 1036, 1038-39 (S.D. Ohio 1976).

Defendant moves this Court to establish as the charge-filing date for all claims related to its use of criminal history information the date of the EEOC letter--September 25, 2008.  Freeman relies heavily on *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976), as support for its motion. See Document No. 27-1 at pp. 3-6.  However, the facts in *General Electric* are materially different from the facts in the instant case.

In *General Electric*, the action grew out of two charges of discrimination against GE: one filed by Mr. Ford on May 19, 1969, complaining of racial discrimination in promotion and job transfer, and one later filed by Scott Slaughter on September 22, 1969, complaining of racial discrimination in employment. *General Electric*, 532 F.2d at 362. The EEOC investigated Slaughter's charge first and issued an administrative determination in his case on December 27, 1971. *Id.* The EEOC did not find reasonable cause to believe race discrimination had occurred, but did find reasonable cause to believe that sex discrimination had occurred with respect to GE's differential testing practices. *Id.* On May 11, 1972, the EEOC found reasonable cause to believe that GE had engaged in racial discrimination in its promotion and transfer practices as alleged by Mr. Ford. *Id.*

After conciliation efforts failed to yield a resolution, EEOC commenced litigation on race and sex claims against GE. *Id.* at 362. The district court granted GE's motion for summary judgment on the sex claim. *General Electric*, 532 F.2d at 362. On appeal, the Fourth Circuit reversed, finding: "When the same material, i.e., the tests used by the defendant, give rise to a reasonable cause to believe the defendant thereby is practicing discrimination both racial and sexual, the EEOC need not confine its actions to the racially discriminatory aspects of the testing program but may 'include in its deliberations all facts developed in the course of a reasonable investigation of that charge' [] and may predicate a reasonable cause determination thereon... And any claim included properly in the reasonable cause determination and offer to conciliate may be the basis of a civil suit, if conciliation on that claim fails." *Id.* at 370 (citations omitted).

GE also contended that because the EEOC first notified it of the sex discrimination claim more than two years after Mr. Slaughter's charge was filed, it may

be prejudiced in connection with back-pay liability. *General Electric*, 532 F.2d at 371. "The basis for this contention is that the Act limits the right to backpay to a period of two years prior to the filing of the charge with the EEOC. It argues that to entertain suit on this claim of sex discrimination would lay it open under the decision in *Albemarle Paper Co. v.* Moody, 422 U.S. 405 (1975), to backpay liability for a period of some four years before it received any notice that a claim of sex discrimination was being asserted." *Id.* (citations omitted).

The Fourth Circuit found that in *Moody* the Supreme Court "did not . . . establish an absolute rule of backpay liability in any case where discrimination was found; it recognized that the right might be denied where the allowance would 'improperly and substantially' prejudice the other party." *General Electric*, 532 F.2d at 371-72.   The Fourth Circuit further stated:

> And it may well be that there would be "substantial prejudice" within the intent of the Act if any date earlier than that on which the employer was given notice of the claimed discrimination was used as the critical date for calculating a claim for backpay. This was the date Congress seemingly intended as the critical date for such purpose. *To limit the right to backpay in this case (assuming, of course, the EEOC should prevail), to the period of two years before notice of the claim was given the defendant by the filing of the EEOC's determinations of "reasonable cause" would be clearly within the discretion of the trial court* and in keeping with the legislative intent; in fact, to hold otherwise would be an abuse of discretion in this case, *provided there were no countervailing equities. Whether such equities exist is a matter better to be resolved after trial.* Assuming no countervailing equities, which would justify different treatment, the defendant can suffer no "substantial prejudice" in its liability for backpay as a result of entertaining in this suit the count claiming sex discrimination.

*Id.* at 372 (emphasis added).

Defendant ignores the Fourth Circuit's holding that the existence of any "countervailing equities . . . is a matter better to be resolved after trial." *Id.* at 372.  *See also EEOC v. American National Bank*, 574 F.2d 1173, 1175-76 (4th Cir. 1978) ("Whether

the commission's delays caused prejudice that will justify a limitation of the relief which the district court should decree can best be considered after the facts have been fully developed, if the commission ultimately prevails") (citing *General Electric*).  Discovery is not complete in this action, including discovery relevant to the relative equities.  See Exhibit 5 at ¶ 2 (Declaration of Ronald L. Phillips).  Accordingly, Defendant's motion is highly premature and should be denied on that basis alone.[1]

   2.  <u>*General Electric* and cases that have relied upon it are distinguishable, and on the facts of this case the equities do not favor a limitation on back pay accrual</u>

   More significantly, Defendant skips right over the equities issue in *General Electric.*  Back pay is an equitable remedy and subject to equitable considerations.  However, as *General Electric* reflects, when a defendant invokes equity as a basis to limit liability for its wrongdoing, such as "substantial prejudice," it must demonstrate the prejudice.  *Id.* at 372. *See also EEOC v. American National Bank*, 574 F.2d 1173, 1175-76 (4th Cir. 1978) (declining to use delay as rationale to limit temporal scope of EEOC back pay remedies in pattern or practice case based on individual charge absent showing of prejudice).   Defendant has failed to adduce competent evidence of any "substantial prejudice" it would suffer if the back-pay accrual date is not deemed to be the same date as the original charge filed by Ms. Vaughn.  It has not demonstrated that material evidence necessary to its defense has been lost, nor has it demonstrated any other prejudice.

---

[1]   In this regard, discovery may not be complete for some time.  Data and document production is on-going, and the  parties have not yet completed any depositions for that reason.  In addition, the parties have tentatively agreed to conduct mediation with a private mediator before completing full discovery.

a.    *The facts regarding notice and the relative equities in this case are clearly distinguishable from the General Electric decision*

The instant case is clearly distinguishable from the circumstances in *General Electric*, and those factual distinctions demonstrate that the equities do not support rejecting the charge-filing date in favor of some later back pay accrual date.  There are numerous equities that militate against granting Defendant's motion.

In *General Electric*, a central factor in the Fourth Circuit's decision to select the EEOC administrative determination date as the date to measure back pay accrual was the lack of notice provided by the charge.  In this regard, the only claim raised in Mr. Slaughter's Charge of Discrimination against GE concerned being denied employment because of his race (Black), not the sex discrimination against female persons that was the subject of EEOC's later litigation based on that charge. *See id.* at 375-76.  Moreover, the charge at issue in *General Electric* only raised a claim for one person, Mr. Slaughter, related to a comment about whether he were a Black Panther as the reason for why he was denied employment with GE.  *See id.* at 475-76.   In *General Electric*, GE was not notified of the addition of sex discrimination until more than two years after Mr. Slaughter filed his charge with the EEOC. *See id.* at 362, 371.

Ms. Vaughn, on the other hand, raised the issues of *race* discrimination *against a class of racial minorities*, and she specifically referenced being subjected to three components of Freeman's background check policy in hiring: credit history, drug testing, and *criminal history*. See Document No. 27-2 at Exh. 1 (Vaughn Charge).  It appears Defendant clearly understood that its Background Check policy was at issue in Ms. Vaughn's charge.   In its response to EEOC's investigative request for additional information, Defendant referred to the credit check and criminal history check as

portions of its background check policy, thereby demonstrating it considered them to be one and the same, and offered justifications for those components of the policy. *See* Exhibit 4 at pg. 1-3 (Defendant's 5/31/2008 letter to EEOC) (discussing rationale for criminal history and other background check criteria); Exhibit 5 at ¶ 5 (Declaration of Ronald L. Phillips).  Moreover, Defendant used another portion of its Background Check policy as a defense to Ms. Vaughn's charge when it cited to her testing positive for drugs. *See* Exhibit 4 at pg. 1.  Ms. Vaughn also mentioned the drug screening portion of the policy in her charge.

While Ms. Vaughn was challenging the credit check in her charge, she referred to it in the context of the background check policy, and she specifically referenced the credit check, drug-screening, and criminal history components of the policy. *See* Document No. 27-2 at Exh. 1 (Vaughn Charge).  Defendant clearly understood that the whole background check process was at issue with her charge.  In Defendant's policy manual, criminal and credit checks are all part of the exact same background check policy and used in tandem.  Its use of both credit and criminal history information are mere sub-components of a single, integrated, interactive background check policy; these are not separate employer policies. *See* Exhibit 3 (Defendant's background check policy) (describing mix of criminal and credit searches to be used for three levels of applicants and background check subcomponents).  None of these facts were present in *General Electric*.

In this regard, Ms. Vaughn's charge satisfies the notice provision of § 706(b) of Title VII, and Defendant was adequately placed on notice of the potential for the EEOC to investigate its use of criminal history information as well as credit history information by service of that charge.

In *EEOC v. Shell Oil Co.*, 466 U.S. 54, 74 (1984), the Supreme Court held that "the principal objective of the [notice] provision [embodied in § 706(b) of Title VII] seems to have been to provide employers fair notice that accusations of discrimination have been leveled against them and that they can soon expect an investigation by the EEOC." *Id.* at 74.  Notice by way of the charge was intended to serve the purpose of enabling an employer "to undertake its own inquiry into its employment practices and to comply voluntarily with the substantive provisions of Title VII" as well as alerting the employer to the range of personnel records that need to be retained. *Id.* at 79.  In terms of determining what notice the charge actually provides, the "court looks to the factual narrative, and considers what legal conclusions can be inferred from that narrative, rather than relying on the legal conclusion stated in the charge." *EEOC v. World's Finest Chocolates*, 701 F. Supp. 637, 640 (N.D. Ill. 1988).

When reviewing the factual narrative in Ms. Vaughn's charge, it is clear she put Freeman on notice that she was challenging its Background Check policy as being discriminatory.  To wit:  Ms. Vaughn states "I applied for a position with the above named Respondent in late August 2007 as a Logistics Coordinator. I have previous background in the industry and was informed by Respondent, after my interview with Michelle Finley, that I would be hired, contingent on my passing a drug, *criminal* and credit background check." Document 27-2 at Exh. 1 (Vaughn Charge Form attached as exhibit to Defendant's Motion) (emphasis added).  Ms. Vaughn goes on to state that she was "discriminated against because of [her] race, Black, as to hire, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*  She averred discriminatory application of this policy to her when she was informed she was not hired due to her credit history, which she alleged was discriminatory on the basis of her race (Black). *Id.*

Her complaint did not end there, however, because she also alleged that the background check policy was discriminatory to a class of "racial minorities." *Id.*

While the EEOC began its investigation into Ms. Vaughn's first specific allegation that she was discriminated against when she was denied employment for failing Defendant's credit-history standard, upon obtaining a copy of the Background Check policy referenced in the charge, the EEOC soon began investigating the class-wide inferences in Ms. Vaughn's charge, hence its September 25, 2008 letter to Freeman notifying it in greater deal of the scope of EEOC's investigation. *See* Document 27-2 at Exh. 2 (EEOC Letter of September 25, 2008 attached as exhibit to Defendant's Motion). This letter spelled out in more detail than Ms. Vaughn's charge that the EEOC was investigating Defendant's use of its background policy, including the credit history and criminal history portions, as to its discriminatory effect on Black and Hispanic persons.

In addition, unlike *General Electric* in this case Defendant had independent notice that its practices — the specific employment practices at issue in this litigation — may result in Title VII liability.  Since the 1980's the EEOC has published formal policy guidance to the employer community with respect to criminal history policies. *See* Exhibits 1 & 2; Exhibit 5 at ¶ 3 (Declaration of Ronald L. Phillips).  EEOC's *Policy Statement on the Issue of Conviction Records under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1982)* (dated February 4, 1987), states, in pertinent part, the "Commission's underlying position [is] that an employer's policy or practice of excluding individuals from employment on the basis of their conviction records has an adverse impact on Blacks . . . and Hispanics . . . in light of statistics showing that they are convicted at a rate disproportionately greater than their representation in the population. Consequently, the Commission has held and continues

to hold that such a policy or practice is unlawful under Title VII in the absence of a justifying business necessity." Exhibit 1.  Similarly, the EEOC's *Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1982)* (dated September 7, 1990) states, in pertinent part, that the "Commission concludes that since the use of arrest records as an absolute bar to employment has a disparate impact on some protected groups, such records alone cannot be used to routinely exclude persons from employment." Exhibit 2.

When arrest or conviction records are used against individual applicants, the employer is required to consider "the nature and gravity of the offense or offenses, the time that has passed since the conviction and/or completion of sentence [or arrest], and the nature of the job for which the applicant has applied." *Green v. Missouri Pacific R.R. Co.*, 549 F.2d 1158, 1160 (8th Cir. 1977); *EEOC Policy Statement on the Issue of Conviction Records under Title VII of the Civil Rights Act of 1964; EEOC Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964.*

Defendant has admitted that it was familiar with EEOC's policy guidance on use of conviction and arrest records at the time it adopted its background check policy. *See* Exhibit 6 at pg. EEOC 00119 (Defendant's letter to EEOC of September 2, 2009) ("Freeman became aware of the existing guidance and case law regarding the use of criminal background checks in the hiring process and strove to meet that guidance"); Exhibit 5 at ¶ 6 (Declaration of Ronald L. Phillips).  Yet Defendant disregarded its knowledge of EEOC's legal guidance.  Defendant conducts criminal justice history background checks on all job applicants regardless of position sought and its policy is

exceptionally broad.  For the most part the policy sets forth no temporal limitation on the age of conviction or other occurrence, nor does it require consideration of the specific circumstances and conduct of the offense, the age of offender, the nexus to specific job duties or employee safety, events that have transpired since the offense, or any other factors.  For example, if any of 24 types of criminal justice occurrences is present, the job applicant is automatically disqualified.  Some of these occurrences include unproven charges rather than convictions (e.g., "more than one misdemeanor drug charge in last 7 years," "Drug charges greater than a misdemeanor in last 7 years," "Any felony or criminal record with a pending disposition or outstanding warrant").  Most categories are vague and are so broad and untethered to specific circumstances or age of the offense as to potentially encompass many acts that, when reviewed individually and in their relevant context, would not be deemed business necessity for purposes of employment (e.g., "vandalism," "lewd and/or lascivious acts," "conspiracy," "domestic violence," "theft").  *See* Exhibit 3 at pp. 2-3 (Defendant's Background Check Policy); Exhibit 5 at ¶ 4 (Declaration of Ronald L. Phillips).

Obviously, the parties are presently litigating the issue of whether Defendant's criminal history selection criterion was lawful or not, and it is not appropriate for that issue to be determined in the context of this Motion, particularly since discovery is not yet complete.  But the purpose of notice through a charge is to place an employer on notice that its conduct may be unlawful and may result in liability.  EEOC's very specific policy guidance, of which Defendant admits it was aware since the inception of its background check policy, plainly put Defendant on notice of its potential liability, certainly more so than any individual charge raising the convictions issue or the EEOC's September 2008 letter.  Defendant has been on notice since at least February 4, 1987,

the date of EEOC's guidance, that the type of criminal history policy Defendant uses may be discriminatory, and it has had actual knowledge of that risk since at least the inception of its policy.

Finally, note that *General Electric* is also distinguishable because in that case there was a delay of two years and three months between the original race discrimination charge filing and the employer's first notice of the sex discrimination issue in EEOC's administrative determination. *See EEOC v. General Electric Co.*, 532 F.2d 359, 362 (4th Cir. 1976). Defendant concedes that in this case only eight months elapsed between the filing of Vaughn's formal charge form and its receipt of the September 2008 EEOC letter. It is difficult to conceive how eight months could have worked a "substantial prejudice" to Defendant within the meaning of *General Electric*, particularly in light of the multiple layers of notice it initially received through Ms. Vaughn's charge and its admitted, pre-existing knowledge of EEOC's long-standing policy guidance regarding arrest and conviction selection policies, guidance that informed Defendant and other employers that such practices are likely to have a race-based disparate impact on job applicants from minority communities and setting forth standards for business necessity that are not reflected in Defendant's background check policy.

      b.   *The other cases upon which Defendant seeks to rely are similarly inapposite*

Defendant also relies on the holding in *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir. 1976), as further support that back-pay accrual should run from the date of service of the EEOC September 2008 letter. *See* Document No. Doc. 27-1 at p. 4.

In *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir. 1976), the Fourth Circuit upheld the district court's definition of the relevant class of "black employees as

14

those, whether currently employed or not, who worked on or after July 2, 1965, the date Title VII became effective." *Id.* at 262-263.   During its investigation, the EEOC determined that females also were being discriminated against by the employer's promotion and transfer practices. *Id. a*t 262.  With respect to back pay, the district court ruled that back pay for sex discrimination accrued from two years before the charge was filed.  The Fourth Circuit amended that ruling to two years before the notice of the sex discrimination claims was given to the employer. *Id.* at 276.   However, the *Patterson* court also emphasized that district courts should consider countervailing equities in deciding whether to select the later date or the charge filing date for back pay accrual purposes. *Id.* at 276.

   *Patterson* is thus inapposite.  Like *General Electric*, there was no mention in the charge of a class of females, whereas in this case there were class allegations regarding racial minorities and reference to the criminal history aspect of the background check policy on the face of the charge.  Moreover, there is no indication in *Patterson* that the employer had any pre-existing notice of the potential illegality of its practices through published EEOC policy guidance.  In addition, it appears a number of years passed between the filing of the initial charge and notice to the employer of the addition of females to the investigation. *See id.*[2]

---

[2] Freeman also searches for support in *EEOC v. Optical Cable*, 169 F. Supp. 2d 539  (W.D. Va. 2001), in which a district court noted "in passing" that the limitations period would run from the date of notice of expansion of investigation. *See id.* at 550 n.7.   Its reliance on *Optical Cable* is misplaced.  Similar to the charges discussed in *General Electric* and *Patterson*, Mr. Bonds' original EEOC charge did not contain pattern or practice claims. *See id.* at 545.   It only contained a claim of individual race-based discrimination. *Id.* at 542.   And again, there was also no evidence in that case of pre-charge actual knowledge by the employer that its written policies may subject it to liability.

    c.      *Even assuming Defendant did not receive notice until it received EEOC's September 2008 letter, its failure to correct its practices in response to that admitted notice demonstrates the countervailing equities do not favor applying a later back pay accrual date*

Perhaps most significantly, Defendant has demonstrated a complete absence of prejudice through its conduct after the date it argues it first received notice. *General Electric* requires a showing of prejudice. As discussed above, the Supreme Court and lower federal courts have stated that the primary purposes of notice through the charge are to permit the employer an opportunity to respond and to afford it an opportunity to voluntarily correct its unlawful practices. Defendant has sustained absolutely no prejudice in this regard. Defendant admits it received notice relatively early in the investigation via EEOC's September 2008 letter, and thus Defendant had every opportunity to respond to the criminal conviction issue and did so. *See* Exhibit 6 at pg. EEOC 00119. *See also* Exhibit 4 at pg. 1-3 (Defendant's 5/31/2008 letter) (discussing rationale for criminal history and other background check criteria).

More importantly, Defendant has offered no evidence thus far, either in its Motion or in discovery provided to EEOC in this action, that it has abandoned or modified the challenged criminal history selection practices, and it appears it has not done so to-date.[3] *See* Exhibit 7 at pp. 19-20 (Defendant answer to EEOC Interrogatory No. 22 referencing policy produced to EEOC during investigation as policy continuously in use); Exhibit 3 (Defendant background check policy produced during EEOC investigation); Exhibit 5 at ¶¶ 4 & 7 (Declaration of Ronald L. Phillips). It chose not to do so after receiving EEOC September 25, 2008 letter regarding investigative scope. It chose not to do so after receiving EEOC's administrative subpoena. It chose not to do so

---

[3] Note that discovery is on-going regarding this issue, making summary judgment inappropriate on that basis alone.

after receiving the administrative reasonable cause determination finding that its practice violates Title VII.  It chose not to do so after the Commission instituted this action.  It still has not done so.

Simply put, Defendant's Motion is an exercise in form over substance.  Defendant complains of an alleged delay in receiving notice of the criminal history issue, but even assuming *arguendo* it lacked such earlier notice, Defendant's subsequent conduct after it admits receiving notice demonstrates that earlier notice would not have made any difference.  Defendant's continuation of its discriminatory criminal history selection practices after the September 2008 EEOC letter and later discrimination findings shows that the passage of eight months between the original Vaughn charge and EEOC's September 2008 letter occasioned not only no "substantial" prejudice, but no prejudice at all.  Given years of opportunity, Defendant has not availed itself of the opportunity that notice was intended to serve, viz., voluntary correction of unlawful practices to avoid liability.  Moreover, Defendant cannot point to even a single instance of material evidence having been lost or any resulting prejudice to its defense.  Again, under *General Electric* and the other cases Defendant cites, the "countervailing equities" clearly favor denying Defendant's Motion.

3.   Where the equities favor selecting a date for back pay accrual other than the charge-filing date, the authorities that Defendant relies upon have applied the two-year back pay limitations period in Section 706(g), not the 300-day charge filing period

Finally, even if Defendant were able to demonstrate substantial prejudice and the countervailing equities otherwise favored applying a limitations period from the date of EEOC's September 2008 letter regarding the investigation, under the holdings of *General Electric, Patterson,* and *Optical Cable* that limitations period would not be 300

days, as Defendant proposes, but would be the two-year limitation on back pay contained in Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g).  Notwithstanding Defendant's failure to mention this fact in its argument, all three decisions permitted EEOC to recover two years of back pay running from the date of notice to the employer. *See EEOC v. General Electric Co.*, 532 F.2d 359, 371-72 (4th Cir. 1976); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 275-76 (4th Cir. 1976); *EEOC v. Optical Cable*, 169 F. Supp. 2d 539, 550-51  (W.D. Va. 2001).  The *Optical Cable* court specifically held that EEOC may recover back pay for any injury within the two-year back pay period even where the discriminatory act occasioning the harm antedates the two-year period. *Id.* This is consistent with decisions of this Court that have applied the Section 706 continuing violations doctrine to EEOC pattern or practice claims, holding that EEOC could secure monetary remedies for aggrieved persons subjected to *solely* pre-charge filing period discrimination that was part of an overall pattern or practice extending into the charge-filing period. *See EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1225-26 (D. Md. 1989) (Black, J.).

Thus, even assuming that Defendant's argument had merit, under the case law it cites EEOC's remedies in the instant case would include back pay recovery for any aggrieved persons harmed during the two-year period prior to Defendant's first notice.

Moreover, given that the Fourth Circuit has applied a two-year back pay limitations period to EEOc class claims, it follows that the 300-day charge filing period is inapplicable to this pattern or practice case.  Thus, in light of the foregoing authorities' treatment of the limitations/back pay issue in EEOC class-based cases, it is readily apparent that the Court should vacate as contrary to Fourth Circuit precedent its

prior Memorandum Opinion and Order regarding Defendant's Partial Motion to Dismiss for Failure to State a Claim (ECF Document Nos. 18 & 19), in which the Court stated that EEOC's claims are restricted to the 300-day period preceding the charge filing.

### III. CONCLUSION

Keeping the filing date of the pattern and practice claims at the statutorily prescribed date that the charge was filed and not the date of EEOC's investigative scope letter serves the underlying public policy of the limitations period in Title VII: Defendant was provided with prompt notice of the potential claims against it. Defendant had notice of the potential illegality of its criminal history selection criterion both before and at the time it received Ms. Vaughn's charge.  Defendant was given a full opportunity to respond to the criminal history portion of the investigation, and it did so. Defendant has not adduced evidence that it has lost any material evidence and is prejudiced in its ability to defend as a result of an alleged lack of notice during the mere eight months that elapsed between Vaughn's charge filing and the EEOC letter. Defendant was given ample opportunity to self-correct--come into voluntary compliance with Title VII's provisions, but it appears it has failed to avail itself of that opportunity.

Thus, Defendant has not established the requisite "substantial prejudice" to entitle it to an equitable defense to back pay liability.  Defendant cannot point to any principled, equitable reason specific to the facts this case why the Court should aid it in that regard.  If Defendant is allowed to be relieved from the potential liability for back-pay for those it wronged, then the substantial remedial purpose of back pay underlying Title VII will not be satisfied.

For the foregoing reasons, not only should Freeman's Motion for Partial Summary Judgment be denied, but the Court's previous decision regarding the limitations issue should be vacated.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION


_____/s/_____

DEBRA M. LAWRENCE (Bar No. 04312)
Regional Attorney
EEOC-Philadelphia District Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 209-2734
Facsimile number: (410) 962-4270


_____/s/_____

RONALD L. PHILLIPS
Acting Supervisory Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 209-2737
Facsimile number: (410) 962-4270


_____/s/_____

MELANIE M. PETERSON
Trial Attorney
EEOC-Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Telephone number: (215) 440-2848
Facsimile number: (215) 440-2606