IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DISTRICT)

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:09-CV-02573-RWT |
| FREEMAN, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR PROTECTIVE ORDER**

The EEOC should not be permitted to take the deposition of Defendant's chief executive officer, Joe Popolo, because Mr. Popolo lacks unique personal knowledge of facts relevant to this action.  The EEOC's lawsuit challenges two employment practices that are facially nondiscriminatory, were designed by the company's human resources staff in 2000-2001, and were approved by the company's then chief executive officer, Donald Freeman, who is now the chairman of Defendant's board of directors.

To discover relevant information known or reasonably available to the defendant, the EEOC required Freeman to designate an officer, director, managing agent or other person for a deposition under Rule 30(b)(6), Fed. R. Civ. P.  Freeman designated its vice president of benefits and compliance, Susanne Bragg, who was deposed on February 7, 2012.  Ms. Bragg was deposed a second time on February 8, 2012.  On February 9, 2012, the EEOC deposed Freeman's senior vice president for human resources, Pamela Wills-Ward, and on March 1, 2012, it deposed the company's board chairman, Donald Freeman.

1

The Bragg, Wills-Ward, and Donald Freeman depositions have been duplicative of one another, and duplicative of the Rule 30(b)(6) deposition.  Any relevant information Mr. Popolo may have has already been obtained by the EEOC during these depositions.  The relevant policies were in place for eight years before Mr. Popolo became CEO of Freeman.  A protective order should be entered to protect Mr. Popolo from an unnecessary deposition.

I.     STATEMENT OF RELEVANT FACTS

In February 2001, Defendant Freeman adopted a policy and practice of conducting background investigations on applicants for employment.  (30(b)(6) Dep 65:10-19, Feb. 7, 2012.)[1]  The policy was developed and recommended by the company's human resources department, and approved by the company's chief executive officer at the time, Donald Freeman.  (30(b)(6) Dep. 122:1-17.)  The policy was amended in 2006.  (30(b)(6) Dep. 198: 4-8.)  That amended policy is the subject of this lawsuit.  (*See* 30(b)(6) Dep. 128: 7-129:15; 198: 4-8 (explaining that Freeman did not amend its 2006 background check policy until 2011).)  Mr. Popolo did not become the company's chief executive officer until 2008.  (Freeman Dep. 31:4-7, March 1, 2012.)[2]

EEOC alleges that Freeman's background check policies constitute disparate-impact discrimination against certain protected groups.  (Compl. ¶¶7-11.)  The EEOC does not allege that the policy was adopted with a discriminatory motive.

The EEOC conducted a Rule 30(b)(6) deposition on February 7, 2012.  The deponent was Suzanne Bragg, Freeman's vice president of benefits and compliance, who was also a member of

---

[1] Relevant portions of the 30(b)(6) deposition transcript are attached as Exhibit 1 to the Declaration of Paul Mirengoff.

[2] Relevant portions of Donald Freeman's deposition transcript are attached as Exhibit 2 to the Declaration of Paul Mirengoff.

the human resources team that recommended the background policy in 2000. (Bragg Dep. 122: 14-18.) The deposition covered the following topics:

1. Defendant's policies, practices and procedures, regarding recruitment and hiring of job applicants. Without limitation, areas of inquiry within the aforementioned subject matter may include the following:
   a. any and all provisions or content of such policies, practices and procedures, whether written or unwritten;
   b. dates such policies, practices and procedures were in effect;
   c. purposes for such policies, practices and procedures;
   d. any changes to such policies, practices, and procedures and the purposes for such changes;
   e. the process of designing and approving such policies, practices and procedures;
   f. job duties and selection criteria for hiring regarding all positions;
   g. identity and nature of roles of persons involved in designing, approving and/or implementing such policies, practices, and procedures;
   h. any training provided to employees regarding such policies, practices and procedures;
   i. any records received, generated, or maintained regarding recruitment and hiring; and
   j. any non-privileged studies or analyses conducted by any person of such policies, practices and procedures or their implementation.

2. Defendant's policies, practices and procedures related to use of credit history information and criminal history information as criteria for selecting job applicants for employment and determining whether to continue the employment of employees in the positions they hold (or any other position). Without limitation, areas of inquiry within the aforementioned subject matter may include the following:
   a. any and all provisions or content of such policies, practices and procedures, whether written or unwritten;
   b. dates such policies, practices and procedures were in effect;
   c. the purposes for such policies, practices and procedures, and any scientific or other evidence supporting their use for employee selection purposes;
   d. any changes to such policies, practices, and procedures and the purposes for such changes;
   e. the process of designing and approving such policies, practices and procedures;
   f. criteria considered when determining if credit history or criminal history should disqualify an individual from employment in one or more positions;
   g. identity and nature of roles of persons involved in designing, approving and/or implementing such policies, practices, and procedures;
   h. any training provided to employees regarding such policies, practices and procedures;
   i. any records received, generated, or maintained regarding applicant and employee credit history and criminal history and employment decisions based on such information;

3

j. any non-privileged studies or analyses conducted by any person or entity of such policies, practices and procedures or their implementation; and

k. any information concerning the reliability and accuracy of the data sources used.

3. Defendant's policies, practices and procedures related to making and retention of job applicant and employee records (including applications, resumes, cover letters, electronically-submitted responses to job advertisements, personnel records, payroll records, and any relevant discrimination complaints and investigations);

4. The sources and procedures for creating and compiling, and the authenticity of, any data produced or to be produced to EEOC in this action.

5. The number and type of documents and time period for which Defendant has not retained job applicant and employee records (including applications, resumes, cover letters, electronically-submitted responses to job advertisements, personnel records, payroll records, and relevant discrimination complaints and investigations).

6. The pay, hours, benefits, duties, qualifications, and conditions of employment of each of Defendant's job titles/positions that were sought by the job applicants who were not hired because of their credit history information or their criminal history information.

(Mirengoff Decl. Ex. 3. (Jan. 23, 2012 Notice of Rule 30(b)(6) Deposition of Defendant Freeman).)

At the 30(b)(6) deposition, Ms. Bragg testified about Freeman's policies and practices regarding the use of credit history and criminal history information, the basis for adopting these policies and practices, and the individuals involved in the development of these policies. She testified that the policy was recommended to Mr. Freeman by an HR team consisting of Ms. Bragg, Ms. Wills-Ward, Dan Camp, Magda Hudson, and Jerry Handley. (Bragg Tr. 122: 15-21.) Mr. Popolo was not included. Indeed, in responding to the EEOC's Rule 30(b)(6) deposition questions on these topics, Ms. Bragg did not mention Joe Popolo a single time.

Many of these same topics were covered again in the Rule 30(a) depositions of Ms. Bragg; Ms. Wills-Ward, and Donald Freeman. During the deposition of Donald Freeman, conducted on March 1, 2012, the EEOC obtained no relevant information not covered by the by Rule 30(b)(6) notice and deposition. The deposition lasted only two hours. (Freeman Dep. at 1.)

The questions asked at the deposition were largely duplicative of questions posed during previous depositions.  See below at pages 9-10.

In addition to taking the depositions described above, the EEOC has received from Freeman responses to interrogatories and requests for production of documents.  These responses provided the EEOC with a broad range of information relating to the company's background check policy.

Because the questions asked at Mr. Freeman's deposition were duplicative and yielded no pertinent information that had not previously been disclosed, Freeman advised EEOC that the deposition of Mr. Popolo would be duplicative, unnecessary, and burdensome.  (Mirengoff Decl. Ex. 4.)  Freeman requested that EEOC consider the withdrawal of its notice of deposition.  To provide EEOC with an opportunity to consider the request, Freeman offered its consent to the recess of Mr. Popolo's deposition.  (*Id.*)  Freeman advised EEOC that if the notice was not withdrawn, it might seek judicial intervention.  EEOC declined to withdraw the notice.  (Mirengoff Decl. Ex. 5.)

## II.    THE LEGAL STANDARD

The law strongly disfavors the deposition of the CEO when the CEO does not have unique information that is unavailable through other means.  "[H]igh-ranking officials . . . (by virtue of their position) . . . 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'"  *Simon v. ProNational Ins. Co.*, No. 07-60757-CIV-COHN/SELTZER, 2007 U.S. Dist. LEXIS 96320, at *4 (S.D. Fla. Dec. 13, 2007) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).  For that reason, litigants seeking to depose a high-level official must make two specific showings.

First, they must "demonstrate that the proposed deponent has 'unique personal knowledge' of facts relevant to the dispute." *Devlin v. Chemed Corp.*, No. 04-CV-74192-DT, 2005 U.S. Dist. LEXIS 46853, at *5 (E.D. Mich. Sept. 21, 2005); *see also Cardenas v. Prudential Ins. Co.*, No. 99-1421 (JRT/FLN), 2003 U.S. Dist. LEXIS 9510, at *4 (D. Minn. May 16, 2003) ("[P]laintiffs' affidavits do not demonstrate that [officials] possess any information that could not be obtained from lower level employees or other sources, much less that their knowledge of plaintiffs' allegations is 'unique.'").

Second, litigants must "exhaust[] other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06cv408 WQH (AJB), 2007 U.S. Dist. LEXIS 20481, *7 (S.D. Cal. Mar. 22, 2007); *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (litigant must depose lower level employees with relevant knowledge before deposing high level official who lacked direct knowledge of facts); *Reif v. CNA*, 248 F.R.D. 448, 451-455 (E.D. Pa. 2008) (refusing to permit deposition of high level official where plaintiff failed "to depose the corporate designee" or submit "interrogatory requests to deponents").

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order forbidding the discovery. *Id.* Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2002) (quoting *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999)). In order to obtain a protective order prohibiting a deposition, the moving party "must demonstrate that the

discovery sought lacks relevance 'to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information.'" *Id.* (quoting *UAI Tech., Inc. v. Valutech, Inc.*, 122 FRD 188, 191 (M.D.N.C. 1988)).

Rule 26(b)(2) outlines certain circumstances in which discovery must be limited. Specifically, "the court must limit the frequency and extent of discovery" when "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

The court may also limit discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," Fed. R. Civ. P. 26(b)(2)(C)(ii), or where "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C)(iii).

As stated above, in determining whether discovery must be limited, courts recognize that the deposition of a high-level executive can be disruptive, burdensome, and "may have the potential for harassment." *Folwell v. Hernandez*, 210 F.R.D. 169, 173 (M.D.N.C. 2002).  For this reason, courts have granted protective orders "to protect busy executives from being subject to depositions where the information sought may be more easily obtained from others." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009).  This principle, sometimes referred to as the Apex deposition rule, "is aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head - the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *Id.*[3]  The rule is not intended to

---

[3] Although the Fourth Circuit has never had opportunity to discuss the Apex deposition rule, "[o]ther courts around the country have applied variations of the . . . rule." *Minter*, 258 F.R.D. at 125 (collecting cases); *see also Performance Sales & Marketing, LLC v. Lowe's Companies, Inc.*, No. 5:07cv140, 2011 U.S. Dist. LEXIS 130186, 2011 WL 5439118, at *1 (W.D.N.C. 9 Nov. 2011).

limit the scope of discovery, but rather to "minimize the potential burden on the corporation." *Stewart v. EQ Indus. Servs.*, No. 5:10-CV-177-BR, 2012 U.S. Dist. LEXIS 3283, at *10-11 (E.D.N.C. Jan. 11, 2012) (declining to direct corporation to present seven high-level officers or directors because "other discovery in the case may reduce or eliminate any need plaintiff may have for these depositions").

III.   ARGUMENT

The EEOC can make no showing that Mr. Popolo has "unique personal knowledge," and its discovery of executives is plainly duplicative of discovery already taken of others.  Under these circumstances, the burden of preparing Mr. Popolo for a deposition and producing him to testify vastly outweighs EEOC's need for information from Mr. Popolo.  Therefore, Freeman is entitled to a protective order.  *See Baron Fin. Corp.*, 240 F.R.D. at 202.

Requiring Freeman to prepare and produce its Chief Executive Officer for a deposition would impose a significant and undue burden on the company.  As CEO, Mr. Popolo plays an important oversight role in the operations of a company with more than 30,000 employees and 300,000 clients.  In order to fulfill his duties as CEO, he must follow a rigorous schedule.  Producing him to testify would present an undue burden to Freeman within the meaning of Federal Rule 26(c)(1).

EEOC has not explained a need to conduct Mr. Popolo's deposition.  As noted previously, EEOC has already conducted extensive discovery into Freeman's background check policy.  This discovery includes a Rule 30(b)(6) deposition wherein one of the individuals responsible for the development of the policy, Suzanne Bragg, testified at length about the policy and Freeman's reasons for adopting it.  At the Rule 30(b)(6) deposition, EEOC had the opportunity to ask Ms. Bragg questions about a lengthy list of topics.  (*See* Mirengoff Decl. Ex. 3.)  In addition,

Freeman made Ms. Bragg available for a personal deposition, and also produced Pamela Wills-Ward and Donald Freeman to testify.

By the time EEOC conducted its deposition of Mr. Freeman, it had become apparent that EEOC had no further areas of inquiry into the general details of Freeman's background check policy. Mr. Freeman's deposition lasted only two hours. The questions asked at the deposition were largely duplicative of questions posed during previous depositions.

For example, Donald Freeman was asked whether Freeman has ever used credit or criminal history information in the hiring process (Freeman Dep. at 10), and whether Freeman conducts criminal background checks on employees. (Freeman Dep. at 49-50.) These topics were covered extensively during the 30(b)(6) deposition. (*See* 30(b)(6) Dep. at 65 and 132.) Mr. Freeman was asked whether the credit and criminal history rules are contained in a background check policy. (Freeman Dep. at 11.) This was covered throughout the 30(b)(6) deposition. Mr. Freeman was asked who approved the background check policy and why the policy was put into place. (Freeman Dep. at 11.) These questions were also asked and answered in the 30(b)(6) deposition. (*See* 30(b)(6) Dep. at 67-70 and 122.)

Similarly, Mr. Freeman was asked to explain the relationship between the company's background policies and stealing (Freeman Dep. at 15 - 17), which was discussed extensively during the 30(b)(6) deposition. (See 30(b)(6) Dep. at 69, 78, 79, 118, 119, 144, and 149.) Mr. Freeman was asked whether he had final decision authority in approving the criminal conviction policy (Freeman Dep. at 31), a fact that was established at the 30(b)(6) deposition. (*See* 30(b)(6) Dep. at 122.)

Both Mr. Freeman and the 30(b)(6) deponent were asked about negligent retention lawsuits (Freeman Dep. at 47; 30(b)(6) Dep. at 71), whether there had been any communications

with anyone outside the company about the use of credit or criminal history as a selection tool (Freeman Dep. at 48 and 54; 30(b)(6) Dep. at 97), and whether the company conducted disparate impact studies (Freeman Dep. at 51; 30(b)(6) Dep. at 88 ).  They were also asked about the company's decision to modify the background investigation policy in 2006 (Freeman Dep. at 38-40; 30(b)(6) Dep. at 197-98), the process the company uses to implement the criminal background check (Freeman Dep. at 47; 30(b)(6) Dep. *passim*), the company's policies for unionized workers (Freeman Dep. at 52; 30(b)(6) Dep. at 138-143), and whether the company considered alternatives to using credit history (Freeman Dep. at 53; 30(b)(6) at 92).

Areas of questioning of Mr. Freeman that were not on the EEOC's Rule 30(b)(6) deposition notice involved the ownership structure of Freeman (Freeman Dep. at 29-30), and the identify of Freeman's shareholders.  (Freeman Dep. at 37-38.)  These are not matters within the unique knowledge of the chairman of the board of directors, nor are they relevant to any issue in the case.  To the extent that EEOC asked any other new questions of Mr. Freeman, these questions merely requested Mr. Freeman's personal opinion about various aspects of the company's human resources functions.

Mr. Popolo has nothing to add to Mr. Freeman's deposition—which was itself duplicative of prior depositions.  Mr. Popolo has only general knowledge of Freeman's background check policy.  Indeed, unlike Mr. Freeman, Ms. Bragg, or Ms. Wills-Ward, Mr. Popolo neither recommended nor approved Freeman's background check policy.  (30(b)(6) Dep. 122:1-17.)

Moreover, even if Mr. Popolo had been involved in the development of the policy, Freeman's motives for adopting the policy are irrelevant absent some suggestion that discriminatory motive played a role.  This is a disparate impact case; the issue is whether Freeman's "employment practices . . .  are the functional equivalent of intentional discrimination

because they cause significant adverse effects on protected groups, but have no deliberate discriminatory motive." *Young v. UPS of Am., Inc.*, No. DKC-08-2586, 2010 U.S. Dist. LEXIS 30764, at \*17-18 (D. Md. Mar. 30, 2010) (quoting *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 282-83 (4th Cir. 2005) (Gregory, J., dissenting in part)).

There is no apparent reason that EEOC has noticed Mr. Popolo for deposition, other than the fact that he happens to be Freeman's CEO.  Nor is there any apparent reason for EEOC to ask further questions about the general outlines of Freeman's background check policy.  To the extent that EEOC has outstanding questions about any of the specific aspects of Freeman's background check policy, the more useful and efficient way to inquire about these aspects of the policy is to notice the individuals personally involved in these aspects of the policy.[4]  In short, a protective order is appropriate in this case because "the information sought may be more easily obtained from others." *Minter*, 258 F.R.D. at 125 (D. Md. 2009).

For the foregoing reasons, Mr. Popolo's deposition would be unduly burdensome, harassing, and duplicative.  Under the circumstances, "the discovery sought lacks relevance 'to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information.'" *Baron Fin. Corp.*, 240 F.R.D. at 202 (*quoting UAI Tech., Inc. v. Valutech, Inc.*, 122 FRD at 191).  Freeman is entitled to a protective order prohibiting Mr. Popolo's deposition.

---

[4] If there is a relevant issue as to which Mr. Popolo has unique personal knowledge, the EEOC should identify it, and any deposition should be confined to that issue.

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP


_____/s Paul E. Mirengoff_____

Donald R. Livingston (Bar No. 15787)
Paul E. Mirengoff (*admitted pro hac vice*)
John T. Koerner (Bar No. 29806)
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
dlivingston@akingump.com
pmirengoff@akingump.com
jkoerner@akingump.com
*Attorneys for Defendant Freeman*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 7, 2011, I caused the foregoing Memorandum in Support of Defendant's Motion for Protective Order to be served via CM/ECF on Ronald L. Phillips, counsel for Plaintiff, EEOC.


_____s/Paul Mirengoff_____

Paul E. Mirengoff