**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. RWT-09-CV-2573** |
| ) | |
| **FREEMAN,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**PLAINTIFF EEOC'S MEMORANDUM IN SUPPORT
OF MOTION FOR PROTECTIVE ORDER**</u>

Pursuant to the Federal Rule of Civil Procedure 26(c) and 26(b)(2)(C), Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") files the instant Memorandum in Support of Motion for Protective Order.  For the reasons set forth below, EEOC respectfully requests that this Court enter an order stating that EEOC is not required to provide a Fed. R. Civ. P. 30(b)(6) designee and to testify regarding the subject matter set forth in Defendant Freeman's Rule 30(b)(6) Notice of Deposition served upon EEOC on March 27, 2012.

## I.  INTRODUCTION

On March 27, 2012, Defendant served upon EEOC the Notice of Deposition ("Notice") that is attached to this Memorandum as Exhibit 1.   The Notice seeks Fed. R. Civ. P. 30(b)(6) testimony on April 16, 2012, regarding the following subject areas:

1.      The identification of and verification of EEOC's policy guidance, regulations, opinion letters, Commission decisions, and similar documents pertaining to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of arrest or conviction records in making hiring and other selection decisions.

2.      The identification of and verification of EEOC's policy guidance, regulations, opinion letters, Commission decisions, and similar documents pertaining to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of credit history or other financial records in making hiring and other selection decisions.

3.      The identification of and verification of federal government policy guidance, regulations, opinion letters, and similar documents applicable to the EEOC's use of arrest or conviction records in making hiring decisions.

4.      The identification of and verification of federal government policy guidance, regulations, opinion letters, and similar documents applicable to the EEOC's use of credit history or other financial records in making hiring decisions.

5.      The policy and practice of the EEOC with respect to considering arrests or criminal conviction records in making its hiring decisions.

6.      The EEOC's justification for considering arrests or criminal conviction records in making its hiring decisions.

7.      The policy and practice of the EEOC with respect to considering credit history or other financial records in making its hiring decisions.

8.      The EEOC's justification for considering credit history or other financial records in making its hiring decisions.

9.      The extent to which the EEOC relies on the January 14, 2008, Memorandum for Heads of Departments and Agencies, from the Director of United States Office of Personnel Management, *Introduction of Credentialing, Suitability, and Security Clearance Decision-Making Guide* in determining credentialing, suitability, and security clearance decision-making for EEOC employees, applicants, and contractors.

10.     The adjudicative procedures used by the EEOC to evaluate arrests and convictions during the credentialing and suitability decision making process for employees, applicants, and contractors.

11.     The adjudicative procedures used by the EEOC to evaluate credit history and other financial records during the credentialing and suitability decision making process for employees, applicants, and contractors.

Defendant's Notice of Deposition of March 27, 2012 (Exb. 1).

In the aforementioned deposition notice, Defendant seeks testimony of an EEOC designee concerning the Agency's legally-mandated background credentialing and suitability adjudications regarding its own employees, personnel serving in a federal law enforcement agency.   Such matters, which are mandated by OPM, bear no relationship to what the Defendant does under its background check policy and are plainly irrelevant and not reasonably calculated to lead to discovery of admissible evidence in support of Defendant's affirmative defenses.

Moreover, EEOC has already been deposed concerning EEOC applicant/employee suitability procedures in another lawsuit challenging private employer use of credit history information, a deposition of which defense counsel in this case were well-aware prior to its taking. The transcript of that deposition is now a matter of federal court record.  In addition, the Code of Federal Regulations and other publicly available sources set forth in great detail the criteria for suitability determinations, including how federal employee criminal background checks are performed.   In light of these facts, to depose the relevant EEOC personnel again (the sole individual who conducts suitability adjudications for EEOC) regarding credentialing and suitability at EEOC is plainly unwarranted, as it would be unduly burdensome, duplicative and interfere with agency functioning.

Finally, Defendant seeks to have EEOC designate a witness to testify about the identity of published EEOC policy and decision documents related to credit and criminal history background checks by private and public employers covered by Title VII, documents that are readily available to the general public.  This attempt to use Rule 30(b)(6) as a means of conducting legal research is improper discovery under Rule 26 and is information that can be obtained by means other than a deposition.

## II.   DISCUSSION

1. *Applicable law under Title VII demonstrates that OPM-mandated suitability adjudications and credentialing for federal employment are not relevant or reasonably calculated to lead to admissible evidence*

Subject area Nos. 3-11 of Defendant's Notice seek information concerning EEOC use of credit or criminal history information in its own selection practices and any related information applicable to the federal government generally. <u>See</u> Exb. 1 at pgs. 2-3.  These subject areas are irrelevant and not reasonably calculated to lead to discovery of admissible evidence, and deposition concerning these topics should not be permitted.  In its previous withdrawn pleadings, <u>see</u> CM/ECF Document No. 51 (Defendant's First Motion to Compel), and its communications with EEOC, Defendant has claimed that such discovery is relevant for two reasons.   Both justifications offered by Defendant are legally and factually untenable.

First, Defendant has asserted that it seeks evidence to support an equitable estoppel defense on the theory that if EEOC considers applicant/employee credit or criminal history information, it excuses Defendant's use of such information.  As a threshold matter, Defendant has failed to plead equitable estoppel as an affirmative defense. <u>See generally</u> CM/ECF Document No. 8 (Defendant's Answer).  Estoppel must be pleaded as an affirmative defense in Defendant's Answer, <u>see, e.g.,</u> Fed. R. Civ. P. 8(c)(1), and failure to affirmatively plead the defense results in

its waiver, <u>see, e.g.</u>, <u>Jacobs Mfg. Co. v. Sam Brown Co.</u>, 19 F.3d 1259, 1266 (8th Cir. 1994) (holding defense of equitable estoppel is waived when not pleaded).  Accordingly, there is no equitable estoppel defense at issue in this litigation, and any discovery calculated to uncover facts related to that purported defense is irrelevant.

Moreover, in making this vague argument Defendant sought to gloss over the elements of estoppel, apparently because it realizes it cannot satisfy those elements.  In order to establish equitable estoppel, Defendant would be required to prove (1) a false representation or wrongful misleading silence by EEOC or its agent authorized to communicate about such matters; (2) reasonable, detrimental reliance by Defendant upon such government conduct; (3) the alleged government misrepresentation must be a statement of fact and not an opinion or a statement of the law; and (4) Defendant was unaware of the true facts. <u>See, e.g.</u>, <u>Estate of Bennett v. Commissioner of Internal Revenue</u>, 935 F.2d 1285, 1991 WL 107735, at *2 & n.2 (4th Cir., July 15, 1991) (noting that "equitable estoppel is applied against the Government 'with utmost caution and restraint'"). "[E]ven those authorities that urge a liberalization of the traditional rule denying estoppel would require that a private party asserting estoppel against the government establish as an absolute precondition all the elements of equitable estoppel especially, '. . . conduct by a government agent or entity that has induced reasonable, detrimental reliance by a private party.'" <u>West Augusta Development Corp. v. Giuffrida</u>, 717 F.2d 139, 140-41 (4th Cir. 1983).  It is readily apparent that Defendant can never satisfy these elements, which it has never pleaded, and so its efforts to support this implausible purported estoppel defense must fail.  There has been no allegation of a misrepresentation of fact by the Government or detrimental reliance by Defendant.

Defendant's other argument has been that any EEOC practices related to consideration of credit history or criminal history are somehow relevant to Defendant's affirmative defense that its

own use of credit and criminal history were purportedly job-related and consistent with business necessity.  This other argument is equally meritless.  To establish job-relatedness and business necessity, it is not sufficient for Defendant to demonstrate that its use of credit and criminal history information seems reasonable or efficacious in some general sense.  Rather, Defendant must prove that the particular manner in which it uses that background information "bear[s] a demonstrable relationship to successful performance *of the jobs for which it was used.*" Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971) (emphasis added).  The affirmative defense is employer- and job-specific.  As stated in the statute, "[T]he challenged practice [must be] job related *for the position in question* and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i) (emphasis added).  Thus, the question of less discriminatory alternatives is also employer- and job-specific.  See also United States v. Massachusetts, ---F.Supp.2d---, 2011 WL 1670723, at *8-11 (D. Mass. 2011) (describing case law and statutory evolution of stringent job-relatedness and business necessity standard under Title VII).

Moreover, at least as to Defendant's use of credit history information to reject job applicants, which Defendant contends predicts future job performance, both the Supreme Court and the Fourth Circuit have held that an employer using a selection procedure with a significant disparate impact on one or more protected classifications, such as a test or high school education requirement, must validate that practice, i.e., the employer must adduce reliable, empirical evidence showing the selection procedure is substantially predictive of important aspects of job performance for the specific jobs at issue. See, e.g., Robinson v. Lorillard Corp., 444 F.2d 791, 798-99 & n. 6 & n.8 (4th Cir. 1971) (quoting Griggs).  Scientific validation of a selection procedure is employer- and job-specific and is tailored narrowly to the specific, important duties and expectations (commonly referred to in the field of industrial psychology as "work behaviors")

of particular jobs for which the selection procedure is being used.  <u>See, e.g.</u>, <u>United States v. City of Erie</u>, 411 F. Supp.2d 524, 535-36 (W.D. Pa. 2005) (discussing scientific definitions and standards for validity of tests and other selection procedures).  As the Supreme Court has stated, validation entails demonstrating by empirical evidence that a test or other selection procedure is "'predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated.'"  <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 430-31 (1975) (quoting Uniform Guidelines on Employee Selection Procedures ("UGESP") at 29 C.F.R. § 1607.4(c) and noting UGESP is entitled to great deference).

As for criminal history, the law requires even greater specificity.  The federal court decisions analyzing whether use of criminal history information is job-related and consistent with business necessity have disagreed about the extent to which individual circumstances of each applicant must be considered by the employer in all circumstances.  The parties disagree on this point, and this is not an issue that the Court needs to resolve for purposes of this Motion.  What is important is the common theme in all of those decisions, i.e., that the employer must demonstrate that *particular candidates or, at a minimum, categories of candidates* posed a substantial and unjustifiable risk of workplace crime *in the specific position and employment setting at issue*.  <u>See, e.g.</u>, <u>Green v. Missouri Pacific Rail. Co.</u>, 523 F.2d 1290, 1297-99 (8th Cir. 1975) (rejecting blanket no-conviction policies, requiring nexus between conviction and performance of job, and analyzing circumstances of plaintiff's conviction, his subsequent employment history, and defense expert's opinion supporting individualized review of applicants); <u>El v. Southeastern Penn. Trans. Auth.</u>, 479 F.3d 232, 243-46 (3d Cir. 2007) (declining to hold that employer must always consider individual circumstances of each applicant, but announcing rule that a categorical criminal history

policy must still accurately distinguish between persons who do or do not pose an unacceptable risk and analyzing recidivism evidence for violent crime, the duties of paratransit driver job at issue, the workplace setting and conditions, and special vulnerabilities of disabled paratransit customers).

Therefore, it is readily apparent that to the extent EEOC security personnel review credit and criminal history information for EEOC jobs, that fact has no bearing whatsoever on whether *Defendant's* use of such information for selection *for its own jobs* is job-related and consistent with business necessity.   Ultimately, Defendant must show that its own use of the selection procedures at issue is "necessary to safe and efficient job performance to survive a Title VII challenge." Dothard v. Rawlinson, 433 U.S. 321, 332 n.14 (1977).  Under Section 2000e-2(k) and Griggs, this is a determination specific to the Defendant, its particular manner of using these selection criteria, and the specific nature of Defendant's jobs.  What the United States does or does not do is irrelevant.  Defendant seeks to deflect the focus of this litigation away from the sole issue, viz., its own conduct, to OPM-mandated selection practices in the federal government.  In so doing, it seeks a decision from this Court that would, in effect, make the Government's selection practices subject to discovery in *every* case where job-relatedness and business necessity are at issue.  The Court should not countenance Defendant's cynical tactic.

The federal courts, including this Court and the Supreme Court, have been down this road before and have consistently rejected attempts by defendants to seek discovery of, and assert as a defense, allegedly analogous government practices.

In Johnson v. Mayor and City Council of Baltimore, 472 U.S. 353 (1985), EEOC and private plaintiffs asserted claims under the Age Discrimination in Employment Act of 1967 ("ADEA") challenging the City of Baltimore's mandatory retirement age for city firefighters. Id.

at 357.   The City asserted an ADEA statutory affirmative defense that age was a bona fide occupational qualification ("BFOQ") for firefighters and pointed to the mandatory retirement age imposed by federal law for federal firefighters as the basis for its BFOQ defense. Id. at 357-59. The district court (Harvey, J.) struck down the City retirement age, finding that the City failed to make a factual showing sufficient to establish BFOQ for the jobs at issue, but the Fourth Circuit reversed, holding that the federal statute mandating a comparable retirement age for federal firefighters established, as a matter of law, that age was also a BFOQ for City firefighters. See id. at 359-60.

The Supreme Court reversed the Fourth Circuit by unanimous opinion, finding that the statutory retirement age for federal firefighters did not establish a BFOQ for City firefighters. Id. at 370-71.  The Court reasoned that there had been no showing that Congress's decision to impose a federal firefighter retirement age was based upon evidence that age was, in-fact, a BFOQ for federal firefighters and no showing of congruity between duties and work circumstances of federal and City firefighters. Id. at 365-71.  In this regard, the Court noted:

> The absence of any indication that Congress established the age limit based on the demands of the occupation raises the possibility that the federal rule is merely "an example of the sort of age stereotyping without factual basis that was one of the primary targets of the reforms of the ADEA," and certainly belies any contention that the age limit is based on actual occupational qualifications. Without knowing whether Congress passed the statute based on factual support, legislative balancing of competing policy concerns, or stereotypical assumptions, we simply have no way to decipher whether it is consistent with the policies underlying the ADEA.

Id. at 366 .

As the Court stated, "Congress adopted what might well have been an arbitrarily designated retirement age in an era not concerned with pervasive discrimination against the elderly that eventually gave rise to the ADEA." Id. at 369.  The Court concluded by stating that in the absence of evidence that Congress considered occupational qualifications for the jobs at issue,

"this civil service provision does not articulate a BFOQ for firefighters, . . . its presence in the United States Code *is not relevant* to the question of a BFOQ for firefighters, and . . . *it would be error* for a court, faced with a challenge under the ADEA to an age limit for firefighters, *to give any weight*, much less conclusive weight, to the federal retirement provision." Id. at 370 (emphasis added).  See also EEOC v. State of Illinois, No. 86 C 7214, 1991 WL 259027, at *4 (N.D. Ill., Nov. 29, 1991) (same).

In the context of Title VII enforcement actions brought by the United States, both public and private employers have also repeatedly sought Rule 26 and 30(b)(6) discovery of the federal government's employee selection practices in a desperate attempt to support their Title VII statutory defenses.  The federal courts have repeatedly denied such discovery.

In U.S. v. New York Metropolitan Trans. Auth., No. CV 2004-4237 (SLT)(MDG), 2006 WL 708672  (E.D.N.Y., Jan. 12, 2006), the U.S. Department of Justice brought a Title VII enforcement action against the New York City transit authority asserting that it had denied certain employees religious accommodations required by Title VII in the form of allowing the employees to wear religious head coverings. Id. at *1.  In response, the defendant transit authority propounded interrogatories demanding that DOJ identify certain categories of uniformed federal civilian employees and describe the manner in which the federal government, as their employer, accommodates their religious head covering beliefs, as well as seeking information about a federal government directive barring Sikh male airline passengers from wearing ceremonial swords on flights. Id.  DOJ objected to the interrogatories, and the defendant filed a motion to compel answers, arguing that the federal government's practices were relevant to establish estoppel against the government and also the reasonableness of religious accommodations offered by defendant. Id.

The district court denied the employer's motion to compel, holding that information about the practices of the United States as an employer were not relevant or discoverable. Id. at *1. In this regard, the district court noted that the reasonableness (or lack thereof) of a Title VII religious accommodation turns on the particular facts and circumstances of a given employment setting, and that defendant had failed to point to any factual similarities between the circumstances of employment with the transit authority and any federal agency. Id. at *1. The court also rejected estoppel as a basis for discoverability, noting that the defendant had not indicated that it could even meet the traditional elements of that defense. Id. at *2.

Recently, Defendant Freeman's tactic of trying to put the regulatory agency on trial was also employed in a Rule 30(b)(6) notice served upon EEOC in EEOC v. JBS USA, LLC, No. 8:10CV318, 2012 WL 169981 (D. Neb., Jan. 19, 2012). JBS is also a Title VII religious accommodation case, this time brought by the EEOC against a meat processor for denial of religious accommodations to Somali Muslim employees. The employer sought an EEOC designee to testify concerning "'requirements, policies, practices, guidelines or procedures approved by the EEOC relating to the religious accommodation of its Muslim employees.'" Id. at *6. The district court barred deposition concerning the subject matter in question, finding it was not relevant because the case does not involve questions of whether EEOC fails to accommodate its employees. Id. at *6.

Similarly, in U.S. v. State of New York, 475 F. Supp. 1103 (N.D.N.Y. 1979), a case brought by DOJ under Title VII challenging the racial and gender disparate impact of a state trooper examination, see id. at 1110, it appears the employer adduced evidence of similar practices by other governmental employers, including the federal government, see id. at 1109. In response, the district court affirmed that the legality of each employer's practices rise or fall on their own

merits.  The court stated, "It is no excuse for a public sector employer to point to other public sector employers on the local, state, or national level and complain of equally discriminatory policies and practices . . . ." Id.  The court also noted an apparent conflict in opinion between DOJ and the U.S. Civil Service Commission (replaced by OPM as of the date of the decision) related to the action but stated, "Such disagreements are to be expected in our massive structure of bureaucracy." Id. at 1107.

Defendants in *qui tam* actions have also attempted the tactic employed by Freeman in this case.  In United States ex rel. Singh v. Bradford Regional Medical Ctr., 249 F.R.D. 220 (W.D. Pa. 2008), a False Claims Act case alleging fraudulent scheme of medical referrals, the defendant health care providers sought discovery from the Relators, who were also health care providers, about the Relators own referral practices in order to demonstrate community referral standards and thereby the legality of defendants' practices. Id. at 223-24.   The District Court denied the discovery the defendants sought and stated, "Perhaps Relators are also guilty of the same conduct, or that Defendants' conduct is also as legal as the Relators' conduct, but a fact-finder does not need the Relators' information to determine if Defendants['] conduct is illegal." Id. at 224.  See also MCI Worldcom Network Svs., Inc. v. Von Behren Elec., Inc., No. Civ. A. 1:00CV3311JTC, 2002 WL 32166535, at *1-2 (N.D. Ga., May 21, 2002) (denying discovery of instances of plaintiff striking power lines because irrelevant to whether Defendant striking lines was malicious).[1]

_____

[1]  In support of its argument, Defendant will likely cite EEOC v. Kaplan Higher Educ. Corp., No. 1:10CV2882, 2011 WL 2115878, at *4 (N.D. Ohio, May 27, 2011), a case challenging use of credit history in selection in which the district court ordered a Rule 30(b)(6) deposition of EEOC regarding the role of credit history in its selection procedures.  That deposition has now been completed and the results described below.  However, Kaplan lacks persuasive force, as the decision contains a legal conclusion that the information sought was relevant without any analysis or explanation of why the district court believed it was relevant.  The controlling law on the job-relatedness business necessity standard and related concept of less discriminatory alternatives and better reasoned case law on discoverability of a plaintiff's practices compel a contrary conclusion.  Moreover, Kaplan is distinguishable because, unlike this case, there had not been a deposition of EEOC on the subject matter at issue when Kaplan was decided, and the decision also lacks any discussion of whether discovery is appropriate considering factors in Rule 26(b)(2)(C).

Thus, the case law demonstrates that in response to a federal government enforcement action challenging the legality of a particular employment practice, an employer may not invoke as a defense, or obtain discovery of, the federal government's own practices as an employer, at least not without showing, at a bare minimum, that (a) there is a colorable estoppel defense or (b) that the federal government's practices, even if similar, are designed to serve a comparable purpose, are supported by congressional or agency findings that the practices in-fact serve that purpose (as opposed to the practice being based on stereotypes or otherwise lacking support), and there is  congruity between the employer's jobs that are the subject of the enforcement action and the federal government jobs.  Defendant Freeman cannot make these showings.

Freeman seeks to turn the focus of this litigation away from its own conduct and instead put the Government on trial.  But even if EEOC engaged in precisely the same credit history and criminal history practices that Freeman engages in (as discussed below, it doesn't), under the case law concerning job-relatedness and business necessity that fact would merely beg the question of whether those shared practices *are lawful*.  If they have a significant disparate impact on a protected classification, the practices of each employer would still have to be independently demonstrated to be necessary for safe and efficient performance of the particular jobs at issue.  "It is no excuse for a[n] . . . employer to point to other public sector employers on the local, state, or national level and complain of equally discriminatory policies and practices . . . ." U.S. v. State of New York, 475 F. Supp. 1103, 1109 (N.D.N.Y. 1979).  In this regard, as the Supreme Court has cautioned the federal courts, "[T]he status of the Government as a . . . market participant must be sharply distinguished from the status of the Government as regulator or administrator." Director, Office of Workers' Compensation Programs, DOL v. Newport News Shipbuilding and Dry Dock Co., 514 U.S. 122, 128 (1995).

As a matter of controlling law, EEOC's OPM-mandated selection procedures are both irrelevant and not reasonably calculated to lead to discovery of admissible evidence.

2.    *The publicly available facts of why and how EEOC security personnel are required to use debt and criminal history information demonstrate that OPM-mandated suitability adjudications for federal employment are not relevant or reasonably calculated to lead to admissible evidence, and any deposition of EEOC concerning those matters is also unwarranted under Fed. R. Civ. P. 26(b)(2)(C)*

Defendant Freeman seeks to depose EEOC regarding use of credit history and criminal history information in the selection and credentialing of EEOC personnel.  Such discovery will not produce relevant evidence or lead to discovery of admissible evidence.  The circumstances of EEOC simply bear no relationship to Freeman or its practices, and this fact further demonstrates that under Fed. R.  Civ. P. 26(b)(2)(C) the burden and expense of such discovery outweighs its likely benefit given its lack of any value in resolving the issues before the Court and the availability of other sources of information.

a.    <u>The federal government's background check process is mandated by OPM, and EEOC's role in that process is limited</u>

As an agency of the U.S. Government, EEOC is subject to the requirements of 5 C.F.R. § 731, an OPM regulation that mandates that candidates for employment in the federal government be subject to a review to ascertain whether they are eligible for federal employment.  This is called the "suitability" process, which consists of numerous steps, the first three of which are as follows: "investigation" of certain aspects of the prospective employees' background, "adjudication" of adverse facts learned in the investigation and, ultimately, a "determination" of whether the candidate is suitable for federal employment. <u>See</u> <u>id.</u>  OPM is responsible for devising the procedures, standards and criteria for making a suitability determination for federal employment. <u>See</u> 5 C.F.R. §§ 731.102(c), 731.202(b) & 731.202(c).  With regard to EEOC job titles designated

as "public trust" or "national security" positions, this suitability process does include a review of a candidate's current outstanding debts and criminal history information.

As for the first step in the process, EEOC does not conduct suitability investigations, i.e., the process of gathering information about the candidate that OPM deems relevant. Those investigations are defined and conducted by OPM. See Exb. 3 at pgs. 161-62 (deposition of EEOC Rule 30(b)(6) designee Felandis Maurice Mosely in EEOC v. Kaplan Higher Educ. Corp., 1:10-CV-2882 (N.D. Ohio)). EEOC security personnel are tasked with reviewing the results of the completed OPM investigation report. See id. at pg. 9.

The second step in the process, adjudication, involves EEOC security personnel reviewing the results of OPM's investigation. If the investigation obtained information that is adverse to the applicant under OPM-mandated criteria, EEOC security staff gather more information, review all surrounding circumstances, and report to OPM regarding whether the adjudication is favorable or unfavorable. They do so as agents of OPM exercising authority delegated by OPM to the agency. EEOC security personnel have no independent authority to adjudicate. They do so standing in the shoes of OPM. See id. at pgs. 9, 85-86, 125, 129-30.

The third step in the process, determination, is the actual decision whether an individual has passed the OPM suitability criteria. EEOC has no authority to make suitability determinations. Determinations are made solely by OPM. Id. at pgs. 85-86, 110-11.

EEOC did not create this suitability process, nor does EEOC elect to participate in it. The process is not optional; it is required by federal law. EEOC's role in this process is minimal and its security personnel must apply OPM standards. See id. at pgs. 85-89. See generally 5 C.F.R. § 731. EEOC security personnel (a single Personnel Security Officer) act as agents for OPM performing a federal government personnel security function, and they are not policy-making

officials charged with the interpretation and enforcement of Title VII. See id. at pg. 9. Accordingly, there is simply no rational basis for any person to conclude that any standards or criteria mandated by OPM, including review of current outstanding debts and criminal history information, bear the imprimatur of EEOC. They do not.

> b.   Suitability adjudications regarding EEOC applicants are irrelevant because they bear no resemblance to Freeman's credit history selection criteria and serve fundamentally different purposes

Deposition of EEOC concerning its suitability adjudications will not yield relevant evidence or lead to discovery of admissible evidence because it has nothing to do with what Defendant actually does or why Defendant does it. Therefore, EEOC's practices are entirely unhelpful to Defendant regarding its business necessity defense. Defendant's policy concerning applicant credit history during the limitations time frame determined by the Court was, verbatim, as follows:

> *Candidates will not be eligible for hire if they have*:
> 1. More than two (2) accounts of $300 or more each that are currently 90 days past due
> 2. More than three (3) collection accounts (not medically related)
> 3. More than two (2) paid charge-offs in the last 12 months
> 4. Any unpaid charge-offs in the last 12 months
> 5. Repossession of car in last three (3) years
> 6. Repossession of house in last three (3) years (bank foreclosure)
> 7. Filed for bankruptcy* within the last seven (7) years
> 8. Defaulted student loans.
> 9. Judgments in the last seven (7) years
> 10. Unsatisfied liens
> 11. Satisfied liens in the last three (3) years
> 12. Delinquent child support obligation

See Exb. 2 at pg. 4 (emphasis added).

By contrast, as it relates to debt information the EEOC adjudication process works as follows:

(1)   unlike Defendant Freeman, the EEOC adjudication process is mandated by federal law in accordance with standards and criteria set by federal law;

(2)   unlike Defendant Freeman, EEOC security personnel only review information from the OPM investigation concerning existing, outstanding debts, see Exb. 3 at pgs. 79, 118-21;

(3)   unlike Defendant Freeman, EEOC security personnel afford the applicant due process by presenting the candidate with the precise information regarding their debt that falls within the OPM criteria and asking the candidate for explanations concerning the circumstances of their debt and non-payment, see Exb. 3 at pgs. 93-94, 116-117, 207-09;

(4)   unlike Defendant Freeman, instead of summarily denying employment, EEOC security personnel instead require the candidate to present a plan for paying the debt while they are employed by EEOC, and when they present a plan they are adjudicated favorably and hired, see Exb. 3 at pgs. 116-19, 129-31, 147-50, 207-09;

(5)   EEOC security personnel do not go back at some point after an applicant's hire and check if the applicant, now EEOC employee, has paid off their debt.  The EEOC employee is trusted to pay their debts, see Exb. 3 at pgs. 150, 190-92;

(6)   as a result, unlike Defendant Freeman, EEOC has not denied hire to (or unfavorably adjudicated) any applicant during the four-year tenure of the security staff currently conducting adjudications, see Exb. 3 at pgs. 82-83, 113-115, 129-31;

(7)   most importantly, EEOC security personnel only look at the issue of payment of debt to ensure that applicant will satisfy federal employee ethics obligations to pay just debts under 5 C.F.R. § 2635[2]; unlike Defendant Freeman, EEOC does not look at debt information for the purpose of ascertaining either risk of theft or future job performance, see Exb. 3 at pgs.  112-13, 116-17, 138, 140-41, 148-50, 176-77;

(8)   unlike Defendant Freeman, EEOC does not refuse to employ individuals because of debt or some perception that they have failed to meet prior financial obligations.  As long as the applicant is willing to commit to satisfying outstanding debts, and thus satisfy their federal employee ethical obligations, they are hired, see Exb. 3 at pgs. 190-91, 210.

The issue of employer purpose for looking at outstanding debts is particularly salient here. Defendant states that it reviews credit history to look for indicia of "financial responsibility" or dishonesty that it claims somehow predicts future on-the-job behavior. See Exb. 4 (Defendant's answer to EEOC Interrogatory No. 9); Exb. 5 (Defendant's supplemental answer to EEOC Interrogatory No. 9); Exb. 6 (excerpt from Defendant's supplemental answer to EEOC Interrogatory No. 25).  Use of credit history information to predict risk of employee theft and to predict future job performance are Defendant's theories of its business necessity defense.  But EEOC security personnel only look at current outstanding debt information, and only to ensure the applicant will satisfy the ethical obligation of a federal employee, set forth in Title 5 of the Code of Federal Regulations, to pay their debts; they do not make judgments about financial responsibility or how it bears on future work behavior.  In fact, note that the Code of Federal Regulations and Executive Order 10450, the 1953 executive order directing the executive branch

---

[2]  Specifically,  5 C.F.R. §  2635.101(b)(12) states the following ethical requirement for service as  a federal employee:  "Employees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those—such as Federal, State, or local taxes—that are imposed by law."

to conduct background suitability determinations, was corrected in 1961 to specifically delete the phrase "financial irresponsibility."  See Exec. Order 10450, 26 FR 6967, 1961 WL 8237.  Thus, EEOC practices are irrelevant because they are in no way linked to Defendant's affirmative defense or its theories of defense.

Moreover, as stated above, see supra Pg. 13 n.1, EEOC has already been deposed concerning this subject matter in another action, and the transcript of that deposition is now a matter of public record.  See EEOC v. Kaplan Higher Educ. Corp., No. 1:10CV2882 (N.D. Ohio) at ECF Document No. 62-15.  Therefore, to require EEOC to submit to yet another deposition regarding this subject matter is clearly unwarranted under Fed. R. Civ. P. 26(b)(2)(C)(i) & (ii).

Defendant is free to choose whatever theory it wishes in order to advance its business necessity defense, and it has done so.   But the discovery it seeks will not in any way advance its affirmative defense theories while at the same time unnecessarily burdening EEOC.  In short, there is no "there" there, and to permit Defendant Freeman to take yet another deposition of EEOC personnel concerning the role of debt information in its suitability adjudications is futile and a waste of governmental resources.  The information is already a matter of public record, and it is of no relevancy or probative value in this case.  See Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

    c.    <u>The federal standard for review of outstanding debt information is irrelevant because there have been no Congressional or OPM findings, supported by evidence, that use of current outstanding debt actually serves the purposes articulated by Freeman for its use of credit history information</u>

As discussed above, to the extent EEOC security personnel review applicants' current outstanding debt, it is to ensure the candidate conforms to federal employee ethics regulations concerning debt payment, not for the purpose Freeman reviews such information, which is to purportedly predict risk of theft and future job performance.  Not surprisingly then, EEOC has informed Defendant that it is unaware of any validation study done concerning any governmental

agency as it relates to either credit history or criminal history as a selection procedure. <u>See</u> Exb. 7 (Letter from R. Phillips to P. Mirengoff dated October 25, 2011). This is because consideration of debt by EEOC security personnel is not intended to predict future job performance.

Moreover, there is no indication in 29 C.F.R. Part 731, Executive Order 10450, or any other source of which EEOC is aware that OPM, its predecessor the U.S. Civil Service Commission, or Congress has made any findings based on reliable evidence — as opposed to the assumptions or stereotypes that Justice Marshall warned about in his opinion for the Court in *Johnson*[3] — that debt or credit history information predicts risk of theft or future job performance. In the absence of such indication, as reflected in the applicable case law, the federal government's employment standards and practices are plainly irrelevant.

> d.    <u>Suitability adjudications regarding EEOC applicants are irrelevant because they bear no resemblance to Freeman's criminal history selection criteria</u>

As discussed above, as a matter of law the practices of the U.S. Government concerning screening job applicants for criminal history are irrelevant to this litigation and not reasonably calculated to lead to discovery of admissible evidence. Either the job applicants that Freeman screened out for criminal history posed a substantial risk of serious harm to Freeman or its customers in the jobs for which they applied or they did not. This depends on the applicants and the Freeman jobs they sought.

Moreover, the practices of Defendant Freeman and OPM are so vastly distinct that OPM's practices have no relevancy to this case and do not advance Defendant's theories to any degree that would justify the burden of a Rule 30(b)(6) deposition on EEOC staff and the expense.

---

[3] In this regard, note historically that Executive Order 10450, 18 FR 2489, 1953 WL 5976, which is the legal authorization for OPM's suitability process, was issued to ensure "national security" in Cold War 1953, 11 years before Title VII. Among other things, it contains a requirement that investigation be conducted of the mental health history and "sexual perversion" of job applicants. <u>Id.</u>

Defendant Freeman's policy concerning criminal history information during the limitations period previously determined by the Court was as follows:

Candidates *will not be eligible for hire* if they have been convicted and/or plead guilty, no contest, or nolo contendere to any of the following:

1. A violent activity
2. Assault
3. Battery
4. Resisting arrest
5. Robbery
6. Murder
7. Manslaughter
8. Rape
9. Domestic violence
10. Weapons conviction
11. Kidnapping
12. Lewd and/or lascivious acts
13. Exposing oneself in public
14. Conspiracy
15. Inflicting corporal injury/punishment
16. Vandalism
17. Hit and run
18. Breaking/entering malicious destruction of property
19. Cruelty
20. Any felony or criminal record with a pending disposition or outstanding warrant
21. Drug charges greater than a misdemeanor In last 7 years
22. More than one misdemeanor drug charge in last 7 years
23. Job relevant misdemeanors in the last 7 years (e.g. theft for payroll/accounting jobs)
24. Job relevant convictions beyond 7 years

Exhibit 2 at pg. 3 (emphasis added).

In contrast, with very few statutory exceptions (example: a bar to federal employment if convicted of treason), the federal government does not make categorical disqualification decisions regarding criminal history of job applicants. By OPM regulation, when performing their criminal history adjudications federal agency security personnel are required to make individualized

assessments and "must consider" the following factors to the extent they are pertinent to a given

case:

> (1) The nature of the position for which the person is applying or in which the person is employed;
> (2) The nature and seriousness of the conduct;
> (3) The circumstances surrounding the conduct;
> (4) The recency of the conduct;
> (5) The age of the person involved at the time of the conduct;
> (6) Contributing societal conditions; and
> (7) The absence or presence of rehabilitation.

5. C.F.R. § 731.202 (c).

Moreover, unlike Defendant Freeman, a federal agency adverse suitability determination

requires due process procedures that include: (a) formal, specific notice to the applicant of the

proposed action and the specific reasons for that action, as well as examination of materials relied

upon for that action, (b) an opportunity for the applicant to respond in writing with supporting

documentation, (c) the right to be represented by counsel or another representative in that

proceeding, (d) the right to receive any agency answer to that response, (e) a formal decision

from OPM or the agency on the proposed action, and (f) a right to appeal the OPM or agency

decision to the Merit Systems Protection Board.  See 5 C.F.R. §§ 731.301 – 731.501.

Thus, the legally mandated practices and procedures used to assess criminal history in

federal agencies are substantially different from the Freeman practices at issue in this case, and it

is *Freeman's* practices that are at issue in this action.  But again, even assuming the federal

government's practices and procedures and those of Freeman were precisely the same, how does

that fact have any tendency to demonstrate that Freeman's exclusion of particular applicants for

their criminal history was necessary for the safe and efficient performance of jobs at Freeman?  It

doesn't, and a Rule 30(b)(6) of EEOC concerning that subject serves no valid purpose other than

to distract.

Moreover, the information about the federal government's suitability procedures and criteria as they relate to criminal history is already publicly available in the Code of  Federal Regulations, so even if relevant the burden and expense of a Rule 30(b)(6) deposition is outweighed by its exceedingly limited value to disposition of this case. See Fed. R. Civ. P. 26(b)(2)(C)(i), ((ii) & (iii).

Finally, since assessment of risk that may be presented by a particular candidate for employment is individualized (as mandated by OPM regulations), and since Defendant is seeking to, and must, justify its candidate selection decisions, it seems likely that what Defendant actually wishes to achieve here is exploration of specific decisions made regarding candidates with particular types of criminal convictions.  Such discovery would be equally irrelevant and would run afoul of the Privacy Act of 1974, 5 U.S.C. § 552a, and related regulations promulgated pursuant to the Privacy Act.

      e.    <u>Suitability adjudications regarding EEOC applicants are irrelevant because Freeman is a clearly different type of employer with different types of jobs</u>

In order for a federal employment standard to be relevant, the case law also requires that there be congruity between the federal positions and the positions at issue in this litigation.  It is beyond cavil that there is no congruity here.  Defendant Freeman is a for-profit business providing convention and exhibition services to business customers. See generally <u>www.freemanco.com</u> (Defendant's web site describing its business).  It handles customer property and customer funds. EEOC is a law enforcement agency.  Risk of government property theft is handled through <u>physical</u> security measures and procedures.  See Exb. 3 at pg. 140-41.

3.      *The information called for in subject area nos. 1 & 2 of Defendant's Rule 30(b)(6) Notice are improper subjects for deposition testimony, irrelevant, and can be obtained by other means under Fed. R. Civ. P. 26(b)(2)(C)*

Subject area nos. 1 & 2 of the Notice of Deposition seek an EEOC designee to identify all "policy guidance, regulations, opinion letters, Commission decisions, and similar documents" pertaining to the "legal standard" applicable to Title VII cases challenging an employer's use of credit or criminal history as a selection procedure. Exb. 1.  This is a highly improper use of Rule 30(b0(6).  The existence of a Commission policy guidance or other opinion document is simply not a relevant or material factual issue in this case. Defendant has not pleaded estoppel as an affirmative defense, nor has it pleaded reliance on an official written opinion or interpretation of the Commission under 42 U.S.C. § 2000e-12(b) (setting forth defense of reliance on written interpretation and opinion of EEOC); 29 C.F.R. § 1601.93 (setting forth requirements for documents constituting a written opinion or interpretation of EEOC). See CM/ECF Document No. 8 (Defendant's Answer).  Thus, there is no relevant factual issue in this case concerning the existence or non-existence of such documents.

Finally, all of this information, even the informal discussion letters, are publicly available. See, e.g., Exb. 8 (Letter from EEOC to OPM re: Rehabilitation Act and Title VII: Applicant Screening using Disability-related Inquiries, Criminal History Inquiries, and Financial History Inquiries in SF 85P and SF 85P-S) (EEOC Legal Counsel letter expressing skepticism that use of applicant/employee financial record information can be shown to be job-related and consistent with business necessity, citing lack of evidence supporting use of such information, and recommending elimination or significant restriction of such inquiries); 29 C.F.R. Part 1607 (Uniform Guidelines on Employee Selection Procedures); EEOC Policy Statement on the Issue of Conviction Records under Title VII of the Civil Rights Act of 1964 (1987) (available at

http://www.eeoc.gov/policy/docs/convict1.html) (last visited Apr. 12, 2012); EEOC Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964 (1990) (available at http://www.eeoc.gov/policy/docs/arrest-_records.html) (last visited Apr. 12, 2012); EEOC Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment (1987) (available at http://www.eeoc.gov/policy/docs/convict2.html) (last visited Apr. 12, 2012); EEOC Compliance Manual Section 15: Race & Color Discrimination (2006) (available at http://www.eeoc.gov/policy/docs/race-color.html) (last visited Apr. 12, 2012).  This is, essentially, Defendant attempting to use Rule 30(b)(6) in order to confirm the results of its counsel's legal research, and it is abusive.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff EEOC respectfully requests that this Court grant its Motion for Protective Order and enter an Order stating that EEOC is not required to give deposition testimony regarding the subject matter set forth in Defendant's Notice of Rule 30(b)(6) Deposition.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

_____/s/_____
RONALD L. PHILLIPS
Supervisory Trial Attorney
EEOC-Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, Maryland 21201
Telephone number: (410) 209-2737
Facsimile number: (410) 962-4270