# EXHIBIT F

**Equal Employment Opportunity Commission**

**v.**

**Freeman**


**Case No. 8:09-CV-02573-RWT**


**Expert Report**


Beth M. Huebner

University of Missouri – St. Louis

8001 Natural Bridge Road

Saint Louis, MO 63121


Submitted

July 17, 2012

# Table of Contents

Overview .............................................................................................................................. 3

Expert Qualifications ......................................................................................................... 3

Data Analysis .................................................................................................................... 4

Research Literature ........................................................................................................... 4

Disproportionate Contact with the Criminal Justice System ............................................. 5

    Arrest Phase .................................................................................................................. 5

    Court Processing ........................................................................................................... 6

Sentencing and Imprisonment ........................................................................................... 8

Criminal Record and Employment .................................................................................... 11

Moderators of Recidivism ................................................................................................ 12

    Time to Failure ............................................................................................................. 13

    Social Relationships, Education, and Employment ........................................................ 15

Disproportionate Minority Confinement ............................................................................ 16

Policy Change ................................................................................................................... 19

    Federal Bonding Program .............................................................................................. 20

Compensation for Expert Report ....................................................................................... 21

Previous experience .......................................................................................................... 21

Appendix A. List of Case Materials Reviewed .................................................................. 22

    Scientific and Professional Literature ............................................................................ 22

    Legal Documents .......................................................................................................... 28

    Company Documents ..................................................................................................... 29

    Exhibits ......................................................................................................................... 30

    Applicant Files .............................................................................................................. 31

    Data Files and Folders ................................................................................................... 31

    Depositions and Exhibits ............................................................................................... 34

Appendix B: Beth Huebner Vita ....................................................................................... 37

## Overview

The goal of this report is three fold.  First, I examine official Freeman employment data to determine if there is a disparate impact of criminal background checks for male, Hispanic, and African American applicants. Next, I summarize the research on disproportionate contact with the criminal justice system. This section details the scholarly literature on the role of gender, race, and national origin on criminal case outcomes. In addition, I discuss risk models associated with recidivism, and I describe the protective factors associated with positive life trajectories following criminal conviction. Finally, I end the report with a discussion of policy.

## Expert Qualifications

**Dr. Beth M. Huebner** is an Associate Professor and Graduate Director in the Department of Criminology and Criminal Justice at the University of Missouri-St. Louis. The University of Missouri St. Louis Criminology and Criminal Justice Department is ranked fourth in the Nation according to the 2010 rankings by *U.S. News and World Report*. She received her PhD in Criminal Justice from Michigan State University in 2003 and a Bachelor of Arts from the University of Wisconsin-Madison (1995).

Her principal research interests include the effect of incarceration on opportunities for marriage and employment, recidivism, and the effect of race and gender on criminal justice decision making. She has published 24 refereed journal articles. In 2009 she was awarded the Distinguished New Scholar Award from the American Society of Criminology Division on Corrections and Sentencing. Her work on the effect of incarceration on marriage and employment opportunities was honored by the Academy of Criminal Justice Sciences. In 2006, she was awarded the Criminal Justice Sciences Donal MacNamara Award. This award is given to the best article published in the area of criminal justice during that year. Her work is widely read and has been cited in 539 journal articles.

She has received funding from several agencies to support her research. She is currently serving as co-principal investigator for a National Institute of Justice grant designed to examine the efficacy of sex offender residency restrictions laws in Michigan and Missouri. She recently completed a report commissioned by the National Academy of Sciences. The report outlines the Missouri Model of Juvenile Corrections and will be part of a compendium on promising practices in juvenile correctional programming. In 2008, her work on juvenile justice was honored by the Academy of Criminal Justice Sciences, Juvenile Justice Section. She was awarded the Tori Caeti Award given for individuals who have made substantial contributions to juvenile justice. Dr. Huebner's vita can be found in Appendix A.

## Data Analysis

As part of the discovery process, a series of files were compiled that document the case processing and outcomes of applicants to the Freeman Corporation. I was asked to review the data on criminal background checks, and I was able to replicate the work of Dr. Kevin Murphy. In total, I reviewed data on 58,892 applicants (see Appendix A for information on files reviewed). In total, 96.5% (1061) individuals passed background checks and 3.5% failed (39).

The results of the analyses suggest differences in the outcomes of criminal background checks when considered by gender. Consistent with the work of Dr. Murphy, I conducted logistic regression and chi square analyses to test the differences between groups. Overall, women were less likely to fail a criminal background check, and the differences between groups is statistically significant ($p < .001$).

The analyses also revealed differences in criminal background checks by race.  African American applicants were significantly more likely ($p < .05$) to fail a criminal background check than a White applicant. However, similar analyses did not reveal differences in the failure rates of Hispanics.

## Conclusions

1. Men were significantly more likely to fail criminal background checks than female applicants.  Failure to pass background checks restricts the employment opportunities of male applicants applying to work at Freeman.

2. African American applicants were significantly more likely to fail criminal background checks than white applicants.  Failure to pass background checks restricts the employment opportunities of African American individuals applying to work at Freeman.

## Research Literature

The number of people under criminal justice supervision has grown dramatically over the past two decades. Recent estimates indicate that 2.4 million, or one in 100 adults, are currently serving time in prison or jail and one in 31 individuals is under some form of criminal justice supervision (Pew Center on the States 2008). For the first time in three decades the number of people released from prison exceeded the number of prison admissions (Guerino, Harrison and Sabol, 2011). Contact with the criminal justice system is not evenly distributed across the community, and researchers have documented the disproportionate arrest, sentencing, and incarceration rates of men and individuals of minority race and national origin. The following paragraphs describe the extant research on the disparities in case processing at arrest, arraignment, and sentencing. It is important to evaluate the variation in decisions at several points in the criminal justice process. Researchers have argued that gender, racial, and ethnic disparities can be cumulative as small differences at early phases in the decision process can account for some of the larger differences in aggregate imprisonment rates (Sampson and Lauritsen 1997).

## Disproportionate Contact with the Criminal Justice System

### Arrest Phase

Many individuals will have contact with the criminal justice system at some point in their lives. Using a representative national sample of youth, Brame and colleagues (2012) argue that the arrest rate, for a non-traffic offense, lies between 30.2% and 41.4%. The study only considered the likelihood of arrest until the age 23, and it is likely that prevalence rates would increase if an older sample of individuals were considered. Earlier work has suggested that half of the male population has been arrested in their lifetime (Christenson 1967). The contemporary lifetime prevalence rate is likely much higher than estimates from prior decades and can be attributed largely to changes in drug laws. The authors did not consider the variation in risk of arrest across race, national origin, and gender. Analyses of arrest records indicate that males are more likely to be arrested than women as 75% of all arrestees are males (FBI 2009).

Although the rates of arrest, conviction, and incarceration have increased over time, there is a substantial body of literature to suggest that minorities have disproportionate contact with the criminal justice system. At the arrest phase, African Americans accounted for 28% of all arrests in 2008 but represent 13% of the total population (FBI, 2009). In short, African Americans are arrested at a rate 2.2 times their share of the population. The relationship between race and arrest varies by crime type, and the ratio of disproportionate minority contact has changed over time (Sampson and Lauritsen 1997). Overall, African Americans have disproportionate arrest probabilities for violent and personal crimes (Rocque 2011).

There is also evidence to suggest that minorities may have differential contact with the police that may underscore the disparity in arrest rates. Blacks compose 9.8% of licensed drivers, but they represent 11.6% of all drivers stopped by police, and African American drivers are more likely to report multiple stops by police in the same year (Schmidt, Langan, and Durose 2002). In a comprehensive analysis of police behaviors in Missouri, Rojek and colleagues (2004) found that all but one organization indicated overrepresentation of stops for African American drivers. In addition, Novak and Chamlin (2012), in their study of Kansas City, indicated that the overall automobile search rate for Blacks is higher than it is for Whites (2.68 versus 1.97 per 1,000). Finally, Engel and Calnon (2004) reported that minorities were more likely to be stopped, searched, and taken into custody than whites.

Little research has considered how gender shapes experience with the police. Initial evidence suggests that women are less likely to be stopped by the police and when stopped the interaction is reported as positive (Weitzer, Tuch, and Skogan 2008), and Black men are more likely to be stopped than Black women (Weitzer and Tuch 2002).

**Conclusions**

1) Men are more likely to be arrested than women, regardless of race and ethnicity.
2) Racial and ethnic minorities are more likely to be arrested than whites.
3) African American and Hispanic men have disproportionate contact with the criminal justice system. Differential police contact may enhance the disparity in arrest and court outcomes for Hispanic and Black men.

Court Processing

After arrest, courts have substantial discretion to make case processing decisions.  This section of the report describes the data compiled as part of the 2006 State Court Processing Statistics (CPS) data collection program (Cohen and Kyckelhahn 2010). The CPS is a biennial data collection effort lead by the Bureau of Justice Statistics, and includes data on all state processing statistics for felony defendants arraigned in state courts in the 75 largest counties. The data suggest that 68% of defendants who are arraigned in state court are convicted. In total, 35% of court convictions result in a prison sentence; 36% go to jail, and the remainder is supervised in the community.

The report also includes data on offense and offender characteristics. Table 1 includes descriptive information on the gender, race, and ethnicity of individuals arraigned in state courts for a felony offense.  The jurisdictions included represent some of the communities where Freeman employs workers. Because the CPS data collection program only includes data on the largest communities, not all of the communities identified in the lawsuit are represented.

The summary data presented by the CPS highlights the disproportionate court processing of male felony defendants. There is variation in gender representation across jurisdictions, from a high of 90% in King County New York to a low of 73% in Broward County. In each jurisdiction, women represent approximately 50% of the total population. A matched sample t-test was conducted to look for disproportionate representation of men in the CPS sample. The differences within and between genders are statistically significant ($p<.001$). Men are more likely to be arraigned and women are disproportionally less likely to be represented in the arraignment population, whereas, men are significantly more likely to be arraigned than would be expected given their relative presence in the community.

Differences also emerged across racial and ethnic groups. The first half of Table 1 reports the gender, racial, and ethnic composition of the arraignment sample. The second half of the table includes information on the race and ethnic composition of the total county population for each court.  There is variation within and between groups. For example, the racial composition of the felony defendants in Oakland County, Michigan is 55% white, 44% African American, and less than one percent are Hispanic. In contrast 67 percent of defendants in state courts in Cook County, Illinois are African American; 13% are Hispanic and 19% white.

It is equally important to understand if the court processing statistics are disproportionate to the county population.  A series of t-tests were conducted to examine the disproportionate representation of African American and Hispanic men in the CPS sample when compared to the county population demographic. African Americans were disproportionally over represented in the felony defendant sample when compared to the county population, and the differences was

statistically significant (p<.001). Conversely, white defendants were under represented in the felony defendant sample, and the relationship was statistically significant (p<.001).  The test for the Hispanic group was not statistically significant. Overall, these figures highlight the disproportionate nature of the arraignment phase of court processing. Information on conviction and other court outcomes are presented in the next section.

Table 1. Court Processing Statistics and County Population Demographics for State Courts

| | Court Processing Statistics | | | County Population Characteristics: 2010 US Census | | |
|---|---|---|---|---|---|---|
| | Percent of Felony Defendants | | | Percent of Total County Population | | |
| | % Male | % White | % Black | % Hispanic | % White | % Black | % Hispanic |
| Maricopa (AZ) | 82 | 41 | 15 | 39 | 85 | 5 | 30 |
| Pima (AZ) | 80 | 42 | 10 | 43 | 86 | 4 | 35 |
| Los Angeles (CA) | 84 | 17 | 34 | 47 | 72 | 9 | 48 |
| Orange (CA) | 81 | 42 | 6 | 48 | 75 | 2 | 34 |
| San Bernardino (CA) | 84 | 37 | 25 | 37 | 78 | 10 | 50 |
| Ventura (CA) | 81 | 35 | 6 | 56 | 85 | 2 | 40 |
| Broward (FL) | 73 | 37 | 25 | 37 | 67 | 24 | 26 |
| Miami-Dade (FL) | 82 | 14 | 49 | 38 | 18 | 19 | 65 |
| Hillsborough (FL) | 76 | 42 | 42 | 16 | 76 | 18 | 25 |
| Orange (FL) | 83 | 34 | 45 | 21 | 70 | 22 | 28 |
| Cook (IL) | 85 | 19 | 67 | 13 | 66 | 25 | 24 |
| Baltimore (MD) | 77 | 46 | 52 | 2 | 15 | 53 | 4 |
| Montgomery (MD) | 85 | 33 | 52 | 13 | 64 | 18 | 18 |
| Prince George's (MD) | 88 | 14 | 81 | 5 | 27 | 65 | 15 |
| Oakland (MI) | 80 | 56 | 44 | 0 | 78 | 14 | 4 |
| Wayne (MI) | 84 | 24 | 74 | 2 | 54 | 40 | 5 |
| Bronx (NY) | 86 | 3 | 51 | 45 | 72 | 18 | 18 |
| Kings (NY) | 90 | 10 | 71 | 19 | 50 | 36 | 20 |
| Nassau (NY) | 86 | 38 | 43 | 18 | 78 | 12 | 15 |
| New York (NY) | 82 | 13 | 50 | 35 | 65 | 19 | 26 |
| Suffolk (NY) | 87 | 39 | 36 | 24 | 86 | 8 | 17 |
| Shelby (TN) | 83 | 14 | 85 | 1 | 44 | 52 | 6 |
| Dallas (TX) | 83 | 31 | 48 | 20 | 81 | 12 | 38 |
| El Paso (TX) | 83 | 12 | 8 | 80 | 93 | 4 | 81 |
| Harris (TX) | 79 | 26 | 43 | 31 | 71 | 19 | 41 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Tarrant (TX)** | 79 | 39 | 42 | 19 | 77 | 15 | 27 |
| **King (WA)** | 87 | 52 | 29 | 12 | 72 | 7 | 9 |

Recent analyses of the State Court Processing Statistics suggest that the gender and racial disparities described above persist across offense categories. In the total CPS sample, men were more likely than women to be arraigned for violent, property, or drug crimes.  Similarly, Hispanic and African Americans were more likely than whites to be arraigned for violent, property and drug crimes. The race, ethnic, and gender differences persist across offense categories and the differences are statistically significant. The differences are most pronounced for violent and drug crimes. Demuth and Steffensmeier (2004) use data from the 1990, 1992, 1994, and 1996 CPS samples to examine outcomes of the arraignment phase. They find that Hispanics and Blacks are more likely than whites to be sentenced to a term of incarceration (jail/prison) compared to probation. Hispanics and Blacks were also more likely to be sentenced to prison or jail, instead of probation, for property or drug crimes. It is important to note that there is little variation in sentencing outcomes for violent crimes as most offenders serve some incarceration time; therefore, the lack of statistical significance across groups of race and ethnicity are less surprising.  More information on sentencing outcomes is provided below.

**Conclusions**

1) Men are more likely to be arraigned in state court than women. Men are disproportionately represented in state courts. The differences are also statistically different when controlling for offense type (violent offense, property offense, or drug offense).
2) African Americans are more likely to be arraigned in state court than whites. African Americans are disproportionately represented in state courts. The significant disparities persist across offense type but are more pronounced for violent and drug crimes.

Sentencing and Imprisonment

Disproportionate representation in the criminal justice system is most salient when considering imprisonment. Overall, one in 100 individuals is behind bars. Men are more than three times more likely than women to be in prison. In total, 1 in 106 men are in prison compared to 1 in 355 women. Each day 1 in every 12 Black males and 1 in 36 Hispanic males ages 18 to 64 are in prison. In contrast 1 in 87 white males is incarcerated (Pew Charitable Trusts 2010). Hispanics represent the fastest growing incarcerated group. In 2002, Hispanic males represented 18% of the prison population but comprise only 9% of the total U.S. population (Harrison and Beck 2003). Compared to Whites, Hispanic and Black males are also more likely to be serve time in prison during their lifetime. Based on current estimates, 29% of Black males and 16% of Hispanic males will be incarcerated at some point during their lifetime; whereas less than five percent (4.4%) of white males can expect to spend time in prison (Bonczar and Beck 1997). Based on research conducted to date, there is strong evidence of a high imprisonment penalty paid by men, particularly for Black and Hispanic males.

Empirical research has highlighted several factors associated with disproportionately high rates of incarceration among Black and Hispanic men. At sentencing, African American men are more likely than white men to be sentenced to prison, net of criminal history and age. For example, Doerner and Demuth (2010), using data from U.S. Federal Courts, found that Black (91%) and Hispanic (89%) defendants were more likely to be sentenced to a prison term than whites (78%). The likelihood of incarceration was about one third higher for Hispanic and Black men than for white defendants, and Black and Hispanic defendants receive sentences that are about 5% longer than white defendants (Doerner and Demuth 2010). A recent meta-analysis, conducted by Mitchell (2005) confirms the significant, yet variable, effect of race on sentencing outcomes. Mitchell finds that African Americans were more likely to be sentenced to prison and to receive a longer sentence than whites, even after controlling for criminal history and the nature of the conviction. The relationship was maintained using data from state and Federal courts. Several other scholars have documented racial disparities in sentencing decisions and enhanced punishment for young Black men (Kramer and Steffensmeier 1993; Spohn and Holleran 2000; Steffensmeier and Demuth 2001).

The research on ethnicity is less developed but suggests that Hispanics may elicit a similar, negative response from criminal justice actors. In particular, Steffensmeier and Demuth (2001), in an analysis of sentencing at the federal level, revealed a moderate, significant effect of ethnicity on chances and length of imprisonment. Hispanic drug offenders had the largest discrepancies in sentences as these offenders rarely received downward departures from federal mandatory sentencing guidelines (see also Steffensmeier and Demuth 2000). Using state-level data, Ulmer and Bradley (2006) also found that Hispanics are more likely to be sentenced to prison and receive longer sentences than whites. Sentence length is an important consideration as time away from the community can erode work skills and leaves a large gap in an employment history. Length terms of imprisonment also can damage social relationships to family – a central source of employment connections (Sampson and Laub 2003).

The nature of the current offense is an important indicator of recidivism risk, and there is some research to suggest that the magnitude of the punishment varies by race, ethnicity, and offense type.  For example, Steffensmeier and Demuth (2001) found that Hispanics pay a particularly strong penalty for drug related offenses, compared to whites and Blacks (see also Engen and Gainey 2000; Klein, Petersilia, and Turner 1990; Spohn and Holleran 2000). Crawford and colleagues (1998) observed that African Americans received longer sentences for drug crimes than whites, and a recent meta-analysis suggests that racial disparity in sentencing is largest for drug-related crimes (Mitchell 2005). There is substantial variation in the effect of offense type of sentencing outcomes. Demuth and Steffensmeier (2004) found that Hispanics and Blacks were significantly more likely to be imprisoned for property and drug offenses, but the racial and ethnic measures were not significant for violent offenses. However, Maxwell and colleagues (2003) found that Blacks and Hispanics received longer sentences for murder, robbery, and assault, and Hispanics were more likely to go to prison for assault than whites. In each of these studies, African Americans and Hispanics were significantly more likely to be sentenced to a term of imprisonment, compared to community supervision.

There is also evidence that community context can interact with race to influence criminal justice outcomes. The relationship between community crime rate and sentencing outcomes has been mixed. Crawford and colleagues (1998) observed that  individuals living in

9

high crime communities were more likely to be punished harshly for violent crime. Bontranger and colleagues (2005) also found that Blacks living in areas with high drug arrest rates were punished more harshly, but a similar relationship was not observed for Hispanics. More recently, researchers have examined the relationship between community context, race and ethnicity, and sentencing. Bontranger and colleagues (2005) found that Black and Hispanic males residing in disadvantaged neighborhoods characterized by high rates of unemployment, poverty, and high school drop outs were significantly less likely to have adjudication withheld for felony offenses. In other words, minority men were more likely to be formally convicted then to be given a diversionary sentence (adjudication withheld) that would disappear from criminal records if the terms of supervision were completed. The relationships observed were strong. Hispanic defendants living in the most disadvantaged neighborhoods were three times less likely to receive a diversionary sentence when compared to individuals living in less disadvantaged communities. The diversion rate was two times higher for Hispanics living in the least disadvantaged neighborhoods.

Race and national origin can influence decisions at several points in the criminal justice process. Racial and ethnic disparity at early phases in the decision process account for some of the differences in aggregate imprisonment rates (Sampson and Lauritsen 1997). Researchers have found variation in racial and ethnic outcomes at pre-trial detention, prosecutorial screening, pre-trial bail and detention. For example, Frenzell and Ball (2007) found that Black offenders were more likely than white offenders to take their case to trial, rather than negotiating a guilty plea, controlling for a host of individual factors. Demuth (2003), in a study of pre-trial decisions, finds that Hispanic defendants are more likely to be detained than white and Black defendants. He argues that Hispanic individuals suffer a triple burden as they are most likely to be held on bail and at a higher amount, yet they are the least able to pay bail. Of the arrestees granted financial release, 28% of Hispanic defendants made bail compared with 40% of Black defendants and 54% of white defendants. Racial and ethnic differences were most pronounced in drug cases.

Less research has considered the unique role of women in court processing. Research conducted in Pennsylvania suggests that women are about 10% less likely to receive a prison sentence than men, net of offense type and severity and individual demographic characteristics (Steffensmeier, Kramer, and Streifel 1993). Research using a sample of individuals processed in Federal Court, Brennan and Spohn (2009) find that females received shorter prison sentences than similar male offenders (Spohn and Brennan 2011). Research suggests that women are less likely to be sentenced to prison and receive shorter sentences for property or drug offenses, and women who have been convicted of violent crime receive shorter prison sentences than similarly charged men (Rodriguez, Curry, and Lee 2006). The variation in sentencing outcomes by crime type and gender are substantively very small.

## Conclusions

1) African American and Hispanic men are more likely to be sentenced to prison when compared to white men, net of criminal history and other demographic measures.
2) African American and Hispanic men are sentenced to longer prison terms when compared to white men, controlling for criminal history and other demographic measures.

3) Women are less likely to be sentenced to prison than men and receive shorter sentences when sentenced to incarceration, even after controlling for a host of demographic and case characteristics. Gender differences persist across crime type.

4) The disparity in sentencing outcomes varies by crime type. The research is mixed, but some research suggests that minority men are more likely to be punished harshly for a drug and violent crime when compared to their white counterparts. That noted, Hispanic and African American men are overall more likely to be sentenced to prison, regardless of crime type.

5) The likelihood of imprisonment is particularly high for men who return to communities with high levels of poverty and social disorganization. Minority men returning to communities with high levels of disadvantage are more likely to be sentenced to prison than white defendants.

6) Disparity at earlier decision points in the court process may enhance the disparity in imprisonment outcomes for Hispanic and Black men.

### Criminal Record and Employment

The effect of a criminal conviction on job opportunities has been well established. Using experimental methodologies, researchers have found that employers are less likely to hire individuals who report being incarcerated than those who do not report any past convictions (Boshier and Johnson 1974; Buikhuisen and Dijksterhuis 1971). In addition, employers are more likely to hire an individual with less job experience than someone who reports being incarcerated (Holzer 1996). More recently, Pager (2003) using a matched pair design, found that employers were half as likely to consider a job candidate with a prior conviction, even if the person was equally qualified. The effect was particularly strong for Blacks. Only 5% of Blacks with a criminal conviction received a callback, while, 14% of Blacks without a conviction, 17% of whites with a conviction, and 34% of whites without a conviction were contacted by a potential employer (Pager 2003: 958). This work was recently replicated in New York City with similar results (Pager, Western, and Sugie 2009). This work has also been extended to include Hispanic males in New York City (Pager, Western, and Bonikowski 2009). Pager finds that Hispanics face similar challenges in the workforce as Blacks. In fact, when Hispanic and Black individuals were called back for jobs, they were often 'channeled down' and offered lower paying jobs. Whites, in contrast, were offered more prestigious, higher paying work.

Further, Pager and colleagues (2009) have extended their work to examine later stages of the employment process. They explore the role of race on personal contact with the employer. Individuals who interact with the employer are four to six times as likely to receive a callback or a job offer, and personal contact can reduce the stigma of a criminal record by 15 percent. They did observe significant racial variation in personal contact with employers. Blacks were one third as likely to gain access to employers for a personal discussion.

Incarceration, and the stigma of a criminal conviction, can have long-term negative effects on employment outcomes (see Western, Kling, and Weiman 2001 for a review). Researchers, using data from the National Longitudinal Survey of Youth (NLSY), have found that juvenile incarceration has significant, long-term effects on earnings (Fagan and Freeman 1999; Freeman 1991; Western and Beckett 1999). For example, Western and Beckett (1999) found that the employment status of individuals incarcerated as young adults was still

11

compromised fifteen years after release. In fact, the effect of incarceration far exceeded that for dropping out of high school, living in an area with high unemployment, and adult incarceration (Western and Beckett, 1999, p. 1048).

The relationship between adult incarceration and employment outcomes has also been considered. Current research suggests that adult incarceration may affect employment rates in the short term (Kling 1999; Needels 1996; Western and Beckett 1999). Western and Beckett (1999) discovered that adult incarceration had strong negative effects on employment, but the effect diminished after three or four years. In contrast, Waldfogel (1994), using data on federal larceny and fraud offenders, found that employment rates were lowered by at least five percent for individuals who had been imprisoned. A number of researchers have also linked adult imprisonment to reduced earnings potential (Grogger 1992; Grogger 1995). Kling (1999) estimated that each year of incarceration reduced total earnings by approximately 12% over an eight-year period. Western (2002) found that incarceration reduced both initial wages and the rate of wage growth over the fifteen year study period. In fact, incarceration reduced wage growth for incarcerated men by approximately one third. Recent research by the Pew Charitable Trusts (2010) suggests that incarceration can reduce annual earnings by 40 percent. To date, researchers have not considered the effect of imprisonment on employment and earnings for women.

**Conclusions**

1) A criminal record has negative effects on employment and earnings. Individuals with a prior criminal conviction are significantly less likely to be hired, and a criminal record is strongly correlated with reduced earning potential.
2) The effect of a criminal conviction on employment is particularly strong for African American and Hispanic men.

## Moderators of Recidivism

As noted, 2.4 million, or one in 100 adults, are currently serving time in prison or jail (Pew Center on the States 2008), and over 95 percent of inmates will be returned to the community, most within three years (Hughes, Wilson, and Beck 2001). In 2007 alone, over 700,000 individuals were released from prison (Sabol and Couture 2008). National estimates, using data from a 2004 release cohort, suggest that one half of offenders will be returned to prison within three years of release (Langan and Levin 2002). Recidivism risk is not uniform across the release period. Rosenfeld and colleagues (2005) indicate that the probability of failure peaks during the six months following release; the failure risk at fifteen months post release is half that at one month post release.

Recidivism has been defined in many ways, but it simply reflects subsequent contact with the criminal justice system following release from prison. Overall, 68% of individuals released are rearrested, 47% are convicted of a new crime, 25% were returned to prison for a new crime, and 52% were reincarcerated for a new offense of a technical violation (failure to comply with the terms of community supervision) (Langan and Levin 2002). Researchers have documented gender differences in recidivism. Most women who are released from prison will have subsequent contact with the criminal justice system. Recent cross-state estimates of recidivism suggest that 58% of incarcerated women are rearrested, 38% are reconvicted, and 30% are

returned to prison in the three years following release from prison (Deschenes, Owen, and Crow 2007).

Although the national estimates of recidivism are high, a substantial body of research has highlighted the heterogeneity in patterns of recidivism. Research findings suggest that the likelihood of failure is not uniform across individuals or post-prison release period (Langan and Levin 2002; Schmidt and Witte 1988). Although most research has examined the predictors of recidivism, one quarter of inmates, at minimum, do not have subsequent contact with the criminal justice system (Langan and Levin 2002). There is a consensus in the recidivism and general criminological research that individuals who have offended in the past are at higher risk for criminality in the future.

There is a growing body of literature that highlights possible moderators to recidivism. These studies suggest that factors like age, criminal background, drug use, education, social relationships, and employment status are important for understanding recidivism outcomes for men (Gendreau, Little, and Goggin 1996; Langan and Levin 2002) and women (see Kruttschnitt and Gartner 2003 for a review). As important, scholars have begun to identify factors associated with success following involvement in the criminal justice system (Laub and Sampson 2001). Although not an exhaustive list, the following section details key domains in understanding variation in reoffending patterns across the life course. These life circumstances have been linked to reductions in the likelihood of offending.

Time to Failure

An emerging body of research has developed to consider the relative risk of recidivism subsequent to a criminal conviction or imprisonment. In short, at what point in time the risk of rearrest for an individual with a criminal history equal that of a non-offender – often deemed 'redemption' (Blumstein and Nakamura, 2009). Much remains to be learned about the diversity of recidivism risk that is characteristic of prisoner release cohorts, and even less is known about those offenders who do not recidivate and end involvement in criminal activities. Also deemed desistance, research suggests that one quarter of inmates, at minimum, do not have subsequent contact with the criminal justice system following release from prison (Langan and Levin 2002).

Descriptive findings suggest that the likelihood of failure, defined as a subsequent conviction or return to prison, is not uniform across the post-prison release period (Langan and Levin 2002; Schmidt and Witte 1988). In fact, researchers conclude that there is a consistent time-to-recidivism pattern suggesting that odds of re-offending are greatest in the immediate months after offenders are discharged from prison and diminish precipitously thereafter (Kurlychek, Bushway, and Brame 2006). Most of this work has documented a positive relationship between recency of the criminal event and risk of failure (Kurlychek, Bushway, and Brame 2006; Raskin 1987). For example, Kurlychek and colleagues (2006), using data from the 1958 Philadelphia Birth Cohort, found that the risk of rearrest peaks after the initial arrest and declines with time. Across the bulk of the study period, the odds of offending were higher for men with prior juvenile records compared to those without a record;  however, after six years those with and without arrest records had virtually indistinguishable probabilities of a new arrest (see also Kurlychek, Brame, and Bushway 2007; Kurlychek, Bushway, and Brame 2012).

In a recent study from New York state, using arrest data from 1980, Blumstein and Nakamura (2009) find that about 30 percent of all arrestees had no further contact with the

criminal justice system. After about 10 years, the risk of arrest was similar for individuals with and without a criminal history. They did find a substantial variation in arrest patterns by crime type and age. Individuals convicted on burglary charges at the age of 18 had risk profiles similar to non-offenders after 3.8 years. Convergence was achieved for offenders convicted of aggravated assault at 4.3 years for aggravated assault and 7.7 years for robbery. The odds and time to failure are further reduced when the analysis was expanded to 20 year olds.

Bushway and colleagues (2011) further extend this work using a Dutch offender sample. Unique to this line of research, they consider the role of criminal history and age on offending trajectories. In addition, they consider timing of recidivism following conviction, not arrest. Using a comparison sample of individuals age 12–26 years with no criminal convictions, they find that it takes approximately 10 years for the risk of recidivism to equate with that of non-offenders. The risk of recidivism is highest in the first year following conviction and varies by age. The reconviction rate for 36 year olds (8.8) is half that of 26 years olds (19.6) in the first year. The 26-year-olds with no prior convictions have a 19.6 percent chance of conviction in the first year after their first conviction. The failure rate declines precipitously with age. As expected, prior criminal history is associated with longer risk periods for failure. Younger offenders with two or more offenses have offending risk that take nearly 16 years to converge with a non-conviction sample. However, there is little additive effect of criminal history for offenders over the age of 36.

Overall, this work suggests that there are periods in which offenders have an increased probability of offending; however, this risk period varies substantially for groups of offenders. As noted, the close correspondence between age and offending is one of the most noted associations in criminological research. Likewise, recidivism research consistently shows that one of the leading predictors of desistance is the age of the offender (Bushway, Piquero, Broidy, Cauffman, and Mazerolle 2001).

Although the research on the timing of recidivism is important, several limitations are noteworthy. First, this research does not include moderators of recidivism. For example, the effect of employment, marital status, education and other social and demographic factors were missing from these studies and most research on recidivism (Deschenes et al., 2007:57). Circumstances will vary significantly during the release period, and it is important to consider the timing and occurrence of life events (marriage, employment) when estimating patterns of recidivism (Horney, Osgood, and Marshall 1995). In addition, the research does not control for factors like marriage and employment that have been linked to positive post-release outcomes.

Second, the timelines described in this research represent the maximum times to failure. Many of the offenders in the sample failed prior to the allotted time. As noted, the risk for recidivism is not evenly distributed over the release period. Rather, risk potential peaks in the first months following release and declines with time (Maltz 1984; Schmidt and Witte 1988; Visher, Lattimore, and Linster 1991). In fact, Rosenfeld and colleagues (2005), using data from a nationally representative release cohort, found that the probability of failure during the first month from release is twice that than during the 15th month. The risk of recidivism drops substantially after the initial release period, and each day an individual is successful in the community, the less likely they are to have subsequent contact with the criminal justice system.

Individuals who have not reached the maximum failure periods detailed in the preceding research may have little risk of recidivism. These studies are conducted retrospectively, and these studies are not appropriate for the prospective estimation of recidivism risk. In fact, even the most elaborate studies of recidivism are rarely able to explain more than 30% of variation in the risk for recidivism (Petersilia 2003).

The lack of specificity in measurement further reduces the inferences that can be drawn. As noted, the models include very few correlates of failure. Although Blumstein and Nakamura (2009) account for the type of prior conviction,  this research does not consider how the timing or severity of the prior criminal offense influenced outcomes. In these models, it is impossible to differentiate individuals who have embezzled from a workplace from those who committed petty theft. In addition, the work of Kurlychek and colleagues (2006) and Blumstein and Nakamura (2009) rely on arrest data, but many of these arrests may not have been sustained in court, further reducing the incidence of recidivism. Finally, the work of Bushway and colleagues (2011) relies on a Dutch offender sample and Kurlychek's work centers on data from 1958.  It is not clear if the results of these analyses can be generalized to a contemporary US sample.

In summary, the current studies on long term patterns of desistance provide an important first step in understanding the long-term offending patterns of offenders. However, the studies are retrospective and were not designed to predict future criminality. Most important, these studies do not consider factors that may accelerate (post-release drug use, mental health diagnosis) or inhibit (marriage, employment) future criminal behaviors.

**Conclusions**

1) The risk of recidivism is not stable over time, and the risk of subsequent contact with the criminal justice system declines steadily following release from prison. Risk peaks during the first six months post release and declines over time. Current research on recidivism is retrospective and based on large aggregate groups and not designed to predict future behavior of one individual. Estimates of desistance or redemption are designed to estimate the maximum risk periods and are not reflective of individual trajectories. Individuals who have not reached the redemption periods outlined in this research may no longer be at risk, or at very little risk, of recidivism.
2) Risk declines faster for older individuals and for persons with a conviction for a property crime.

Social Relationships, Education, and Employment

Although most contemporary research has focused on the predictors of failure, there is a body of work which highlights the factors associated with desistance from crime. Positive social relationships are key for understanding patterns of criminal activity. Marriage and employment have been identified as central correlates of desistance, or the absence of and abstinence from criminal activity. Employment and marriage dominate the structure of daily routines and thus minimize the proximate situational inducements to crime (e.g., association with deviant peers) (Horney, Osgood, and Marshall 1995; Sampson and Laub 1993; Warr 1998). Quality marriages and stable employment also stimulate and sustain ex-inmates' perception of their own identity and give them something to lose (Braithwaite 1989; Maruna 2001). For example, Sampson and

Laub (1993) observed that for married members of their sample, attachment to a spouse assumed greater relative importance than job stability in explaining adult crime (see also Laub, Nagin, and Sampson 1998). More recently, King and colleagues (2007), using modern data from the National Youth Study, found that marriage reduced criminal involvement for all men, but had a particularly strong effect for men with low educational attainment, inconsistent work experience, and prior criminal involvement (see also Sampson, Laub, and Wimer 2006). The ability of an offender to reconnect with family members and social networks also affects opportunities for housing, employment and, ultimately, recidivism (Mallik-Kane and Visher 2008).

Despite the documented challenges in the workforce, there is ample evidence to suggest that employment can be an important factor associated with desistance from crime. A sizeable body of empirical research shows that, despite a lengthy arrest record and past failures in life domains, offenders who secure stable employment are less likely to re-offend (Sampson and Laub 2003; Western, Kling, and Weiman 2001). Education may also be a conduit for improved work outcomes and eventual desistance.  Educational attainment, particularly the completion of high school, is a strong, positive predictor of desistance (National Research Council 2008). In a meta-analysis of correctional work and employment programs, Wilson and colleagues (2000) also found that participation in educational programming and vocational training during a term of incarceration is associated with a reduction in recidivism and increased chances for employment.

**Conclusions**

1) The risk of recidivism varies substantially across individuals.
2) Strong, pro social relationships with family and intimate partners can reduce the likelihood of recidivism. Information on social relationships is typically not captured in an employment background check.
3) Employment reduces the odds of recidivism.

### Disproportionate Minority Confinement

The empirical literature highlights the disparate experiences of men and members of racial and ethnic minority groups in the criminal justice system. These experiences are manifest in state incarceration rates. Data on incarceration rates by state, race, and ethnicity are presented in Table 2. The data are complied by the Bureau of Justice statistics and represent the prison and jail population at midyear 2005 (Harrison and Beck 2006). Ratios were calculated by the report author. Individual states were selected because of their identification in the Freeman case. The data presented are rates, per 100,000 individuals, and are based on state resident population of the same race or ethnicity.

There are substantial differences in imprisonment rates by gender. Men are at minimum seven times more likely than women to be incarcerated. On average, the national imprisonment rate for men is over ten times higher than that of women. In New York, the imprisonment rate for men was 16 times higher than that of women. t-tests were conducted to detect differences between groups, and the results reveal significant differences in the imprisonment rates of men and women ($p<.001$).

16

As displayed, there are also discernible differences in the imprisonment rates by race and ethnicity. The District of Columbia and Iowa have the first and second highest Black to white ratios in imprisonment. In fact, all but four states (Tennessee, Texas, Louisiana, and Florida) have higher rates of imprisonment of African Americans than the national rate. There is also variation by ethnicity. All but four states had higher rates of imprisonment for Hispanics when compared to Whites. Minnesota and Maryland did not report data by ethnicity. Results from t-tests indicate that Hispanics and African Americans have significantly higher rates of imprisonment than whites and the differences are statistically significant (Black, $p<.001$; Hispanic, $p<.05$).

**Table 2. State Rates of Incarceration by Sex, Race and Ethnicity (per 100,000 persons)**

| | Male | Female | Female/ Male Ratio | White | Black | Hispanic | Black/ White Ratio | Hispanic/ White Ratio |
|---|---|---|---|---|---|---|---|---|
| **National** | 1249 | 121 | 10.32 | 412 | 2290 | 742 | 5.56 | 1.80 |
| **Arizona** | 1443 | 141 | 10.23 | 590 | 3294 | 1075 | 5.6 | 1.8 |
| **California** | 1246 | 119 | 10.47 | 460 | 2992 | 782 | 6.50 | 1.70 |
| **Colorado** | 1279 | 116 | 11.03 | 525 | 3491 | 1042 | 6.65 | 1.98 |
| **Florida** | 1541 | 155 | 9.94 | 588 | 2615 | 382 | 4.45 | 0.65 |
| **Georgia** | 1877 | 184 | 10.20 | 623 | 2068 | 576 | 3.32 | 0.92 |
| **Illinois** | 951 | 79 | 12.04 | 223 | 2020 | 415 | 9.06 | 1.86 |
| **Iowa** | 751 | 83 | 9.05 | 309 | 4200 | 764 | 13.59 | 2.47 |
| **Louisiana** | 2134 | 195 | 10.94 | 523 | 2452 | 244 | 4.69 | 0.47 |
| **Maryland** | 1219 | 88 | 13.85 | 288 | 1579 | * | 5.5 | * |
| **Massachusetts** | 687 | 45 | 15.27 | 201 | 1635 | 1229 | 8.13 | 6.11 |
| **Michigan** | 1262 | 85 | 14.85 | 412 | 2262 | 397 | 5.49 | 0.96 |
| **Minnesota** | 553 | 52 | 10.63 | 212 | 1937 | * | 9.14 | * |
| **Nebraska** | 756 | 93 | 8.13 | 290 | 2418 | 739 | 8.34 | 2.55 |
| **Nevada** | 1319 | 173 | 7.62 | 627 | 2916 | 621 | 4.65 | 0.99 |
| **New York** | 935 | 57 | 16.40 | 174 | 1627 | 778 | 9.35 | 4.47 |
| **Pennsylvania** | 1155 | 92 | 12.55 | 305 | 2792 | 1714 | 9.15 | 5.62 |
| **Tennessee** | 1339 | 151 | 8.87 | 487 | 2006 | 561 | 4.12 | 1.15 |
| **Texas** | 1772 | 186 | 9.53 | 667 | 3162 | 830 | 4.74 | 1.24 |
| **Virginia** | 1393 | 144 | 9.67 | 396 | 2331 | 487 | 5.89 | 5.90 |
| **Washington** | 831 | 101 | 8.23 | 393 | 2522 | 527 | 6.42 | 1.34 |
| **Washington, DC** | 1202 | 145 | 8.29 | 56 | 1065 | 267 | 19.02 | 4.77 |

**\*** Based on estimates of each State's resident population (by race and Hispanic origin) for July 1, 2005.

Table 3 includes state level data on racial and ethnic composition. Data were compiled by the author and data were obtained from the 2010 US Decennial Census. The data further highlight the racial and ethnic disparity in incarceration rates by state. This table further

highlights the disparity in sentencing rates. For example, the incarceration rate for Iowa is particularly high given that only three percent of the population is African American. Colorado and Arizona display similar disparity.  Similarly, Pennsylvania has a relatively small population of Hispanic residents but a higher than average incarceration rate among this group.

Table 3. State Racial and Ethnic Composition, 2010

| | Percent of State Population | | |
|---|---|---|---|
| | % White | % Black | % Hispanic |
| Arizona | 73 | 4 | 30 |
| California | 58 | 6 | 38 |
| Colorado | 81 | 4 | 21 |
| Florida | 75 | 16 | 22 |
| Georgia | 60 | 30 | 9 |
| Illinois | 72 | 15 | 16 |
| Iowa | 91 | 3 | 5 |
| Louisiana | 63 | 32 | 4 |
| Maryland | 58 | 29 | 8 |
| Massachusetts | 80 | 7 | 10 |
| Michigan | 79 | 14 | 4 |
| Minnesota | 85 | 5 | 5 |
| Nebraska | 86 | 5 | 9 |
| Nevada | 66 | 8 | 27 |
| New York | 66 | 16 | 18 |
| Pennsylvania | 82 | 11 | 6 |
| Tennessee | 78 | 17 | 5 |
| Texas | 70 | 12 | 38 |
| Virginia | 69 | 19 | 8 |
| Washington | 77 | 4 | 11 |
| Washington, DC | 38 | 51 | 9 |

**Conclusions**

1) Men are more likely than women to be serving time in prison, and the gender differences are statistically significant.
2) The rate of imprisonment for African Americans is higher than for whites, and the differences are statistically significant.
3) The rate of imprisonment for Hispanics is higher than whites, and the differences are statistically significant.
4) The rates of incarceration for Men, Hispanics, and African Americans vary substantially by state.

## Policy Change

The research cited above highlights the importance of considering the nature and gravity of the crime, the time elapsed, the nature of the job, and employment history before making employment decisions based on prior criminal histories. Several policy suggestions follow from this research.

First, it is important for the employer to obtain additional information on the nature and gravity of the crime before making employment decisions. There is evidence to suggest that criminal background checks may be open to error and bias (SEARCH Group 2005). Many criminal records are out of date and may include information on arrests that did not lead to a conviction. As noted, approximately one third of felony arrests do not lead to a conviction (Cohen and Kyckelhahn 2010).

In addition, definitions of criminal offenses can vary significantly across states and municipalities. There is evidence to suggest a very small proportion of all arrests are for the most serious offenses. Data from the FBI suggest that 4 percent of arrests are for violent crimes, 10% for simple assault, 18% for property crimes, and 12% for drug offenses. The remaining 56% of arrests are for other offenses (public intoxication, traffic offenses) (FBI 2009). More importantly, the criminal background check simply lists the offenses, but it does not capture the nature of the criminal event. For example, it is impossible to discern from the criminal background report if a crime was committed in the workplace or if the events impaired an individual's ability to complete the job.

Second, it is important to evaluate the time since conviction or completion of a prison/probation sentence. As described earlier in this report, the longer the period of desistance, the more likely the individual is to remain crime free. Most research suggests that risk for recidivism declines dramatically after one year, but adult criminal history records are never removed from background check documents.

Similarly, employers should consider protective factors that may further reduce the chances of failure. As noted, marriage and positive social relationships and ties to the community are important determinants of post-release success. This type of information is not included in background checks but could be discerned from a personal interview, where it is lawful to do so. The scientific literature indicates that marriage is an important correlate of desistance, though I offer no opinion on the legal permissibility of an employer considering marital status in a given situation.

Finally, employers should consider if a prior criminal history record has a bearing on the applicants' ability to complete job tasks. As noted, criminal background checks can be incomplete and likely will not differentiate between crimes that are related to the workplace and those that have little bearing on employment. Instead, it would be prudent for employers to gain as much information on employment history as available. It would be useful ascertain if the person has done work in the job field, and if the employee have been employed in the field post-conviction. There is research to suggest that individuals that have more investment in a job and feel that the work is related to long-term career goals are less likely to commit workplace deviance (Huiras, Uggen, and McMorris 2000), and good job quality has been linked to lower

rates of recidivism (Uggen 2000). Research has not considered how past employment history directly influences the risk of recidivism or workplace misconduct. That noted, it seems reasonable to consider prior employment history when making hiring decisions.

Overall, reliance solely on a criminal history check may unnecessarily broaden the range of individuals excluded for employment. As noted, background check records are vague and can be inaccurate. Criminal background checks should not be used in lieu of a personal interview. Personal contact and discussion with a potential employee would allow individuals to demonstrate specific skills or to contextualize or dispute the criminal conviction. In addition, an individual would be able to describe the factors that may reduce the risk of offending, like strong social ties, during an interview. These types of information are not discernible from an application or a background check. The EEOC provides guidance for employers when evaluating criminal background checks and interviewing employees (EEOC 2012). Employers should look to these documents to provide training and guidance to human resource managers and staffing consultants.

**Conclusions**
1. Criminal history records can be an imperfect representation of individual criminal histories.
2. Employers should consider the nature and gravity of the crime, the time elapsed, and the nature of the job before making employment decisions.
3. A large proportion of the data needed for hiring cannot be culled from a criminal history report.

### Federal Bonding Program

Many employers are reluctant to hire ex-offenders because of fear of fraud and other related risks. The Federal government offers a program designed to mitigate some of the risk of hiring individuals with a criminal record. Fidelity Bonds help guarantee honesty for "at-risk" and hard-to-place job seekers. The program has been in place since 1966 and is no cost to the employee or the employer (see http://www.bonds4jobs.com/).

Many offenders are deemed not bondable because they have committed a fraudulent or dishonest act. This makes employment very difficult for this population. The program lasts for six months. After the trial period, clients who have shown work skills and honesty on the job can apply for insurance through the Travelers Casualty and Surety Company of America. Any employment organization can seek insurance coverage through this program. The bond insurance issued ranges from $5,000 to $25,000 coverage for a 6-month period with no deductible amount (employer gets 100% insurance coverage).

In the Workforce Investment Act (WIA) passed in 1997, The United States Department of Labor determined that State and local funds (including Federal funds allocated to State and local level entities) were to be used to purchase bonds, and any State or local agency (public or private, profit or non-profit) could acquire bonds and deliver bonding services through the

purchase of a bond package. The process has been simplified to allow for instant job placement. Bonds can also be purchased in large bundles.

**Conclusions**

1. The federal bonding program is a valuable resource for employers interested in hiring an individual with a prior criminal conviction.

### Compensation for Expert Report

For this expert engagement, both report and testimony, I am being compensated at $175 per hour.

### Previous experience

Dr. Beth Huebner does not have prior experience giving expert testimony.

Beth M. Huebner

7/17/2012

## Appendix A. List of Case Materials Reviewed

Scientific and Professional Literature

Blumstein, Alfred and Kiminori Nakamura. 2009. "Redemption in the Presence of Widespread Criminal Background Checks." *Criminology* 47:327-359.

Bonczar, Thomas P. and Allen J. Beck. 1997. "Lifetime Likelihood of Going to State or Federal Prison." Bureau of Justice Statistics, Washington, D.C.

Boshier, R. and David R. Johnson. 1974. "Does Conviction Affect Employment Opportunities?" *British Journal of Criminology* 14:264-268.

Braithwaite, John. 1989. *Crime, Shame, and Reintegration*. Cambridge, England: Cambridge University Press.

Brame, Robert, Michael G. Turner, Raymond Paternoster, and Shawn D. Bushway. 2012. "Cumulative Prevalence of Arrest From Ages 8 to 23 in a National Sample." *Pediatrics* 129:21-27.

Brennan, Pauline and Cassia Spohn. 2009. "The Joint Effects of Offender Race/Ethnicity and Sex on Sentence Length Decisions in Federal Courts." *Race and Social Problems* 1:200-217.

Buikhuisen, W. and F.P.H. Dijksterhuis. 1971. "Delinquency and Stigmatization." *British Journal of Criminology* 11:185-187.

Bushway, Shawn D., Paul Nieuwbeerta, and Arjan Blokland. 2011. "The Predictive Value of Background Checks: Do Age and Criminal History Affect Time to Redemption." *Criminology* 49:27-60.

Bushway, Shawn D., Alex Piquero, Lisa M. Broidy, Elizabeth Cauffman, and Paul Mazerolle. 2001. "An Empirical Framework for Studying Desistance as a Process." *Criminology* 39:491-515.

Christenson, Ronald 1967. "Projected Percentage of U.S. Population with Criminal Arrest and Conviction Records." U.S. Government Printing Office, Washinton, DC

Cohen, Thomas H. and Tracey Kyckelhahn. 2010. "Felony Defendants in Large Urban Counties, 2006." Bureau of Justice Statistics

Crawford, Charles, Ted Chiricos, and Gary Kleck. 1998. "Race, Racial Threat, and Sentencing of Habitual Offenders." *Criminology* 36:481-511.

Demuth, Stephen. 2003. "Racial and Ethnic Differences in Pretrial Release Decisions and Outcomes: A Comparison of Hispanic, Black, and White Felony Arrestees." *Criminology* 41:873-908.

Demuth, Stephen and Darrell Steffensmeier. 2004. "Ethnicity Effects on Sentence Outcomes in Large Urban Courts: Comparisons Among White, Black, and Hispanic Defendants*." *Social Science Quarterly* 85:994-1011.

Deschenes, E.P., B. Owen, and Jason Crow. 2007. "Recidivism Among Female Prisoners: Secondary Analysis of the 1994 BJS Recidivism Data Set." California State University - Long Beach.

Doerner, Jill K. and Stephen Demuth. 2010. "The Independent and Joint Effects of Race/Ethnicity, Gender, and Age on Sentencing Outcomes in U.S. Federal Courts." *Justice Quarterly* 27:1-27.

EEOC. 2012. "Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964." Washington, DC: Equal Opportunity and Exchange Comission

Engel, Robin Shepard and Jennifer M. Calnon. 2004. "Comparing Benchmark Methodologies for Police-Citizen Contacts: Traffic Stop Data Collection for the Pennsylvania State Police." *Police Quarterly* 7:97-125.

Engen, Rodney L. and Randy R. Gainey. 2000. "Modeling the Effects of Legally Relevant and Extralegal Factors under Sentencing Guidlines: The Rules have Changed." *Criminology*

Fagan, Jeffrey and Richard B. Freeman. 1999. "Crime and Work." Pp. 225-290 in *Crime and Justice: A Review of Research*, vol. 25, edited by M. Tonry. Chicago, Illinois: The University of Chicago Press.

FBI. 2009. "Crime in the United States, 2008." Federal Bureau of Investigation, Washington, D.C.

Freeman, Richard B. 1991. "Crime and the Employment of Disadvantaged Youths." National Burea of Economic Research, Cambridge, MA.

Frenzel, Erika Davis  and Jermy D. Ball. 2007. "Effects of Individual Characteristics on Plea Negotiations under Sentencing Guidelines." *Journal of Ethnicity in Criminal Justice* 5:59-79.

Gendreau, Paul, Tracy Little, and Claire Goggin. 1996. "A Meta-Analysis of the Predictors of Adult Offender Recidivism: What Works!" *Criminology* 34:575-607.

Grogger, Jeffrey. 1992. "Arrests, Persistent Youth Joblessness, and Black/White Employment." *The Review of Economics and Statistics* 74:100-106.

—. 1995. "The Effect of Arrests on the Employment and Earnings of Young Men." *The Quarterly Journal of Economics* 110:51-71.

Harrison, Paige M. and Allen J. Beck. 2003. "Prisoners in 2002." U.S. Department of Justice, Bureau of Justice Statistics, Washington, D.C.

—. 2006. "Prison and jail inmates at midyear 2005 (NCJ 213133)." Bureau of Justice Statistics Washington, DC.

Holzer, Harry J. 1996. *What Employers Want: Job Prospects for Less- Educated Workers*. New York: Russell Sage.

Horney, Julie , D. Wayne Osgood, and Ineke Haen Marshall. 1995. "Criminal Careers in the Short-Term: Intra-Individual Variability in Crime and Its Relation to Local Life Circumstances." *American Sociological Review* 60:655-673.

Hughes, Timothy A., Doris James Wilson, and Allen J. Beck. 2001. "Trends in State Parole, 1990-2000." The Bureau of Justice Statistics, Washington D.C.

Huiras, Jessica, Christopher Uggen, and Barbara McMorris. 2000. "Career Jobs, Survival Jobs, and Employee Deviance: A Social Investment Model of Workplace Misconduct." *Sociological Quarterly* 41:245-263.

King, Ryan D., Michael Massoglia, and Ross MacMillan. 2007. "The Context of Marriage and Crime:Gender, the Propensity to Marry, and Offending in Early Adulthood." *Criminology* 45:33-65.

Klein, Malcolm W., Joan Petersilia, and Susan Turner. 1990. "Race and imprisonment decisions in California." *Science* 247:812-816.

Kling, Jeffrey R. 1999. "The Effect of Prison Sentence Length on the Subsequent Employment and Earnings of Criminal Defendants." Woodrow Wilson School, Princeton University, Princeton, New Jersey.

Kramer, John and Darrell Steffensmeier. 1993. "Race and Imprisonment Decisions." *The Sociological Quarterly* 34:357-376.

Kruttschnitt, Candace and Rosemary Gartner. 2003. "Women's Imprisonment." Pp. 1-82 in *Crime and Justice: A Review of Research*, vol. 30, edited by M. Tonry. Chicago: University of Chicago Press.

Kurlychek, Megan, Robert Brame, and Sean Bushway. 2007. "Enduring Risk? Old Criminal Records and Predictions of Future Criminal Involvement " *Crime & Delinquency* 53:64-83.

Kurlychek, Megan, Sean Bushway, and Robert Brame. 2006. "Scarlet Letters and Recidivism: Does an Old Criminal Record Predict Future Offending?" *Criminology and Public Policy* 5:483-504.

Kurlychek, Megan C., Shawn D. Bushway, and Robert Brame. 2012. "Long-Term Crime Desistance and Recidivism Patterns—Evidence from the Essex County Convicted Felon Study." *Criminology* 50:71-103.

Langan, Patrick A. and David J. Levin. 2002. "Recidivism of Prisoners Released in 1994." Bureau of Justice Statistics, Washington, D.C.

Laub, John, Daniel S. Nagin, and Robert Sampson. 1998. "Trajectories of Change in Criminal Offending: Good Marriages and the Desistance Process." *American Sociological Review* 63:225-238.

Laub, John and Robert Sampson. 2001. "Understanding Desistence from Crime." Pp. 1-69 in *Crime and Justice* vol. 28, edited by M. Tonry and N. Morris. Chicago University of Chicago Press.

Mallik-Kane, Kamala and Christy A. Visher. 2008. "Health and Prisoner Reentry: How Physical, Mental, and Substance abuse Conditions Shape the Process of Reintegration." The Urban Institute, Washington, DC.

Maltz, Michael D. 1984. *Recidivism*. Orlando: Academic Press

Maruna, Shadd. 2001. *Making Good: How Ex-Convicts Reform and Rebuild their Lives*. Washington, D.C.: American Psychological Association.

Maxwell, Christopher D., Amanda L. Robinson, and Lori A. Post. 2003. "The Impact of Race on the Adjustication of Sexual Assault and Other Violent Crimes." *Journal of Criminal Justice* 31:523-538.

Mitchell, Ojmarrh. 2005. "A meta-analysis of race and sentencing research: Explaining the inconsistencies." *Journal of Quanitative Criminology* 21:439-466.

National Research Council. 2008. "Parole, desistance from crime, and community integration." The National Academies Press Washington, D.C.

Needels, Karen E. 1996. "Go Directly to Jail and Do Not Collect? A Long Term Study of Recidivism, Employment, and Earnings Patterns amoung Prison Releases." *Journal of Research in Crime and Delinquency* 33:471-496.

Novak, Kenneth J. and Mitchell B Chamlin. 2012. "Racial Threat, Suspicion, and Police Behavior: The Impact of Race and Place in Traffic Enforcement." *Crime & Delinquency* 58:275-300.

Pager, Devah. 2003. "The Mark of a Criminal Record." *American Journal of Sociology* 108:937-975.

Pager, Devah, Bruce Western, and Bart Bonikowski. 2009. "Discrimination in a Low-Wage Labor Market." *American Sociological Review* 74:777-799.

Pager, Devah, Bruce Western, and Naomi Sugie. 2009. "Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records." *The ANNALS of the American Academy of Political and Social Science* 623:195-213.

Petersilia, Joan. 2003. *When Prisoners Come Home: Parole and Prisoner Reentry*. New York: Oxford.

Pew Center on the States. 2008. "One in 100: Behind Bars in America 2008." Pew Charitable Trusts, Washington, DC.

Pew Charitable Trusts. 2010. "Collateral Costs: Incarceration's Effect on Economic Mobility." Pew Charitable Trusts, Washignton, DC.

Raskin, Helene White. 1987. "Longitudinal Predictors of Serious Substance Use and Delinquency." *Criminology* 25:715-740.

Rocque, Michael. 2011. "Racial Disparities in the Criminal Justice System and Perceptions of Legitimacy." *Race and Justice* 1:292-315.

Rodriguez, Fernando S., Theodore R. Curry, and Gang Lee. 2006. "Gender Differences in Criminal Sentencing: Do Effects Vary Across Violent, Property, and Drug Offenses?." *Social Science Quarterly* 87:318-339.

Rojek, Jeff, Richard Rosenfeld, and Scott Decker. 2004. "The Influence Of Driver's Race on Traffic Stops in Missouri." *Police Quarterly* 7:126-147.

Rosenfeld, Richard, J Wallman, and Robert Fornango. 2005. "The contribution of ex-prisoners to crime rates." Pp. 80-104 in *Prisoner Reentry and Crime in America*, edited by J. Travis and C. A. Visher. New York Cambridge University Press.

Sabol, William J. and Couture. 2008. "Prison Inmates at Midyear 2007." Bureau of Justice Statistics, Washington, D.C. .

Sampson, Robert and John Laub. 1993. *Crime in the Making: Pathways and Turning Points through Life*. Cambridge, MA: Harvard University Press.

—. 2003. *Shared Beginnings, Divergent Lives : Delinquent Boys to Age 70*. Boston: Harvard University Press.

Sampson, Robert, John Laub, and C. Wimer. 2006 "Does Marriage Reduce Crime? A Counterfactual Approach to Within-Individual Causal Effects." *Criminology* 44:465-508.

Sampson, Robert and Janet L. Lauritsen. 1997. "Racial and ethnic disparities in crime and criminal justice in the United States." Pp. 311-374 in *Ethnicity, Crime, and Immigration: Comparative and Cross-National Perspectives*, edited by M. Tonry. Chicago: University of Chicago Press.

Schmidt, Erica, Neal P. Langan, and Michael Durose. 2002. "Characteristics of Drivers Stopped by Police, 1999." Bureau of Justice Statistics, Washington, DC.

Schmidt, P. and A.D. Witte. 1988. *Predicting Recidivism Using Survival Models*. New York: Springer-Verlag.

SEARCH Group, Incorporated. 2005. "Report of the National Task Force on the Commercial Sale of Criminal Justice Record Information." SEARCH Group, Inc., Sacramento , Calif.

Spohn, Cassia and Pauline K. Brennan. 2011. "The Joint Effects of Offender Race/Ethnicity and Gender on Substantial Assistance Departures in Federal Courts." *Race and Justice* 1:49-78.

Spohn, Cassia and David Holleran. 2000. "The Imprisonment Penalty Paid by Young, Unemployed Black and Hispanic Male Offenders." *Criminology* 38:281-306.

Steffensmeier, Darrell and Stephen Demuth. 2000. "Ethnicity and Sentencing Outcomes in U.S. Federal Courts: Who is Punished More Harshly." *American Sociological Review* 65:705-729.

—. 2001. "Ethnicity and Judges' Sentencing Decisions: Hispanic-Black-White Comparisons." *Criminology* 39:145-178.

Steffensmeier, Darrell, John Kramer, and Cathy Streifel. 1993. "Gender and Imprisonment Decisions." *Criminology* 31:411-446.

Uggen, Christopher. 2000. "Work as a Turning Point in the Life Course of Criminals: A Duration Model of Age, Employment, and Recidivism." *American Sociological Review* 65:529-546.

Ulmer, Jeffery T. and Mindy S. Bradley. 2006. "Variation in Trial Penalties among Serious Violent Offenses." *Criminology* 44:631-670.

Visher, Christy A., Pamela K. Lattimore, and Richard L. Linster. 1991. "Predicting the Recidivism of Serious Youthful Offenders using Survival Models." *Criminology* 29:329-366.

Waldfogel, Joel. 1994. "The Effect of Criminal Conviction on Income and the Trust 'Reposed in the Workmen'." *Journal of Human Resources* 29:62-81.

Warr, Mark. 1998. "Life-Course Transitions and Desistance from Crime." *Criminology* 36:183-216.

Weitzer, Ronald and Steven A. Tuch. 2002. "Perceptions of Racial Profiling: Race, Class, and Personal Experience." *Criminology* 40:435-456.

Weitzer, Ronald, Steven A. Tuch, and Wesley G. Skogan. 2008. "Police–Community Relations in a Majority-Black City." *Journal of Research in Crime and Delinquency* 45:398-428.

Western, Bruce. 2002. "The Impact of Incarceration on Wage Mobility and Inequality." *American Sociological Review* 67:526-546.

Western, Bruce and Katherine Beckett. 1999. "How Unregulated is the U.S. Labor Market?  The Penal System as a Labor Market Institution." *American Journal Of Sociology* 104:1030-1060.

Western, Bruce, Jeffrey R. Kling, and David F. Weiman. 2001. "The Labor Market Consequences of Incarceration." *Crime & Delinquency* 47:410-427.

## Legal Documents

a.      Complaint, 9/30/09

b.      Answer of Freeman, 11/30/09

c.      Order, 5/12/10

d.      Plaintiff EEOC's First Request for Production of Documents to Defendant, 6/1/10

e.      Plaintiff EEOC's First Set of Interrogatories to Defendant, 6/1/10

f.      Defendant Freeman's First Request for Production of Documents to the Plaintiff EEOC, 6/21/10

g.      Defendant Freeman's First Set of Interrogatories to Plaintiff EEOC, 6/22/10

i.      Exhibit A:  Freeman Policies and Procedures Number: 100.  Title:  Background Checks, 7/20/06

ii.      Exhibit B:  Freeman Job Description:  Laborer – Warehouse, 12/4/08

iii.      Exhibit C:  AVW Audio Visual, Inc. Job Description:  Accounting Clerk

iv.      Exhibit D:  AVW-TELAV Job Description:  Audio Visual Technician

v.      Exhibit E:  Freeman Job Description:  Account Executive, 10/23/07

vi.      Exhibit F:  Freeman Job Description:  Representative – Exhibitor Services, 8/11/08

h.      Defendant Freeman's Response to Plaintiff EEOC's First Request for Production of Documents to Defendant, 7/1/10

i.      Defendant Freeman's Response to Plaintiff EEOC's First Set of Interrogatories to Defendant, 7/1/10

j.      Scheduling Order, 6/28/11

k.      Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action, 9/1/11

l.      Defendant Freeman's Supplemental Response to EEOC's Interrogatory No. 9, 1/24/12

m.      Defendant Freeman's Supplemental Response to Plaintiff EEOC's Interrogatory No. 25 to Defendant

n.      Defendant Freeman's Second Supplemental Response to Plaintiff EEOC's Interrogatory No. 25 as it Pertains to the Criminal Class

o.      Defendant Freeman's Second Supplemental Response to Plaintiff EEOC's Interrogatory No. 25 as it Pertains to the Credit Class

p.      Defendant Freeman's First Requests for Admissions Directed to to Plaintiff EEOC

## Company Documents

a.      Response to EEOC Charge Number 846-2008-25677C

i.      Freeman Employee Handbook, page 17

b.      Emails between Freeman Corporation and PreScreen America

h.      Branch Addresses

i.      Case Declining Offer (Levesque)

k.      PSA Service Agreement

l.      Client Lists

m.      Corporate Change of Address

n.      PSA Contact Lists

o.      Draft proposal for pre-employment screening services

p.      Emails related to implementing pre-employment screening services

s.      Freeman Requests on 2/16/2001

t.      Standards for Pre-Employment Screening

x.      Freeman Notice of Adverse Action form

z.      Freeman Companies Branch Addresses

ff.      Defendant's Responses to Request for Production, including Document Request Nos. 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, and 20 (Bates FM006208-6622)

gg.      Kenexa Applicant Flow Log reports (January 1, 2007 through May 2, 2011) (Bates FM00006628 – 6631)

hh.      Open Hire Applicant Flow Log report (April to August 2011) (Bates FM00006632)

ii.      Kenexa Job Postings File (Bates FM268877)

kk.     EEO Data Sheets, Applicant Flow Logs, Employee Snapshots, Quarterly Wage Report
(FM301114 – 307812)

ll.      Personnel Files (FM027941 – 032740)

mm.    Request for Proposal (FM032741 – 032863)

nn.     Freeman Job Postings and Applicant Flow Logs (FM0006633 – 006657)

oo.     Applications for Employment (FM0006923 – 027940)


## Exhibits

a.      New Hires for Exhibitor Services, January – December 2003

b.      Preemployment Background Screening Guidelines, ASIS International

c.      Memo from Gerry Handley (Human Resources, TFC Corporate) to Don Freeman and HR
Generalists re Background Checks, 11/21/00

d.      Memo from Suzanne Bragg to Freeman and AVW-TELAV (US) Regional Vice
Presidents, General Managers, Office Managers and Corporate Executives re New Background
Check Policy, 7/20/06

e.      Memo from Gerry Handley (Human Resources, TFC Corporate) to Company Presidents,
General Managers, and Office Managers re Background Investigations, 1/19/01

f.      Fidelity Internal Information re Background Investigations

g.      FTC Facts for Business.  Using Consumer Reports:  What Employers Need to Know

h.      Background Screening Results:  Hiring Decisions and Compliance Considerations (ADP
Screening and Selection Services)

i.      AccuSource Information, including Fair Credit Reporting Act

j.      Background Check Vendor Comparisons

k.      PreScreen America Presentation

l.      Job Titles and Levels

m.     Background Check Search Levels

n.      Comparison of Credit Check Criteria Resulting in a "No Hire"

o.      Background Checks

p.      Coca-Cola Company Personnel Integrity Assurance Program Vendor's Guide

q.      Background Checks for Security-Sensitive Positions and Officers (CU-Boulder)

r.      Claremont University Consortium Background Check Policy, 10/26/05

s.      External Background Check Policy and Procedure (SHRM Template?)


## Applicant Files

a.      Katrina Elaine Vaughn

i.      Notice of Potential Adverse Action, 8/17/07

ii.     PreScreen Plus Report

iii.    Notice of Adverse Action, 8/30/07


## Data Files and Folders

a.      Copy of Job Titles and Levels

b.      Copy of EEOC Submission

c.      Copy of Req. 1 – Credit Screened Applicants

d.      Copy of Req. 2 – Criminal Background Screened Applicants

e.      copy of job titles and levels copy

f.      copy of req. 2-criminal background screened applicants-03.05.09 copy

h.      criminal check

i.      freeman.copy of req.1-credit screened applicants-12.05.08 copy

j.      Creditcheck

k.      Criminalcheck

l.      Eeodataforhires

m.      Hiring al PTHrs

n.      Hiring al PTHrs2

o.      New Hire Report 4-19-2010

p.      New Hire Report from SAP

q.      Time to hire in Kenexa

r.      AFKLKennexamerged

s.      App log 2007

t.      App log 2008

u.      Eeo report

v.      Production of Employee Lists

w.      FREE1.xls

x.      FREE2.xls

y.      FREEALL.xls

z.      Index.xls

aa.      Production of Employee Lists

bb.     FREE1.xls

cc.     FREE2.xls

dd.     FREEALL.xls

ee.     Index.xls

ff.      Database Files – Skyline

gg.     Copy of 2008 Data Pull- Moby E drive - Production

hh.     Copy of 2010 Fata pull  -  Tim's PC

ii.      Applicant Flow Logs

jj.      Background Check logs

kk.     Job Descriptions Database Files – Skyline

ll.      Applicant Flow Logs

mm.      Background Check logs

nn.      Hiring Data

oo.      Job Descriptions

VII.     PSA File Folders (file folders contain 9,152 individual reports)

a.      FCAL

b.      FCAM

c.      FCAN

d.      FCAS

e.      FCAT

f.      FCAU

g.      FCBR

h.      FCCC

i.      FCCH

j.      FCCI

k.      FCCJ

l.      FCCO

m.      FCCP

n.      FCDA

o.      FCDD

p.      FCDE

q.      FCDL

r.      FCDM

s.      FCDT

t.      FCGP

u.      FCHO

v.      FCHU

w.      FCKE

x.      FCLA

y.      FCLS

z.      FCMV

aa.     FCNA

bb.     FCNE

cc.     FCNR

dd.     FCNW

ee.     FCOL

ff.     FCOR

gg.     FCPA

hh.     FCPH

ii.     FCSA

jj.     FCSC

kk.     FCSE

ll.     FCSF

mm.     FCSN

nn.     FCSP

oo.     FCWA


**Depositions and Exhibits**

Sandra Y. Alvarez, 3/2/12

Suzanne Bragg, 2/8/12

Jasmine Brown, 2/23/12

Mychael Dwayne Butler, 2/22/12

Terri Carr, 2/24/12

Jacqueline Evans, 2/10/12

Steven Estep, 1/23/12

Donald Shaw Freeman, Jr., 3/1/12

Nicole Ginebra, 4/5/12

Kevin Helm, 4/20/12

Taneisha Hester, 3/5/12

Taka Hendry, 3/21/12

Shaneice Johnson, 2/28/12

Natysha London, 2/21/12

Jenny Luckie, 4/6/12

Reginald Mason, 2/27/12

Gary Miller, 3/30/12

Freddie Miranda, 4/5/12

Felandis Mosley, 3/30/12

Denise Nevels, 3/23/12

Christi Paul-Moore, 3/16/12

Tamenika Shelton, 3/7/12

Marjorie Singleton, 3/16/12

Lewis Stewart, 3/30/12

Ayonda Sullivan, 3/2/12

Shalonda Nicole Tate, 2/23/12

Issac Theus, 3/27/12

Monica Tolson. 3/26/12

Katrina Vaughn, 2/22/12

Pamela Wills-Ward, 2/9/12

Gwen Woodworth, 3/2/12

Delvin E. Young, 2/24/12

**Appendix B: Beth Huebner Vita**

CURRICULUM VITA

# Beth M. Huebner

University of Missouri – St. Louis

Department of Criminology and Criminal Justice
324 Lucas Hall

8001 Natural Bridge Road
St. Louis, MO, 63121-4499
Phone: 314-516-5043
Fax: 314-516-5048

Email: Huebnerb@umsl.edu

ACADEMIC POSITIONS

2009-Present     *Associate Professor*, Department of Criminology and Criminal Justice, University

of Missouri-St. Louis.

2008 – Present  *Graduate Program Director,*  Department of Criminology and Criminal Justice,

University of Missouri-St. Louis

2003 -2009     *Assistant Professor*, Department of Criminology and Criminal Justice, University

of Missouri-St. Louis

DEGREES AWARDED

Ph.D.          Michigan State University

2003           East Lansing, Michigan

               Criminal Justice

M.S.           Michigan State University

1999           East Lansing, Michigan

Criminal Justice

B.A**.**                University of Wisconsin-Madison

1995              Madison, Wisconsin

                     Sociology, Behavioral Science and Law


PUBLICATIONS, REPORTS, GRANTS, AND PRESENTATIONS

_PAPERS IN REFEREED JOURNALS_

2013     Rydberg, Jason, Eric Grommon, Beth M. Huebner, and Timothy S. Bynum. The Effect of Statewide Residency Restrictions on Sex Offender Post Release Housing Mobility. Forthcoming in *Justice Quarterly*.

2012     Cobbina, Jennifer, Beth M. Huebner, and Mark Berg.  Men, Women, and Post-Release Offending: An Examination of the Nature of the Link between Relational Ties and Recidivism.  *Crime & Delinquency, 58*, 331 - 361.

2011     Huebner, Beth M. Good in Theory: The Challenges of Early Release Decisions. *Criminology & Public Policy*, 10, 873-876.

2011     Berg, Mark and Beth M. Huebner.  Reentry and the Ties that Bind: An Examination of Social Ties, Employment, and Recidivism.  *Justice Quarterly,* 28(1), 382 – 410.

2011     Varano, Sean P, Beth M. Huebner, and Timothy S. Bynum.  Correlates and Consequences of Pre-Incarceration Gang Involvement among Incarcerated Youthful Felons.  *Journal of Criminal Justice,* 39, 30-38.

2011     Huebner, Beth M. and Mark Berg.  Examining the Sources of Variation in Risk for Recidivism. *Justice Quarterly,* 28(1), 146-173.

2010     Huebner, Beth M., Christina DeJong, and Jennifer Cobbina.  Women Coming Home: Long-Term Patterns of Recidivism.  *Justice Quarterly*, 27(2), 225-254.

2008     Huebner, Beth M. and Timothy S. Bynum.  The Role of Race and Ethnicity in Parole Decisions.  *Criminology,* 46(4), 907-938.

2008     Watkins, Adam, Beth M. Huebner, Scott H. Decker. Patterns of Gun Acquisition, Carrying, and Use among Juvenile and Adult Arrestees: Evidence from a High-Crime City.  *Justice Quarterly*, 25(4), 674-700.

2007     Ingram, Jason, Justin W. Patchin, Beth M. Huebner, John McCluskey, and Timothy S. Bynum.  Parents, Friends, and Serious Delinquency: An Examination of Direct and Indirect Effects among At-Risk Early Adolescents.  *Criminal Justice Review*, 32, 280-400.

2007     Huebner, Beth M. and Jennifer Cobbina.  The Effect of Drug Use, Drug Treatment Participation, and Treatment Completion on Probationer Recidivism.  *Journal of Drug Issues*, 22, 619-642.

2007     Huebner, Beth M., Sean P. Varano, and Timothy S. Bynum.  Guns, Gangs, and Drugs: Recidivism among Serious, Young Offenders *Criminology & Public Policy*, 6(2),187-222.

2007     Huebner, Beth M. and Regan Gustafson. The Effect of Maternal Incarceration on Adult Offspring Involvement in the Criminal Justice System. *Journal of Criminal Justice*, 35(3), 283-296.

2007     Huebner, Beth M. Racial and Ethnic Differences in the Likelihood of Marriage: The Effect of Incarceration. *Justice Quarterly*, 24(1)156-183.

2007     Decker, Scott H., Beth M. Huebner, Adam Watkins, and Lindsey Green. Project Safe

         Neighborhoods: Strategic Interventions.  Eastern District of Missouri: Case Study 7. U.S. Department of Justice.

2006    Huebner, Beth M. and Timothy S. Bynum. An Analysis of Parole Decision Making Using a Sample of Sex Offenders: A Focal Concerns Perspective. *Criminology*, 44(4) 961-991.


2006    Schafer, Joseph A., Beth M. Huebner, and Timothy S. Bynum.  Fear of Victimization among Women: A Study of In Group Variation, *Journal of Criminal Justice*, 34(3) 285-301.


2006    Patchin, Justin W., Beth M. Huebner, John D. McCluskey, Sean P. Varano, and Timothy S. Bynum. Exposure to Community Violence and Childhood Delinquency,  *Crime & Delinquency*, 52(2) 307-332.

        *Reprinted in* Korken, K. (ed.).  (2008). *Contemporary Readings in Sociology*.

        Pine Forge Press: Thousand Oaks, CA.


        Crutchfield, Robert D., Charis Kubrin, George S. Bridges, and Joseph G. Weis

        (eds.) (2008) *Crime*. Sage: Thousand Oaks, CA.

        Furst, Gennifer (ed.). 2008 Contemporary Readings in Criminology. Sage:

        Thousand Oaks, CA.


2005    <u>Huebner, Beth M. The Effect of Incarceration on Marriage and Work over the Life Course, *Justice Quarterly*, 22(3) 281-303.</u>


2004    <u>McCluskey, John D., Sean P. Varano, Beth M. Huebner, and Timothy S. Bynum.  2004. Who Do You Refer: The Effects of Policy Change on Juvenile Referrals, *Criminal Justice Policy Review,* 15(4) 437-461.</u>


2004    <u>Huebner, Beth M., Joseph A. Schafer, and Timothy S. Bynum. African American and White Citizens Perceptions of Police Service: Within- and Between-Group Variation,  *Journal of Criminal Justice*, 32(2) 123-135.</u>


2003    <u>Schafer, Joseph A., Beth M. Huebner, and Timothy S. Bynum. Citizen Perceptions of Police Services: Race, Neighborhood Context, and Community Policing,  *Police Quarterly*, 6(4) 440-468.</u>

2003       McCluskey, John D., Cynthia Perez McCluskey, and Beth M. Huebner.  2003. Juvenile Female
           Arrests: A Holistic Explanation of Organizational Functioning,  *Women & Criminal Justice*, 14(4)
           35-52.


2003       Huebner, Beth M. Administrative Determinants of Inmate Violence: A Multi-level

           Analysis,  *Journal of Criminal Justice,* 30(2) 107-117.


## *BOOK CHAPTERS*


2010       Huebner, Beth M. Prisons and Jails. In *Oxford Bibliographies Online: Criminology.* Ed.  Richard
           Rosenfeld. New York: Oxford University Press. URL.


2010       Huebner, Beth M. Community Corrections. In *Oxford Bibliographies Online: Criminology.* Ed.
           Richard Rosenfeld. New York: Oxford University Press. URL.


2010       Huebner, Beth M. Correctional Programming. In *Oxford Bibliographies Online: Criminology.* Ed.
           Richard Rosenfeld. New York: Oxford University Press. URL.


2006       McCluskey, John D., Timothy S. Bynum, Sean P. Varano, Beth M. Huebner, Justin W. Patchin,
           and Amanda Burgess-Proctor.  Police Organizations and Problem Solving Strategies for Juvenile
           Intervention: Identifying Critical Elements.  In Barbara Sims (Eds.), Handbook for Juvenile Justice
           (pp. 251-269).  Boca Raton, FL: Taylor and Francis.


## *TECHNICAL REPORTS*

2006       Huebner, Beth M., David Valentine, Shannon Daily Stokes, Jennifer Cobbina, and Mark Berg.
           Sex Offender Risk Assessment.  Report to the Missouri Sentencing Advisory Commission.


2006       Huebner, Beth M.  Drug Use, Treatment, and Probationer Recidivism. Report to the Illinois
           Criminal Justice Information Authority.


2005       Decker, Scott H., and Beth M. Huebner. Outcome Evaluation of the St. Charles County Drug
           Court. Report to the St. Charles County Municipal Court.

2005    Decker, Scott H. and Beth M. Huebner.  Evaluation of the St. Louis Weed and Seed Initiative: 2001-2005.  Report to the St. Louis Weed and Seed Program.

2005    Bynum, Timothy S., Beth M. Huebner, and Karen R. Ream.  A Descriptive Analysis of Sex Offenders Incarcerated in the State of Michigan: Offender Risk, Parole Outcomes, and Recidivism.  Report to the Michigan Department of Corrections and Bureau of Justice Statistics – Justice Research Statistics Association.

2003    Calkins, Richard, Timothy S. Bynum, and Beth M. Huebner.  System Responses to Substance Abuse Treatment Needs among Offenders in Wayne County.  Report to the Center for Substance Abuse Treatment (CSAT).

2002    Huebner, Beth M., Timothy S. Bynum, and Amanda Burgess-Proctor.  Incarcerated Sex Offenders in the State of Michigan.  Report to the Michigan Department of Corrections.

2002    Bynum, Timothy S., John D. McCluskey, and Beth M. Huebner. Issues for Multi-Jurisdictional Drug Task Forces in Michigan.  Report to the Michigan Office of Drug Control Policy.

2001    Huebner, Beth M. and Timothy S. Bynum. Reported Incidents between Intimate Partners: An Analysis of Data from the Michigan Information Crime Reporting System.  Report to the Bureau of Justice Statistics – Justice Research Statistics Association.

2001    Huebner, Beth M., Timothy S. Bynum, and Sameer Hinduja. Firearm Use among Michigan's Youthful Offender Population.  Report to the Bureau of Justice Statistics – Justice Research Statistics Association.

## GRANTS AWARDED

2011    Huebner, Beth M. $12,500.  Recidivism Patterns among Inmates in the Eastern District of Missouri: An Evaluation of the Gang Resistance Intervention Program.  *University of Missouri St. Louis Arts and Sciences Dean's Research Award*.

2010     Huebner, Beth M., Timothy Maher. $24,000.  Online Undergraduate CCJ Program.  University of Missouri System.

2008     Bynum, Timothy S. and Beth M. Huebner. $465,344.  The Efficacy of Sex Offender Residency Restrictions in Michigan and Missouri.  *National Institute of Justice*. Co-Principal Investigator. 2007–NIJ–1411.

2006     Huebner, Beth M.  Evaluation of the PSN Anti-Gang Initiative.  $43,615.  *Bureau of Justice Assistance.*  Principal Investigator.  2006-PG-BX-0029.

2006     Decker, Scott H. and Beth M. Huebner. Evaluating Offender Notification Meetings. $30,000. *Bureau of Justice Assistance*. Co-Principal Investigator.

2005     Huebner, Beth M. Contextual Effects of Incarceration on Marriage and Work.  $15,600. *University of Missouri Research Board Grant*.  Principal Investigator.

2004     Huebner, Beth M.  Drug Use, Treatment, and Probationer Recidivism.  $4,991.  *Illinois Criminal Justice Information Authority*.  Principal Investigator.

2004     Huebner, Beth M.  Maternal Incarceration and Delinquency.  $12,159.  *University of Missouri-St. Louis Research Award*.  Principal Investigator.

*PAPER PRESENTATIONS*

2012     Rydberg, Jason, Eric Grommon, Beth Huebner, and Timothy Bynum. Pocket Panopticon: Registered Sex Offenders' Experiences with GPS Monitoring while on Parole. Paper presented at the Annual Meeting of the Academy of Criminal Justice Sciences, New York, NY, March 2012.

2011     Huebner, Beth M. Residential Mobility among Men Released from Prison. Paper presented at the Annual Meeting of the Academy of Criminal Justice Sciences, Toronto, Ontario, March 2011.

2011     Huebner, Beth M., Kimberly Kras and Breanne Pleggenkuhle. Halfway Home: The Effect of Transitional Housing Placement on Long-Term Patterns of Recidivism. Paper presented at the Annual Meeting of the American Society of Criminology, Washington, DC, November 2011.

2011    Rydberg, Jason, Eric Grommon, Beth Huebner, and Timothy Bynum.  The Housing Experiences of Sex Offenders Under Residency Restrictions. Paper presented at the Annual Meeting of the American Society of Criminology, Washington, DC, November 2011.

2010    Pleggenkuhle, Breanne and Beth Huebner. Considering Place: Comparing Urban and Rural Experiences of Returning Offenders. Paper presented at the Annual Meeting of the American Society of Criminology, San Francisco, CA, November 2010.

2010    Rydberg, Jason, Eric Grommon, Beth Huebner, and Timothy Bynum.  Housing Movement and Mobility among Sex Offenders Transitioning into the Community.   Paper presented at the Annual Meeting of the American Society of Criminology, San Francisco, CA, November 2010.

2010    Huebner, Beth M. and Mark Berg.  Life-Course Offending Trajectories among a Parole Release Sample. Paper presented at the Annual Meeting of the American Society of Criminology, San Francisco, CA, November 2010.

2010    Huebner, Beth M. and Breanne Pleggenkuhle.  Coming Home to the Country: The Unique Experiences of Rural Inmates. Paper presented at the Annual Meeting of the Western Society of Criminology, Honolulu, HI, February 2010.

2009    Huebner, Beth M. and Breanne Pleggenkuhle.  Coming Home and Moving Away: Intra-individual Patterns of Residence, Cohabitation, and Recidivism. Paper presented at the Annual Meeting of the American Society of Criminology, Philadelphia, PA, November 2009.

2008    Huebner, Beth M and Mark Berg. Desistance and Persistence: Two Sides of the Same Coin? Paper presented at the Annual Meeting of the American Society of Criminology, St. Louis, MO, November 2008.

2008    Martin, Kimberly, Beth M. Huebner, Daniel Duplantier, and Scott H. Decker.  Exploring the spatial concentration of gun violence across St. Louis neighborhoods: The role of deprivation and isolation.  Paper presented at the Annual Meeting of the Academy of Criminal Justice Sciences, Cincinnati, OH, March 2007.

2007    Huebner, Beth M, Christina DeJong, and Jennifer Cobbina.  Women coming home: The role of community context in explaining long-term patterns of recidivism  Paper presented at the annual meeting of the American Society of Criminology, Atlanta, GA, November 2007.

2007    Watkins, Adam, Beth M. Huebner, and Scott H. Decker. Testing for method displacement: Does the gun-focused Project Safe Neighborhoods Initiative in St. Louis influence the level of non-gun violent crime? Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Seattle, WA, March 2007.

2006    Huebner, Beth M. The Contextual Effects of Incarceration on Marriage and Work.  Paper presented at the annual meeting of the American Society of Criminology, Los Angeles, CA, November 2006.

2005    Huebner, Beth M. and Jennifer Cobbina.  Drug Use, Treatment, and Probationer Recidivism. Paper presented at the annual meeting of the American Society of Criminology, Toronto, Canada, November 2005.

2005    Varano, Sean P., Beth M. Huebner, and Timothy S. Bynum.  Predicting Recidivism Among Serious Firearm Offenders.  Paper presented at the annual meeting of the American Society of Criminology, Toronto, Canada, November 2005.

2005    Huebner, Beth M. and Timothy S. Bynum.  Parole Decision Making: The Special Case of Sex Offenders.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Chicago, IL, March 2005.

2005    Ingram, Jason, Justin W. Patchin, Beth M. Huebner, John McCluskey, and Timothy S. Bynum. Family Life, Peer Associations, and Serious Delinquency: A Path Analysis.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Chicago, IL, March 2005.

2004    Huebner, Beth M. and Regan Gustafson. Maternal Incarceration and Child Delinquency.  Paper presented at the annual meeting of the American Society of Criminology, Nashville, TN, November 2004.

2004    Patchin, Justin W., Timothy S. Bynum, Beth M. Huebner, John D. McCluskey, and Sean P. Varano.  An Evaluation of a Community Probation Program aimed at Serious Juvenile Offenders. Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Las Vegas, NV, March 2004.

2003    Huebner, Beth M.  Incarceration, Social Bonds, and the Life Course.  Paper presented at the annual meeting of the American Society of Criminology, Denver, CO, November, 2003.

2003    Patchin, Justin W., Timothy S. Bynum, Beth M. Huebner, John D. McCluskey, and Sean P. Varano.  Deviance, Decay, or Disadvantage? Disaggregating Social Disorganization Theory.  Paper presented at the annual meeting of the American Society of Criminology, Denver, CO, November, 2003.

2003    Huebner, Beth M., Amanda Burgess-Proctor, Timothy S. Bynum.  Incarcerated Sex Offenders in the State of Michigan.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Boston, MA, March, 2003.

2002    Huebner, Beth M.  Referrals to Juvenile Court:  An Analysis of Judicial Processing in Two Cities. Paper presented at the annual meeting of the American Society of Criminology,  November, 2002.

2002    McCluskey, John D., Cynthia Perez McCluskey, and Beth M. Huebner.  Juvenile Female Arrests: A Holistic Explanation of Organizational Functioning.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Anaheim, CA, March, 2002.

2002    Schafer, Joseph A., Beth M. Huebner, and Timothy S. Bynum.  Fear of Victimization among Women: A Study of In Group Variation.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Anaheim, CA, March, 2002.

2001    Holtfreter, Kristy L. and Beth M. Huebner.  Research in Criminal Justice and Criminology: An Analysis of Factors, Antecedents, and Associates of Significant Research.  Paper presented at the annual meeting of the American Society of Criminology, Atlanta, GA, November, 2001.

2001    Schafer, Joseph A., Beth M. Huebner, and Timothy S. Bynum.  African American Perceptions of the Police.  Paper presented at the annual meeting of the American Society of  Criminology, Atlanta, GA, November, 2001.

2001    McCluskey, John D., Sean Varano, Beth M. Huebner, and Timothy S. Bynum. Examining Arrests as Juvenile Outputs.  Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Washington, D.C., April, 2001.

2000    Varano, Sean and Beth M. Huebner. Punitiveness and the Juvenile Justice System: Does Deterrence Work?  Paper presented at the annual meeting of the American    Society of Criminology, San Francisco, CA, November, 2000.

2000    Schafer, Joseph, Beth M. Huebner, and Timothy S. Bynum. Self-Reported Fear of Crime: The Community Context.. Paper presented at the annual meeting of the American Society of Criminology, San Francisco, CA, November, 2000.

2000    Cancino, Jeffrey and Beth M. Huebner. Professionalism or Public Choice: A Use of Force Model. Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, New Orleans, LA, March, 2000.

1999    Huebner, Beth M. Contextual Determinants of Female Prison Misconduct. Paper presented at the annual meeting of the American Society of Criminology, Toronto, Canada, November, 1999.

1999    Reisig, Michael D. and Beth M. Huebner. Administrative Determinants of Inmate Misconduct: A Multi-Level Analysis. Paper presented at the annual meeting of the Academy of Criminal Justice Sciences, Orlando, FL, March 1999.

_INVITED PRESENTATIONS_

2011    Huebner, Beth M. and Timothy S. Bynum. Efficacy of Sex Offender Residency Restrictions: Voices from the Field. Association for the Treatment of Sexual Abusers Annual meeting. Toronto, Ontario. November.

2011    Huebner, Beth M., Christina DeJong, and Jennifer Cobbina.  Women Coming Home: Long-Term Patterns of Recidivism Research Showcase.  Academy of Criminal Justice Sciences.  Toronto, Ontario. March.

2009    Huebner, Beth M. Neighborhood Context and Recidivism: An Analysis by Gender.  Paper Presented at the BJS/JRSA Annual Conference.  St. Louis, MO, October.

2009    Huebner, Beth M. Long-Term Recidivism Patterns of Different Types of Offenders.  Paper Presented at the Arizona State University Prisoner Reentry Seminar.  Phoenix, AZ, April.

2008    Huebner, Beth M. Crime is Local: An Exploration of Violent Crime in St. Louis.  Paper presented at the Youth Violence Prevention Conference.  St. Louis, MO, April.

2007     Huebner, Beth M. Gang Interventions in St. Louis.  Paper Presented at the Project Safe
         Neighborhoods Annual Conference.  Atlanta, Georgia. September.

2006     Huebner, Beth M. Parental Incarceration and Child Outcomes: Concerns for Missouri.  Paper
         presented at the Youth Violence Prevention Conference.  St. Louis, MO, April.

2005     Huebner, Beth M. Keynote Presentation: Prisoner Re-Entry In Missouri.  Paper presented at the
         Coming Home: Issues for Ex-Offenders and the Community conference sponsored by University
         of Missouri Extension and the University of Missouri-St. Louis.  May 2005.


RESEARCH EXPERIENCE

_____

1998 – 2003 *Research Associate*, Michigan Justice Statistics Center

PROFESSIONAL EXPERIENCE

_____

2010            *Instructor,* Conducting Research on Recidivism and Reentry Workshop.  Four day

                workshop sponsored by the National Institute of Justice.  Seminar held as part of

                the ICPSR Summer Research Program, Ann Arbor, Michigan.

1999 – 2003 *Research Consultant*, Michigan Office of Drug Control Policy, Michigan

                Department of Community Health


TEACHING EXPERIENCE

_____

<u>Undergraduate</u>: Corrections, Senior Seminar, Probation and Parole (in class and online)

<u>Graduate</u>: Corrections, Proseminar, Criminal Justice Process and Policy


<u>Dissertation Committees (Completed)</u>

Adam Bossler (member) completed 2006.  Asst. Professor, Armstrong Atlantic University

Jennifer Cobbina (member) completed 2009.  Asst. Professor, Michigan State University

Robert Fornago (member) completed 2007.  Asst. Professor, Arizona State University

Eric Grommon (outside reader) completed 2010.  Asst. Professor, IUPUI

Janice Hill (member) completed 2008.  Asst. Professor, Illinois State University.

Dan Isom (member) completed 2007.  Chief, St. Louis Police Department

Timothy M. Maher (member) completed 2007.  Assoc. Teaching Professor, UMSL

Kimberly Martin (co-chair) completed 2011. Asst. Professor, Old Dominion

Chris Melde (member) completed 2008.  Asst. Professor, Michigan State University

Lynn Urban (member) completed 2005.  Asst. Professor, Southeast Missouri State University


AWARDS, ACADEMIC SERVICE, AND PROFESSIONAL MEMBERSHIPS

*AWARDS*

Distinguished New Scholar Award from the American Society of Criminology Division on Corrections and Sentencing (2009)

Academy of Criminal Justice Sciences, Juvenile Justice Section, Tori Caeti Award (2008)

UM-St. Louis Meritorious Service Award – Office of Disability Access Services (2007)

Academy of Criminal Justice Sciences Donal MacNamara Award (2006)

UM-St. Louis Gerald and Deanne Gitner Excellence in Teaching Award (2004)

Dissertation Completion Fellowship, Michigan State University, Graduate School (2003)

Michigan State University School of Criminal Justice Summer Research Fellowship, Michigan

   State University, School of Criminal Justice (2002)

Warren and Mary Frances Huff Professional Development Award, Michigan State University,

   School of Criminal Justice (1999, 2000, 2001, 2002)

Graduate Student Travel Award, Michigan State University, Graduate School (1999)

Big Ten Academic Achievement Award, University of Wisconsin (1993, 1994, 1995)

University of Wisconsin Athletic Department Award for Academic Excellence, University of

   Wisconsin (1993, 1994, 1995)

Alpha Kappa Delta, University of Wisconsin, (1994, 1995)

_ACADEMIC SERVICE_

**National Service**

President, _Association of Doctoral Programs in Criminology and Criminal Justice_. 2010-Present


Associate Editor, _Justice Quarterly_ (January 2007-December 2009 & September 2010-December 2013)

Editorial Board, _Journal of Criminal Justice_, (2010-Present)

Editorial Board, _Journal of Crime & Justice_, (2010-Present)

Manuscript Reviewer_, Criminology, Justice Quarterly, Journal of Research in Crime and Delinquency, Journal of Criminal Justice, Social Problems, Criminology and Public Policy, British Journal of Sociology, Justice Research and Policy,  International Journal of Comparative and Applied Criminal Justice, Journal of Crime and Justice, The American Review of Public Administration, Feminist Criminology, Cultural Diversity and Ethnic Minority Psychology._

Member, American Society of Criminology

   Student Affairs Committee, 2005-2006

   Program Committee (Corrections Section), 2007-2008, 2008-2009, 2009-2010

   Gene Carte Student Paper Competition Awards Committee, 2007-2008

   Nominations Committee (2009-2010)


Member, Academy of Criminal Justice Sciences

   Membership Committee, 2009-2010

   Chairperson, Donal MacNamara Award Selection Committee, 2010-2011


Member, American Society of Criminology, Division of Corrections and Sentencing

   Executive Counselor, 2007-2009, 2011-2013

   Award Committee, 2003-2004, 2007-2009, 2010 (Chair)

   Chairperson, Student Affairs Committee, 2004-2006, 2011

   Chairperson, Outreach Committee, 2007-2009

   Newsletter Committee, 2007-present

Proposal Reviewer, National Science Foundation, 2008, 2009, 2010, 2011, 2012

Proposal Reviewer, William T. Grant Foundation, 2005

Proposal Reviewer, National Institute of Justice, 2007, 2008, 2009, 2010, 2011

Proposal Reviewer, Bureau of Justice Assistance, 2008, 2009, 2010

**University Service**

Member, Student Publications Committee, 2005-2007

Reviewer, University of Missouri Research Board, 2005

Member, University of Missouri Graduate Council 2009-2012

Member, CCJ Graduate Committee, 2006-present

Member, CCJ Comprehensive Exam Committee, 2007-2008

Member, CCJ Undergraduate Committee, 2007-2009

Editor, Departmental Newsletter, 2006-present

Participant, Professional Development Seminars

Guest Speaker, CCJ Graduate Student Association Brown Bag Series