**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. RWT-09-2573** |
| ) | |
| **FREEMAN,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## **MEMORANDUM OPINION**

Before this Court is Defendant Freeman's Motion To Compel Testimony Of 30(b)(6) Witness of Plaintiff EEOC (ECF No. 101) ("Defendant's Motion"). The Court has reviewed Defendant's Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court DENIES Defendant's Motion.

## **FACTUAL AND PROCEDURAL BACKGROUND**

In its Complaint, Plaintiff alleges that Defendant has engaged in an ongoing pattern and practice of unlawful discrimination against African-American, Hispanic, and male job applicants in violation of Title VII of the Civil Rights Act by using criminal and credit histories as selection criteria for employment. Compl. ¶¶ 8-11 (ECF No. 1). On March 27, 2012, Defendant served Plaintiff with Defendant's Notice of Rule 30(b)(6) Deposition seeking to depose Plaintiff pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Pl.'s Mot. For Protective Order Ex. 1 (ECF No. 70). Defendant identified the topics to be discussed during the deposition, including Plaintiff's policies on the legal standard applicable to challenging an employer's use of

1

credit history or arrest records in hiring; Plaintiff's policies on and justifications for considering arrest and credit records in hiring; and certain EEOC adjudicative procedures used during the "credentialing and suitability decision making process." *Id.*

Plaintiff then moved for a protective order, arguing that the "legally mandated background credentialing and suitability adjudications regarding its own employees" were irrelevant to this matter.  Pl.'s Mot. For Protective Order 3.  It also argued that it was improper for Defendant to seek Plaintiff's policies on the applicable legal standards because they were "not a relevant or material factual issue in this case," and were available publically on the internet.  *Id.* at 24-25.  This Court denied the Motion for Protective Order, holding that the hiring practices employed by Plaintiff may be relevant to whether Defendant's practices are appropriate or a business necessity.  Mem. Op. 4 (ECF No. 92).  The Court also held that Defendant was entitled to depose Plaintiff regarding its policy guidance on the legal standard applicable to Title VII cases, and need not rely on Plaintiff's public statements.  *Id.* at 8.

Subsequently, the United States Office of Personnel Management ("OPM") filed an unopposed motion to intervene, in order to protect privileged information in its Suitability Processing Handbook from discovery during depositions relating to the hiring practices of the EEOC.[1]  Mot. to Intervene 2 (ECF No. 102).  The Court granted the motion.  (ECF No. 106).

Defendant once again noticed the 30(b)(6) deposition, and on October 2, 2012, Plaintiff agreed to present a witness to testify on the first two specifications and to present a second witness for the remaining nine specifications on a later date.  Def.'s Br. 2.  The two specifications for which Plaintiff designated Carol Miaskoff were:

> 1. The identification of and verification of EEOC's policy guidance, regulations, opinion letters, Commission decisions, and similar documents

---

[1] Counsel for Defendant did not consent to OPM's intervention, but it also did not file any opposition against it. Mot. to Intervene 3.

> pertaining to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of arrest or conviction records in making hiring and other selection decisions.
>
> 2. The identification of and verification of EEOC's policy guidance, regulations, opinion letters, Commission decisions, and similar documents pertaining to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of credit history or other financial records in making hiring and other selection decisions.

Def.'s Br. 2.

During the deposition, Plaintiff provided Defendant with an itemized list of federal regulations, EEOC policy guidance, EEOC decisions, and informal discussion letters responsive to these two requests. Pl.'s Opp'n Ex. 1. This list included twelve policy statements specifically addressing the use of arrest and conviction records in employment or more generally addressing disparate impact liability under Title VII. *Id*. It also included eighty-nine EEOC commission decisions from individual cases addressing the use of arrest and conviction records or credit history information. *Id*. Finally, it included twenty-nine informal discussion letters addressing these issues. *Id*. During the deposition, Defendant examined the deponent on the nature, source, and purpose of the items included in the list. However, on five occasions Plaintiff's counsel instructed Ms. Miaskoff not to answer questions posed by Defendant's counsel, which are the subject of this Motion to Compel.

In the first instance, Defendant asked whether there is any regulation in the Code of Federal Regulations ("CFR") that pertains to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of arrest and conviction records in making hiring or other selection decisions. Miaskoff Dep. Tr. 17:12-17:18. The deponent identified the EEOC's Uniform Guidelines on Employee Selection Procedures ("EEOC Uniform Guidelines"). *Id*. at 17:21-17:22. Defendant then asked the following question: "Can you point out to me the portion of the Uniform Guidelines Employee Selection Procedures that pertain to the legal

3

standard applicable to a Title VII disparate impact challenge to an employer's use of arrest or conviction records in making hiring and other selection decisions." *Id*. at 17:24-18:06. Plaintiff's counsel lodged a lengthy objection on the grounds that the question was outside the scope of the 30(b)(6) notice of deposition, called for pure legal interpretation which is not discoverable, and was subject to the attorney work product and governmental deliberative process privileges. *Id*. at 18:07-19:22. He then instructed the deponent not to answer the question, and she did not answer. *Id*. at 19:23-20:02.

Second, Defendant asked a similar question seeking the regulations pertaining to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of credit history information. *Id*. at 21:09-21:13. The deponent again identified the EEOC Uniform Guidelines. *Id.* at 21:17-21:18. Defendant then asked if the regulations have a "provision that specifically applies to the use of credit history information." *Id*. at 22:17-22:23. The deponent replied, "the whole thing." *Id*. at 23:04-23:05. Defendant then repeated, "And can you point me to the portion of the Uniform Guidelines Employee Selection Procedures that specifically deals with the use of . . . credit history information in making employment decisions?" *Id*. at 23:06-23:12. Plaintiff's counsel instructed the deponent not to answer on the grounds of work product privilege, deliberative process privilege, calling for non-discoverable legal interpretation, and outside the scope of the 30(b)(6) notice of deposition. *Id*. at 23:13-24:02. Defendant then repeated the question one other time, and the deponent was instructed not to answer again. *Id*. at 24:10-25:13.

Third, Defendant's counsel asked the deponent whether the EEOC intended its Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions ("Enforcement Guidance") to be binding on itself, the EEOC. *Id.* at 41:19-41:21.

Plaintiff's counsel objected that the question was outside the scope of the 30(b)(6) notice, but allowed the deponent to answer based on her personal knowledge, not as a designee. *Id.* at 41:22-42:06. The deponent answered that "Enforcement Guidance state the Commission's current understanding of the law and provide guidance as to what that understanding is to its staff and to regulated entities as defined before. It represents the position on the particular topics discussed of the Commission as constituted at the time it approved it." *Id.* at 42:25-43:08. Defendant's counsel then repeated his question, and the EEOC's counsel instructed the deponent not to answer. *Id.* at 43:10-43:22.

  Fourth, Defendant's counsel asked whether the EEOC intended its Enforcement Guidance to be binding on the EEOC's general counsel. *Id.* at 47:18-47:20. Again instructed to answer based on her personal knowledge but not as a designee, the deponent stated that "Enforcement Guidances [sic] are statements of the Commission's understanding or views of the statutes it enforces as applied to the particular circumstances referenced in the document. They are approved by a Commission vote." *Id.* at 47:05-47:10. Defendant's counsel then demanded a "yes or no" answer to the question, which Plaintiff's counsel instructed the deponent not to provide. *Id.* at 47:12-48:09.

  Fifth, Defendant's counsel asked the deponent whether the EEOC intends its Enforcement Guidance to bind private employers. *Id.* at 49:06-49:09. Permitted to testify in her personal capacity, the deponent stated that, "the EEOC, the Commission, intends Enforcement Guidance to state its understanding or views of the statutes it enforces as applied to the particular issue represented in the Enforcement Guidance. As to employers, it provides guidance as to the Commission's views of how it will enforce the law in these particular circumstances should the employer be subject to a charge involving these circumstances." *Id.* at 49:16-49:25. Once again,

Defendant demanded a "yes or no" answer, which Plaintiff's counsel ordered the deponent not to provide. *Id.* at 50:03-50:23.

Defendant moves to compel Plaintiff to provide a designee for a second deposition on the same two specifications from the 30(b)(6) Notice of Deposition, with court reporter costs borne by the EEOC. Def.'s Br. 1. Defendant also moves for reasonable costs incurred in bringing its motion and sanctions against Plaintiff for instructing the deponent not to answer the above questions. *Id.* at 1, 12-13.

## DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). During a deposition, questioning of the deponent proceeds as it would at trial with counsel making objections on the record. Fed. R. Civ. P. 30(c). The witness must answer the question subject to the objection which is thereby preserved for trial. *See Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir.1977); 7B Moore's Federal Practice § 30.43 (3d ed. 1999). Counsel may instruct a deponent not to answer a question only "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3) [to terminate or limit the deposition]." Fed. R. Civ. P. 30(c)(2). In *Boyd v. University of Maryland Medical System*, this Court discussed the difficulties presented by this rule and by depositions generally:

> [T]he issue which presents itself in this case—the appropriateness of counsel instructing a deponent not to answer questions during a deposition—has proven to be a recurring problem which sometimes appears to defy efforts to clarify the law. . . . As difficult as it is to do, and recognizing at the outset that reasonable minds can differ in good faith about many discovery issues, it is nonetheless required that counsel behave appropriately during deposition discovery. There simply is no more aggravating action than a lawyer improperly instructing a deponent not to

> answer a question. This tactic frequently is used to frustrate new or inexperienced lawyers, and thwart legitimate discovery by more seasoned ones.

173 F.R.D. 143, 144 (D. Md. 1997). In an attempt to address some of these difficulties, this court adopted the local Discovery Guidelines to "facilitate the just, speedy, and inexpensive conduct of discovery in all civil cases before this court." Local Disc. Guideline 1(a) (D. Md. 2012). The Guidelines state that it is presumptively improper to instruct a witness not to answer a question during the taking of a deposition. Local Disc. Guideline 6(d). They also state that it is presumptively improper to repeatedly ask the same or substantially identical question if it has already been answered fully and responsively. Local Disc. Guideline 6(c). Finally, it is presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1), particularly of a personal nature. Local Disc. Guideline 6(d). These rules attempt to strike a balance between discouraging counsel from instructing a deponent not to answer, while also discouraging abusive tactics such as repeatedly asking the same question or asking irrelevant and argumentative questions. *See Boyd*, 173 F.R.D. at 146-47.

Nonetheless, a court is not required to grant a motion to compel merely because an attorney gave an improper instruction not to answer. District courts enjoy substantial discretion in the management of discovery and whether to grant motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995); *LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986); *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 531 (D. Md. 2011). Regardless of the behavior of counsel during a deposition, a court need not compel the discovery of information that falls outside the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1). When the deposition was conducted pursuant to Rule 30(b)(6), the court may consider the scope of the notice of deposition in determining whether to compel answers. *See, e.g., Falchenberg v. New York State Dept. of*

*Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008) (quoting *Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000)) ("[I]f the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."), *aff'd*, 338 F. App'x 11 (2d Cir. 2009). Finally, a motion to compel can be denied if the circumstances render compelling an answer to the question "otherwise unnecessary." *See Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001); *Tillman v. Lincoln Warehouse Corp.*, No. 83 CIV. 5381 (CSH), 1987 WL 7933, at *3 (S.D.N.Y. Mar. 13, 1987); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 132, 134 (N.D. Ill. 1979); *Oliver v. Comm. For the Re-Election of the President*, 66 F.R.D. 553, 555 (D.D.C. 1975); 8B Charles Alan Wright et al., Federal Practice and Procedure § 2286 (3d ed. 2012).

Defendant argues that Plaintiff's counsel improperly instructed the deponent not to answer two sets of questions outlined above: those regarding which portion of the EEOC's Uniform Guidelines on Employee Selection Procedures ("EEOC Uniform Guidelines") pertain to a Title VII disparate impact challenge based on an employer's use of arrest, conviction, and credit-history records (the first and second questions above); and those regarding whom the EEOC intended to bind when issuing its Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions ("Enforcement Guidance") (the third, fourth, and fifth questions above). Def.'s Br. 8-12. Plaintiff responds that the requested information should not be compelled because it is outside the scope of the 30(b)(6) deposition, not relevant, and privileged. Pl.'s Opp. Br. 22-36. The Court will take each argument in turn.

I. **While More Specific Identification Of The EEOC Enforcement Guidelines Was Within The Scope Of The 30(b)(6) Notice, The EEOC's Intent In Issuing Its Enforcement Guidance Was Not.**

Plaintiff argues that Defendant's questions were outside the scope of the Rule 30(b)(6) notice of the deposition. Federal Rule of Civil Procedure 30(b)(6) governs the deposition of a

corporation or organization and how such a deposition is noticed. It requires the deposing party to "describe with reasonable particularity the matters for examination" so that the deposed party can designate one or more representatives and prepare them to testify on its behalf. Fed. R. Civ. P. 30(b)(6). While it has not been directly addressed in the Fourth Circuit, it is a matter of some controversy as to whether the deposition is limited to the matters specified in the 30(b)(6) notice of deposition.[2] Nonetheless, the obligation on the party being deposed to prepare the deponent extends only to the topics in the Rule 30(b)(6) notice of deposition. *Falchenberg*, 642 F. Supp. 2d at 164; *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995). The deponent's answers to questions outside the scope of the notice will not bind the organization, and the organization cannot be penalized if the deponent does not know the answer. *Falchenberg*, 642 F. Supp. 2d at 164; *E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006); *Detoy v. City of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000).

As to the two questions seeking the specific portions of the EEOC Uniform Guidelines that pertain to a Title VII disparate impact challenge to an employer's use of arrest, conviction, and credit history information, the Court finds that they were within the scope of the 30(b)(6) notice. The notice asked for the "identification and verification" of EEOC's policies and regulations pertaining to the applicable legal standard. Def.'s Br. 2. It is reasonable to interpret

---

[2] *See* 7B Moore's Federal Practice § 30.25 (3d ed. 1999) ("There is a split of authority as to the scope of examination of a witness produced pursuant to a Rule 30(b)(6) notice."). One court has found that such a limitation is implied, if not directly stated in the Rule. *Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 729 (D. Mass. 1985). However, many other courts have held that the scope of the questioning at a 30(b)(6) deposition is governed not by the notice of deposition but by relevancy under Rule 26(b)(1). *See, e.g., Am. Gen. Life Ins. Co. v. Billard*, No. C10-1012, 2010 WL 4367052, at *4 (N.D. Iowa Oct. 28, 2010) ("It would appear, however, that every court which has addressed this issue since *Paparelli* has taken a different view."); *K.S. ex rel. Isserlis v. Ambassador Programs, Inc.*, No. CV-08-243-RMP, 2010 WL 1568391, at *2 (E.D. Wash. Apr. 14, 2010) ("[D]istricts in the Ninth Circuit have concluded that once the witness satisfies the minimum standard for serving as a designated witness, the scope of the deposition is determined solely by relevance under Rule 26.") (internal quotation marks omitted); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38 (S.D.N.Y. 2009) ("[A] notice of deposition . . . constitutes the minimum, not the maximum, about which a deponent must be prepared to speak.") (internal quotations omitted); *Cabot Corp. v. Yamulla Enterprises, Inc.*, 194 F.R.D. 499, 500 (M.D. Pa. 2000) ("I do not read Rule 30(b)(6) as carving out a special limitation on the scope of discovery defined in Rule 26(b)(1)"); *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995) ("Rule 30(b)(6) does not limit what can be asked at deposition.").

"identification" as requiring that Plaintiff name specific regulations or subsections of regulations, as opposed to naming an entire section of the CFR. The scope of the 30(b)(6) notice should not be read so narrowly so as to prevent the deposing party from probing and scrutinizing a deponent's answers.

As to the three questions seeking the EEOC's intent in issuing its Enforcement Guidance, the Court finds them plainly outside the scope of the 30(b)(6) notice. Nothing in "identification and verification" suggests that the deponent should be prepared to discuss the EEOC's mental state or intentions in formulating its policies and procedures.

Even for the questions outside the scope of the 30(b)(6) notice, it was improper for Plaintiff's counsel to instruct the deponent not to answer on these grounds. The proper course would have been to object that the question was outside the scope of the 30(b)(6) notice, and state on the record that the answers would not bind the EEOC.[3] Nonetheless, this Court will not compel Plaintiff to produce a designee to answer questions which were outside the scope of the 30(b)(6) notice. Non-expert discovery was closed in this case on July 18, 2012. Am. Scheduling Order (ECF No. 81). The only discovery which remains to be conducted are the eleven 30(b)(6) specifications which were the subject of Plaintiff's unsuccessful Motion for Protective Order filed on April 13, 2012. (ECF No. 70). To allow Defendant to depose the EEOC or its designee on topics outside these eleven specifications would be to reopen discovery after it has been closed. Therefore, the Court will not compel Plaintiff to produce another designee to be deposed regarding whom the EEOC intended to bind with its Enforcement Guidance, leaving at issue only the two questions pertaining to the EEOC Uniform Guidelines.

---

[3] In fact, Plaintiff's counsel did so object at numerous other points in the deposition while allowing the deponent to testify in her personal capacity. *See, e.g.*, Miaskoff Dep. Tr. 32:20-32:24; 33:15-33:17; 33:25-34:04; 34:11-34:15; 34:23-35:01.

## II. More Specific Identification Of The EEOC Enforcement Guidelines Is Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.

Plaintiff argues that the information sought by Defendant is irrelevant and should not be compelled. Information is relevant for the purposes of discovery when it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010) (internal citations omitted). Relevance is not a proper basis for instructing a deponent not to answer a question, as questions of relevance should be decided by the trial judge. Fed. R. Civ. P. 30(c); Local Disc. Guidelines 6(d) (Md. 2012). If the questioning gets so far afield as to be abusive or seeking highly irrelevant personal information, the opposing party may seek a motion to terminate or limit the deposition under Rule 30(d)(3).

Here, Plaintiff's deponent identified the EEOC Uniform Guidelines as the part of the CFR that pertains to the legal standard applicable to a Title VII disparate impact challenge to an employer's use of arrest, conviction, and credit-history information. Miaskoff Dep. Tr. 17:12-17:22; 21:09-21:18. In each instance, Defendant then drilled further by asking the deponent to specify the portion of the Guidelines that applies. *Id*. at 17:24-18:06; 22:17-22:23. These questions were reasonably calculated to lead to the discovery of admissible evidence. Further understanding of Plaintiff's legal claims and contentions could aid Defendant in conducting the remaining discovery, including deposing Plaintiff regarding the other nine 30(b)(6) specifications. Defendant's questioning was not abusive or directed towards irrelevant personal information of the deponent, and Plaintiff did not seek to file a Rule 30(d)(3) motion to terminate the deposition. Therefore, Plaintiff was not justified in instructing the deponent not to answer on relevancy grounds.

III.     **The Governmental Deliberative Process Privilege And Attorney Work Product Doctrine Circumscribe Any Potential Further Questioning Regarding The EEOC Uniform Guidelines.**

Plaintiff objected to Defendant's questions during the deposition on the grounds of governmental deliberative process privilege and the attorney work product doctrine.  Miaskoff Dep. Tr. 19:13-19:22; 23:13-24:02; 25:04-25:13.  As noted previously, privilege is an appropriate ground for instructing a deponent not to answer a question.  Fed. R. Civ. P. 30(d)(3); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 421 (D. Md. 2005).  The governmental deliberative process privilege protects the privacy of communications made as part of the decision-making process of a government agency.  *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *City of Va. Beach v. U.S. Dept. of Commerce*, 995 F.2d 1247, 1252-53 (4th Cir. 1993); *Jones v. Murphy*, 256 F.R.D. 510, 516 (D. Md. 2008), *aff'd*, No. CCB-05-1287, 2009 WL 604937 (D. Md. Feb. 23, 2009); *see also* 7B Moore's Federal Practice § 26.52 (3d ed. 1999) ("Because frank discussion of legal and policy matters is essential to the decision making process of any government agency, communications made as a part of an agency determination are protected from disclosure.").[4]  Documents and communications protected by the privilege must be both predecisional and deliberative.  *Va. Beach*, 995 F.2d at 1253; *Jones*, 256 F.R.D. at 516.  Predecisional means "prepared in order to assist an agency decisionmaker in arriving at his decision."  *Va. Beach*, 995 F.2d at 1253 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).  Deliberative materials are those that reflect the "give and take of the consultative process" and reveal the manner in which an agency weights potential policies or outcomes.  *Id*. (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

---

[4] The Freedom of Information Act ("FOIA") incorporated the deliberative process privilege as an exception.  5 U.S.C. § 552(b)(5) (2006).  Therefore, much of the federal case law discussing the privilege does so within the FOIA context.  *See Jones*, 256 F.R.D. at 516 n.8.

Regulations promulgated by the EEOC and published in the CFR cannot themselves be subject to the deliberative process privilege. They are the final, public decisions of the agency and do not reveal the internal communications which occurred during their formulation. However, the privilege would circumscribe any further questioning Defendant might pursue regarding the EEOC Uniform Guidelines. Plaintiff could not be required to provide any internal information regarding the EEOC's decision-making process during the formulation of the regulations.

The work product doctrine protects the work of an attorney done in preparation for litigation. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997); *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994) (citing *Hickman v. Taylor*, 329 U.S. 495, 509-14 (1947)). Opinion work product is that which contains an attorney's "mental impressions, conclusions, opinions or legal theories . . . concerning the litigation." *Allen*, 106 F.3d at 607 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992)). While regular work product is discoverable in limited circumstances, opinion work product receives absolute protection. *Id*.

The attorney work product doctrine does not protect Plaintiff from being required to identify the regulations themselves. They were created as part of the Executive Branch's administrative rule-making process, not in preparation for litigation. Therefore, it was improper for Plaintiff's counsel to instruct the deponent not to answer questions which merely called for identification of regulations. However, once again the doctrine would circumscribe any further questioning, as Plaintiff could not be forced to reveal its legal analysis or interpretation of the regulations done in preparation for this litigation.

Taken together, the deliberative process privilege and attorney work product doctrine would limit Plaintiff's testimony to identifying the regulations on which it relies, without much additional probing or interpretation. To the extent that Plaintiff feared that Defendant's line of questioning would intrude further, his objections and instructions not to answer were reasonable. *See Neuberger*, 230 F.R.D. at 421 ("Rule 37(a)(2)(B) specifically contemplates a motion to compel when a deponent refuses to answer a question, thus suggesting that it is acceptable for the witness to decline to answer and then wait to defend such a motion.") (quoting 7 Moore's Federal Practice § 30.43 (3d ed. 2005)).

It is also worth noting that Defendant's line of questioning about whom the EEOC "intended" to bind when issuing its Enforcement Guidance was likely to infringe on the deliberative process privilege, since the questions appear to seek information regarding the agency's mental state and goals during its deliberations. The Court reserves ruling on this issue because it finds that these questions were outside the scope of the 30(b)(6) notice. *See supra.* Nonetheless, the colorable privilege argument provides Plaintiff a valid justification for instructing the deponent not to answer these questions.

### IV. Given The Limited Scope of Possible Further Questioning Regarding the EEOC Uniform Guidelines, Compelling An Additional Deposition Is Unnecessary.

Defendant moves for an order compelling Plaintiff to present a designee for a second deposition to answer the questions which it did not answer in the first deposition. Def.'s Br. 1. As noted above, the only discoverable information which Plaintiff ordered its deponent not to provide was more specific identification of portions of the EEOC Uniform Guidelines pertaining to the applicable legal standard. The Court finds it unnecessary to compel an additional deposition for this purpose.

First, Plaintiff has already substantially answered the questions at issue. Plaintiff identified the EEOC Uniform Guidelines as the portion of the CFR which contains the pertinent legal standard. The Guidelines "incorporate a single set of principles which are designed to assist employers, labor organizations, employment agencies, and licensing and certification boards to comply with requirements of Federal law prohibiting employment practices which discriminate on grounds of race, color, religion, sex, and national origin." 29 C.F.R. § 1607.1 (2012). While they do not address arrest, conviction, or credit-history records specifically,[5] they set forth general principles for avoiding Title VII disparate impact liability. *See* 29 C.F.R. § 1607.4. During the part of the deposition addressing credit-history information, Plaintiff's deponent was asked which portion of the Uniform Guidelines applied, and responded, "the whole thing." Miaskoff Dep. Tr. 22:17-23:05. Given the nature of the regulations at issue, this was a responsive answer. Any further questioning would be redundant and unnecessary given the limitations imposed by the deliberative process privilege and attorney work product doctrine.

Further, the information sought by Defendant is legal in nature, and not directly geared towards discovering factual evidence or documents. On one hand, a party's legal theories or contentions are discoverable to the extent that they relate to the application of law to fact, and do not violate the attorney work product doctrine. *See* Fed. R. Civ. P. 33(a) (setting forth rules governing contention interrogatories); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D. Md. 1997) ("Properly drafted, 'contention interrogatories,' . . . can help pin down an opponent's legal theories in a case as well as the primary facts supporting them."). However, contention interrogatories are the favored method for exploring a party's legal contentions, not depositions. *See Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 255, 260 (M.D.N.C. 2010);

---

[5] The Guidelines only mention arrest records once in passing, at 29 C.F.R. § 1607.4 (2012). Plaintiff's deponent identified this lone reference in her deposition. Miaskoff Dep. Tr. 16:21-17:08.

*BB & T Corp. v. United States*, 233 F.R.D. 447, 448 (M.D.N.C. 2006); *Wilson v. Lakner*, 228 F.R.D. 524, 529 n. 8 (D. Md. 2005).

Defendant cites *E.E.O.C. v. Presrite Corp.*, No. 11 CV 260, 2012 WL 4434055 (N.D. Ohio Sept. 24, 2012), for the proposition that a party's legal contentions are discoverable during a deposition. Def.'s Br. 12. However, this case is distinguishable because in *Presrite Corp.* the defendant was seeking "facts and documents," as opposed to pure legal standards. 2012 WL 4434055 at *7. Here, Defendant's line of questioning seeks only identification of a legal standard, not the underlying factual evidence to which the legal theories apply. The deponent's response of identifying the relevant section of the CFR was sufficient for this purpose.

## V. Sanctions Against Plaintiff For Instructing The Deponent Not To Answer Are Not Warranted.

Defendant seeks sanctions against Plaintiff and costs for filing its Motion to Compel. Def.'s Br. 1. Federal Rule of Civil Procedure 37 governs the assessment of sanctions for failure to cooperate in discovery. In this jurisdiction, the following factors are applied to determine whether sanctions are appropriate for improperly instructing a deponent not to answer a question:

> (1) the importance of the requested information to the issues in the litigation (i.e., is the solicited information collateral or marginally relevant, or alternatively, is it material to a claim or defense); (2) the number of times the attorney instructed the witness not to answer (i.e., was the instruction an isolated incident or is there a pattern of disruptive instructions); (3) whether the question which prompted the instruction not to answer was proper and unobjectionable; (4) whether the instruction not to answer appears to have been made in a sincere, although misguided, effort to preserve a colorably valid objection, or, instead, for purposes of disrupting the deposition; and (5) whether the attorney instructing the deponent not to answer had advance notice of the likelihood that the deposing attorney would initiate questions in an area considered objectionable, and whether the attorney sought a protective order pursuant to Fed. R. Civ. P. 26(c).

*Boyd v. Univ. of Maryland Med. Sys.*, 173 F.R.D. 143, 147 (D. Md. 1997). Any instruction not to answer a deposition question in violation of Rule 30(c)(2) presumptively warrants sanctions, and the instances in which a court may choose not to levy them are "few and far between." *Id*.

Here, the Court has denied Defendant's Motion despite finding that some of Plaintiff's instructions not to answer were at least partially improper. The Court finds factors one, three, and four most persuasive in concluding that these instructions do not warrant sanctions. Once Plaintiff identified the EEOC Uniform Guidelines as the portion of the CFR that pertains to the applicable legal standard, any further questioning regarding the regulations would be circumscribed by privilege and therefore not very fruitful. Questions calling for pure legal analysis in a deposition are arguably objectionable and improper, as are repeated questions once the deponent had provided an answer ("the whole thing"). *See* Local Disc. Guideline 6(c). Finally, Plaintiff was not seeking to disrupt the deposition, but rather was making colorable objections based on work product doctrine and governmental deliberative process privilege. Therefore, the Court finds this to be one of the instances in which an improper instruction not to answer a deposition question does not warrant sanctions.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion to Compel, and DENIES Defendant's request for costs in filing this motion and sanctions against Plaintiff.

December 19, 2012                                             /s/
                                                          Charles B. Day
                                                          United States Magistrate Judge

CBD/ISA